GREGORY M. SAYLIN (SBN 185328)
STEPHEN A. TENSMEYER (SBN 312030)
DAVID R. WILLIAMS (SBN 311927)
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone:     801.799.5800
Facsimile:     801.799.5700

Attorneys for Petitioner USANA Health Sciences, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USANA Health Sciences, Inc.,<br><br>                 Subpoenaing Party,<br><br>          v.<br><br>YOUTUBE, Inc. c/o Google LLC,<br><br>                 Subpoeaned Party. | Case No:  21-80158<br><br>(Case No. 2:17-cv-00925-HCN-JCB pending District of Utah)<br><br>**USANA HEALTH SCIENCES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH A SUBPOENA PURSUANT TO FRCP 45(d)(2)(B)(i); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Courtroom:<br><br>Date:          TBD<br><br>Time:          TBD |

-1-

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at a date and time at the convenience of the Court, in the Courtroom of the Honorable _____ of the above-referenced court, located at _____, the Subpoenaing Party, USANA Health Sciences, Inc. ("USANA"), will and hereby does move the Court for an order compelling the Subpoenaed Party YouTube, Inc. c/o Google LLC ("Google") to comply with the third party subpoena and request for documents issued by USANA.

This Motion is based on this Notice of Motion, the supporting Memorandum and Points of Authorities, the accompanying Declaration of Tyson C. Horrocks In Support of USANA's Motion to Compel ("Horrocks Decl.") and the exhibits attached thereto, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

**STATEMENT OF RELIEF REQUESTED**

Pursuant to Federal Rule of Civil Procedure 45, USANA respectfully requests an order requiring Google to comply with the subpoena served on it in the underlying litigation, *Elizabeth Strand et al. v. USANA Health Sciences, Inc.*, Case No. 2:17-cv-00925-HCN-JCB, pending in the United States District Court for the District of Utah (the "Underlying Litigation").

**MEET AND CONFER STATEMENT**

The parties met and conferred regarding the relief requested in this motion on multiple occasions between February 24, 2021 and May 26, 2021 but were unable to reach agreement. *See* Horrocks Decl. ¶ 14; *id.* Exs. D, E, and F.

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i), Subpoenaing Party USANA hereby moves the above-titled court for a motion compelling compliance with the subpoena served upon the Subpoenaed Party Google on or about February 5, 2021 (the "Subpoena"). A copy of the Subpoena is attached as **Exhibit A** to the Horrocks Declaration.

## I.   INTRODUCTION

In the Subpoena, USANA seeks basic information that is easily accessible by Google, that cannot be obtained from any other source, and that is critical to its defense of a significant lawsuit against it. USANA has been sued, with Plaintiffs claiming damages in the millions of dollars, on the alleged basis that USANA's termination of a contractual relationship in 2011 was unlawful. That termination was based in part on the promotional presentation recorded in the videos for which information is sought in the Subpoena. According to Plaintiffs, USANA's termination is unjustified unless there is specific evidence that these promotional presentations actually reached USANA's customers and/or distributors, and it cannot be disputed that evidence that the videos did reach them would be sufficient on its own to justify the termination. Horrocks Decl., Ex. G at 29. If the promotional videos reached USANA's customers and/or distributors, then Plaintiffs breached their obligations, and USANA's termination of the contractual relationship was lawful.

In light of the importance of this issue, USANA has searched diligently for direct evidence showing the particular individuals who were exposed to these promotional presentations. But every party and non-party witness that USANA has deposed in this action has claimed not to know or remember, or not to have documents showing, who viewed the promotional presentations.  Neither Plaintiffs, nor the presenter in the videos, nor those who posted the videos, nor the company that hosted the presentation in the videos, nor the company whose products were being endorsed has any record of attendees. *Id.* ¶¶ 5-13; *id.* Ex. C-1. After exhausting every other conceivable option, USANA issued the Subpoena to Google to compel production of documents showing the audience reached by these promotional videos. This information alone could—and USANA believes it will—justify judgment in USANA's favor. USANA therefore has a strong interest in uncovering this evidence.

1       In contrast to this strong interest, Google offers no legitimate basis for failing to comply

2   with the Subpoena. Although Google has served boilerplate objections of burden and vagueness,

3   it has demonstrated no inability to identify the relevant information or to retrieve it quickly and

4   easily. Moreover, although Google also objects to the Subpoena based on the First Amendment to

5   the United States Constitution, the information at issue here—the aggregated identity of those

6   exposed to particular promotional advertising—implicates no First Amendment concerns. And

7   even if there were such concerns, the relevant caselaw makes clear that USANA's need for the

8   evidence nevertheless warrants disclosure. This is particularly true because of the Standard

9   Protective Order in the Underlying Litigation, which provides robust protections for private or

10  confidential information. For these reasons, USANA respectfully requests that the Court order

11  prompt compliance with the Subpoena.

## II.   BACKGROUND

13      USANA is a Utah corporation that supplies and markets nutritional and personal care

14  products. *See* Horrocks Decl., Ex. B ("Second Am. Compl.") ¶ 6. From 1995 until 2011, USANA

15  had a contractual relationship with a distributor named Elizabeth Strand. *Id.* ¶ 11. As part of this

16  relationship, Ms. Strand agreed to and was bound by certain terms and conditions, including a

17  requirement that neither she nor anyone in her immediate household would promote or present any

18  other network marketing business to USANA distributors or customers. *Id.* ¶¶ 32-34. On or about

19  August 9, 2011, Ms. Strand's spouse, Dr. Ray Strand, who had previously endorsed USANA

20  products and ran a website and distributed other materials directed toward USANA distributors

21  and customers, endorsed Ariix, a competing network marketing business, to USANA distributors

22  and customers, in the form of a "webinar" presentation promoting Ariix's products, which was

23  recorded and later posted on YouTube.com. *See id.* ¶¶ 49-50.[1] The following day, USANA

24  initiated an investigation that determined that Ms. Strand had violated USANA's policies and

25  procedures because a member of her household promoted a competitor to USANA customers

---

[1] The "webinar" itself was posted to YouTube in the form of the 41-minute video identified in
Exhibit 2 to the Subpoena. Exhibit 1 to the Subpoena is a 35-second video of Dr. Strand endorsing
Ariix and its products.

1  and/or distributors. Following this investigation, USANA terminated Ms. Strand's distributorship

2  on or about September 8, 2011. *Id.* ¶¶ 51-52.

3      Nearly six years later, on August 15, 2017, Ms. Strand and the entity through which she

4  operated filed suit against USANA, claiming that there had been no violation of USANA's policies

5  and procedures and thus that USANA's termination of her distributorship constituted a breach of

6  contract. This Underlying Litigation, from which the Subpoena arises, is pending in the United

7  States District Court for the District of Utah before the Honorable Howard C. Nielson, Jr., Case

8  No. 2:17-cv-00925-HCN-JCB. The operative complaint in the Underlying Litigation, the Second

9  Amended Complaint, is attached as **Exhibit B** to the Horrocks Declaration.

10     By the time Ms. Strand filed her lawsuit, memories regarding the underlying events had

11  faded and documentary evidence was in some instances difficult to locate. In the years since the

12  Underlying Litigation began, USANA has focused its discovery efforts on the parties to the lawsuit

13  and has made every effort to gain the at-issue information. Among other things, USANA has asked

14  virtually every witness it has deposed about this issue, has issued and filed a motion to compel on

15  extensive party discovery addressing the issue, has engaged in formal and informal efforts to obtain

16  data from the technology company that originally hosted the webinar, and has subpoenaed

17  numerous third parties who may have relevant documents, including Dr. Strand, the competitor

18  itself, and those who posted the videos. Horrocks Decl. ¶¶ 5-13; *id.* Ex. C. These efforts have

19  yielded important evidence about the scope of the broadcast of the videos, but they have not

20  yielded direct evidence of the particular USANA associates and customers who viewed them. *Id.*

21  ¶ 5. USANA initially subpoenaed Google in approximately October 2018 as part of its efforts to

22  obtain relevant information. *Id.* ¶ 2. However, after discussions with Google, USANA agreed to

23  withdraw this subpoena and first pursue other avenues of discovery. *Id.*

24     After exhausting all other options through the discovery described above, USANA served

25  the Subpoena on Google on or about February 12, 2021. The Subpoena sought narrow information

26  regarding the audience for the promotional videos. *See id.*, Ex. A at 2-3. On or about February 24,

27  2021, Google objected to the Subpoena on several grounds. *See id.* Ex. D. Through counsel,

28  USANA responded to these objections and sought a mutually agreeable resolution to obtain the

relevant information. *See id.* Ex. E. After several phone calls and attempts to meet and confer, Google eventually refused to provide any documents or information whatsoever in response to the Subpoena. *See id.* Ex. F. USANA now files this motion to compel compliance with the Subpoena. Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i), this motion is brought in the Northern District of California, which Google has indicated is the "district where compliance is required." *See id.* at 2.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Rule 45 allows parties to obtain discovery from non-parties by issuing third-party subpoenas, and it is "well established that the scope of discovery under a subpoena issued pursuant to Rule 45 is the same as the scope of discovery allowed under Rule 26(b)(1)." *Painters Joint Comm. v. Emple. Painters Tr. Health & Welfare Fund*, 2011 U.S. Dist. LEXIS 113278, at *15 (D. Nev. Sep. 28, 2011). These rules are liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence, even if the information sought would not itself be admissible at trial. *United States v. Torrance*, 164 F.R.D. 493, 495 (C.D. Cal. 1995); Fed. R. Civ. P. 26(b)(1). Moreover, "the party opposing discovery bears the burden of showing the discovery is overly broad and duly burdensome, or not relevant." *Painters Joint Comm.*, 2011 U.S. Dist. LEXIS 113278, at *20.

## IV.    ARGUMENT

USANA's Subpoena seeks information that is highly relevant to a core defense to Plaintiffs' claims, and none of Google's objections to the Subpoena has merit. The Court should order Google to comply with the Subpoena and provide the requested documents.

### A.    The Subpoena Seeks Relevant Information Proportional to the Needs of the Case.

The United States Supreme Court "has more than once declared that the deposition-discovery rules" of the Federal Rules of Civil Procedure, including Rule 45, "are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). In this case, the Subpoena seeks information

"demonstrating the identity of any person who liked, disliked, posted a comment, or otherwise interacted with" two specifically identified promotional videos. Horrocks Decl., Ex. A at 2-3. This information not only falls well within the broad parameters of Rule 45 and Rule 26, it is unquestionably probative and dispositive evidence supporting USANA's defense of the case against it.

As described above, USANA is a defendant in a lawsuit in which the plaintiff, Ms. Strand, claims that she did not violate USANA's policies and procedures and thus that USANA's termination of her distributorship in September 2011 was unlawful. *Id.* ¶ 4. USANA's policies and procedures in place in 2011 prohibited a distributor or any member of the distributor's household from promoting competing products to USANA distributors or customers. In this case, Plaintiffs have claimed that this provision was not violated unless the promotional videos in question *in fact* reached USANA distributors or customers. *Id.*, Ex. G at 29 (statement of Plaintiff's counsel: "I think that under the terms of the contract, that really a USANA representative or customer has to view the webinar in order for there to actually be a breach.").

Plaintiffs have made clear that they intend to move for summary adjudication based on the lack of evidence that a USANA distributor or customer saw the Webinar, and USANA is determined to obtain evidence to establish these dispositive facts. If USANA can demonstrate that the audience for the promotional videos in question included USANA distributors or customers, it would conclusively demonstrate that Ms. Strand violated the policies and procedures and that her termination was therefore lawful. However, despite years of pursuing discovery, Plaintiffs and related third parties have claimed to have no evidence, such as attendance records, showing the particular individuals who were exposed to these promotional videos. Google is now the *only* source that possesses such information, particularly in a way that is not subject to fading memories or potential evidentiary objections. Thus, far from being duplicative or cumulative, the evidence sought by the Subpoena is unique and highly relevant to USANA's defense of Plaintiffs' claims.

The information at issue here goes well beyond the minimum standard of the Federal Rules of Civil Procedure, which allow discovery for any information that "appears reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b)(1). The information

sought by the Subpoena—the identity of those that viewed, liked/disliked, or commented on the videos—is itself admissible evidence and is directly relevant to determining whether Ms. Strand breached her contractual obligations under USANA's policies and procedures. Without this information, USANA may be unfairly hamstrung in its ability to defend itself against Ms. Strand's claims.

For the same reasons, the information sought by the Subpoena is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This information is perhaps the most direct and relevant evidence bearing on the most important issue in the case—whether Ms. Strand breached USANA's policies and procedures. Particularly given the substantial damages requested by Ms. Strand, the limited and readily accessible information sought by the Subpoena easily meets the low threshold for discoverability outlined in the Federal Rules of Civil Procedure. *See id.* (describing factors in evaluating proportionality, including "the importance of the issues at stake . . . , the amount in controversy, the parties' relative access to relevant information, . . . [and] the importance of the discovery in resolving the issues[.]").[2]

B.    The Subpoena is Not Unduly Burdensome or Overbroad.

Google has objected to the Subpoena on the basis that it purportedly imposes an "undue burden" and that it "seeks information already in a party's possession or available to a party from

---

[2] In its correspondence with USANA, Google has claimed that "Google does not understand how this proposed non-party discovery is relevant" because "[i]f [USANA] based its termination decision on the mere existence and posting of the videos, then there is no need to identify the commenters, interactors, and viewers[.]" Horrocks Decl., Ex. F at 1. However, as USANA has explained, its termination of Ms. Strand was based not merely on the *existence* of the videos, but on the fact that the information contained in the videos was intended to and did reach USANA customers and distributors. And while USANA's investigation concluded this fact at the time of the termination, memories of specific identities have faded and any documentary evidence thereof is no long accessible.  Third-party confirmation of the fact of viewing by USANA customers and/or distributors from an incontrovertible source and in a form that is unquestionably admissible at trial obviously of great value to the defendant here, and is the most direct and decisive evidence possible to demonstrate this fact and that will best facilitate "the just, speedy, and inexpensive determination of [this] action[.]" Fed. R. Civ. P. 1;  *Bland v. Fairfax Cty.*, 275 F.R.D. 466, 469 (E.D. Va. 2011) (noting that Rule 45 is "constru[ed]" and "administer[ed] . . . to secure the speedy and inexpensive determination of every action"). In any event, "the party opposing discovery bears the burden of showing the discovery is overly broad and duly burdensome, or not relevant," and Google has not met this burden. *Painters Joint Comm.*, 2011 U.S. Dist. LEXIS 113278, at *20.

1    some other source (including public sources)[.]" Horrocks Decl., Ex. D at 2. Google is mistaken.

2    USANA has already exhausted every other possible avenue for obtaining the information it

3    seeks—the particular individuals reached by the promotional statements in question. *Id.* ¶¶ 5-13.

4    As described above, USANA has left no stone unturned—whether through party discovery, third-

5    party subpoenas, informal investigation efforts, or otherwise—to obtain this information. Google's

6    suggestion that this information is available from public sources is also false. *Id.* Indeed, it is

7    precisely because USANA was unable to obtain the relevant information from the public postings

8    of the videos in question that a Subpoena was necessary.

9            In its objections and correspondence, Google has also suggested that USANA's requests

10   are unreasonable because USANA unreasonably delayed its request since the time of the

11   termination many years ago. *See id.* Ex. F at 3. But this delay was entirely outside of USANA's

12   control and is instead a result of Plaintiffs' decision to wait nearly six years before filing their

13   complaint. Indeed, the passage of time is one of the chief reasons that USANA's discovery of this

14   information is so vital; many witnesses are often understandably unable to recall whether they

15   were exposed to a particular promotional video ten years ago. In short, the passage of time simply

16   reinforces the fact that Google is likely in sole possession of this important information.

17           Google has also offered no explanation for its conclusory statement that complying with

18   the Subpoena would constitute an "undue burden" or that the requests are "vague." *Id.*, Ex. D at 2.

19   USANA has been as precise as possible regarding the information sought, including identifying

20   the promotional videos both through web addresses and screenshots. There is no further

21   information in USANA's possession that it can provide to Google, and what it has provided is

22   more than sufficient to retrieve the requested information. Retrieving the requested information is

23   simply a matter of determining the accounts associated with likes, dislikes, views, or comments

24   on the two videos in question. Although Google protests that it would "need to employ engineering

25   resources to try to identify responsive data," even this vague description suggests that the process

26   for responding to the Subpoena is straightforward and that Google already has sufficient

27   information to conduct the search. *Id.*, Ex. F at 2.

28

1    Google has not identified any burden whatsoever in responding to the Subpoena, let alone

2    a burden that is "undue." *Painters Joint Comm.*, 2011 U.S. Dist. LEXIS 113278, at *16 ("[T]he

3    party opposing discovery bears the burden of showing the discovery is overly broad and duly

4    burdensome, or not relevant[.]"). Google has not described the resources that would be required at

5    all, nor has it identified any reason why obtaining this information would require anything more

6    than a few mouse-clicks. The videos themselves show clearly the number of likes, dislikes,

7    comments, and views. Responding to the Subpoena would require merely looking behind those

8    numbers to find the associated accounts. It is simply not plausible for Google to suggest that

9    obtaining this information would present an "undue burden" for one of the largest companies in

10   the world.

11    Nevertheless, in an effort to resolve any disputes and avoid burdening the Court, USANA

12   suggested several limitations, including limiting the time frame for the requested information to

13   the one-year period after the videos were posted in August 2011. *See* Horrocks Decl. ¶ 14; *id.* Ex.

14   F at 1. Despite USANA's attempts to reach a good-faith resolution and impose the least possible

15   burden on Google and any other third parties, Google has still refused to produce any documents

16   in response to the Subpoena. *Id.*, Ex. F.

17    C.    Compliance with the Subpoena Would Not Impinge on Any Third Parties' First

18         Amendment Rights.

19    Finally, Google objects "to the extent that the Subpoena asks for Google to disclose the

20   identity of Google users who posted certain reviews or certain content, which implicates the First

21   Amendment rights of Google users[.]" *Id.*, Ex. D at 1. The premise of this objection is incorrect.

22   As described above, the Subpoena seeks information "demonstrating the identity of any person

23   who liked, disliked, posted a comment, or otherwise interacted with" the promotional videos in

24   question. *Id.*, Ex. A at 2-3. The Subpoena seeks this information only in *aggregated* form. In other

25   words, USANA does not seek to know specifically who liked and who disliked the videos; nor

26   does it seek to tie any particular user to any comments. Instead, the Subpoena seeks only to

27   discover, in a general and undifferentiated manner, the group of people who interacted with or

28

were reached by (whether through liking, disliking, commenting, or merely viewing) the promotional videos in question.

Such a procedure raises no First Amendment concerns whatsoever. Being identified as a person who was exposed to an advertisement does not implicate, let alone violate, anyone's right to free speech. *Cf. Posadas de P.R. Assocs. v. Tourism Co.*, 478 U.S. 328, 340 (1986) (discussing limited constitutional protections for commercial speech). Indeed, plaintiffs regularly obtain discovery revealing the identity of otherwise unknown individuals who were exposed to advertisements or other statements from a defendant. *See Asis Internet Servs. v. Active Response Grp.*, 2008 U.S. Dist. LEXIS 109818, at *13 (N.D. Cal. May 20, 2008) (granting discovery of contact information for thousands of individuals who received email messages and holding that "[t]he privacy interest here is negligible"); *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 474 (S.D. Cal. 2015) (describing discoverable information including "pharmacy/medical records, sales call notes, and advertising records" meant to identify individuals "who were exposed to defendants' representations regarding the drugs in relation to risks of breast cancer, heart disease, or Alzheimer's disease"); *Pioneer Elecs. (USA), Inc. v. Superior Ct.*, 40 Cal. 4th 360, 364 (2007) (allowing discovery, under appropriate safeguards, of the "names and contact information" of individuals who had complained to the defendant company about the allegedly defective DVD players at issue); *Khalilpour v. CELLCO P'ship*, 2010 WL 1267749, at *2 (N.D. Cal. Apr. 1, 2010) ("The disclosure of names, addresses, social security numbers, and telephone numbers is a common practice in the class action context."). More generally, discovery is not prohibited by the First Amendment or any other principle of privacy simply because it reveals the identity of third parties. *See, e.g.*, *BofI Fed. Bank v. Erhart*, 2016 WL 4150983, at *1 (S.D. Cal. Aug. 5, 2016) (granting discovery of "communications with third parties"); *Kutik v. SharedXpertise Media, LLC*, 2012 WL 1435288, at *3 (D. Conn. Apr. 25, 2012) (ordering production of list of attendees at conference on attorney's eyes only basis). Disclosure is particularly warranted in this case because USANA is not seeking to assert its own claim but is instead an unwilling defendant attempting to defend itself.

1      Moreover, even if the Subpoena did raise First Amendment or privacy concerns, disclosure

2 would still be justified in this case. In its meet and confer correspondence related to the Subpoena,

3 Google has asserted that the First Amendment issues it claims are implicated by the Subpoena

4 should be evaluated under the factors articulated in *Doe v. 2themart.com Inc.*, 140 F. Supp. 2d

5 1088 (W.D. Wash. 2001). The test described in that case allows for discovery revealing the identity

6 of non-parties engaged in protected speech if "(1) the subpoena seeking the information was issued

7 in good faith and not for any improper purpose, (2) the information sought relates to a core claim

8 or defense, (3) the identifying information is directly and materially relevant to that claim or

9 defense, and (4) information sufficient to establish or to disprove that claim or defense is

10 unavailable from any other source." *Id.* at 1095.

11      In this case, all of these factors point strongly toward granting the Motion. USANA's

12 requested discovery is made in good faith. Indeed, there is no plausible bad-faith reason or ulterior

13 motive for USANA seeking the identities of those who viewed two promotional videos from a

14 decade ago other than to defend itself in the Underlying Litigation. The information also relates

15 and is directly and materially relevant to a core defense—that Ms. Strand violated USANA's

16 policies and procedures because, despite her recent denials, the promotional videos in question did

17 in fact reach USANA customers and distributors. The evidence sought by the Subpoena is not only

18 relevant to this action, it could on its own be enough to justify judgment in USANA's favor.

19      Finally, this same information is not available from any other source. As described above,

20 USANA has spent years pursuing discovery from Plaintiffs and related third parties, and they have

21 purported to have no information showing the particular individuals who were exposed to these

22 promotional materials. Horrocks Decl. ¶¶ 5-13; *id.* Ex. C. At this stage, Google's records constitute

23 the *only* direct and incontrovertible evidence showing such information. Thus, even if Google or

24 its accountholders had some interest in not revealing aggregated audience data, this interest would

25 be overwhelmingly outweighed by the importance of the information in rebutting the claims

26 against USANA. *See Williams v. Superior Court*, 3 Cal. 5th 531, 552 (2017) (holding that even

27 when discovery subjects "a legally protected privacy interest" to "a threatened intrusion that is

28

serious," the discovery is still appropriate if disclosure would service "legitimate and important countervailing interests").

Finally, any concerns regarding the privacy of viewers' identities would be resolved by the existence of a protective order that strictly limits the use of any information provided. The Standard Protective Order in force in the Underlying Litigation provides that any party receiving confidential information "shall use the information only for purposes of this action and for no other action, and shall not use it for any business or other commercial purpose, and shall not use it for filing or prosecuting any patent application (of any type) or patent reissue or reexamination request, and shall not disclose it to any person, except as hereinafter provided." United States District Court for the District of Utah, Standard Protective Order, Horrocks Decl., Ex. H § 5; Second Am. Compl. at 1-21 (copy of Standard Protective Order in force in the underlying action attached to Second Amended Complaint). The Standard Protective Order also allows documents to be designated as Confidential – Attorney's Eyes Only, which provides for even stricter protections and is specifically intended to cover documents that reveal "the identity of . . . potential and actual customers[.]" *Id.* § 2(b).

These safeguards are more than sufficient to address any real or perceived concerns regarding the privacy of the information at issue. *See, e.g.*, *Mixt Greens v. Sprout Cafe*, 2010 U.S. Dist. LEXIS 69695, at *3 (N.D. Cal. June 21, 2010) (compelling discovery and describing privacy objection as being "without any merit because any privacy concerns could have been addressed by a protective order limiting the disclosure *e.g.*, for attorney's eyes only"); *Asis Internet Servs.*, 2008 U.S. Dist. LEXIS 109818, at *13-*14 ("[I]f intrusion into privacy is limited and 'confidential information is carefully  shielded from disclosure except to those who have a legitimate need to know, privacy concerns are assuaged.'") (quoting *Hill v. National Collegiate Athletic Assn.*, 7 Cal.4th 1, 38 (1994)). In addition to these safeguards, USANA is also open to any other appropriate safeguards that the Court believes are warranted, including notice to the relevant third parties.[3]

---

[3] In its Objections, Google has stated that it "objects to the Subpoena to the extent it fails to allow sufficient time for Google to notify the affected user[.]" Horrocks Decl., Ex. H at 1. However, USANA has worked with Google in good faith for four months to resolve any concerns and has specifically indicated its willingness to consent to any reasonable procedure for notice to affected

1

## V.    CONCLUSION

2      For the foregoing reasons, USANA respectfully requests that this Court issue an order

3   compelling Google's compliance with the Subpoena.

4

Dated:  July 3, 2021                              HOLLAND & HART LLP

5

6                                                      */s/ Gregory M. Saylin*

7                                          By:    Gregory M. Saylin

8                                                Attorneys for Plaintiff, USANA

9

10

11

12

13

14

15

16

17

18

19

20

21

22   16970587_v4

23

24

25

26

27

28

users. Thus, any time pressure in giving notice is of Google's own making and is not an appropriate
ground to deny enforcement of the Subpoena.