1   GREGORY M. SAYLIN (SBN 185328)
    STEPHEN A. TENSMEYER (SBN 312030)
2   DAVID R. WILLIAMS (SBN 311927)
    HOLLAND & HART LLP
3   222 South Main Street, Suite 2200
    Salt Lake City, UT 84101-2194
4   Telephone:    801.799.5800
    Facsimile:    801.799.5700
5
    Attorneys for Petitioner USANA Health Sciences, Inc.
6

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11   USANA Health Sciences, Inc.,              Case No:  21-80158

12              Petitioner,                    (Case No. 2:17-cv-00925-HCN-JCB pending
                                               District of Utah)
13        v.
                                               **DECLARATION OF TYSON C.
14   YOUTUBE, Inc. c/o Google LLC,             HORROCKS IN SUPPORT OF MOTION
                                               TO COMPEL COMPLIANCE WITH A
15              Respondent.                    SUBPOENA PURSUANT TO FRCP
                                               45(d)(2)(B)(i)**
16
                                               Courtroom:
17
                                               Date:         TBD
18
                                               Time:         TBD
19

20

21

22

23

24

25

26

27

28

Case No. 21-80158                                          Decl. of Tyson C. Horrocks

I, Tyson C. Horrocks, declare the following:

1.      I am an attorney at Holland & Hart, LLP and counsel of record for USANA Health Sciences, Inc. ("USANA") in the case *Elizabeth Strand et al. v. USANA Health Sciences, Inc.*, Case No. 2:17-cv-00925-HCN-JCB, pending in the United States District Court for the District of Utah (the "Underlying Litigation").

2.      Attached hereto as **Exhibit A** is a true and correct copy of the subpoena served by USANA on YouTube, Inc. c/o Google LLC ("Google") on or about February 12, 2021 (the "Subpoena"), compliance with which USANA seeks to compel in USANA's Motion to Compel Compliance Pursuant to FRCP 45(d)(2)(B)(i) ("Motion"). The Subpoena arises from the Underlying Litigation and is the second subpoena issued to Google in this action. In approximately October 2018, USANA issued a broader subpoena to Google. After discussions with Google, USANA agreed to withdraw this subpoena and pursue other discovery (described in detail below) in an effort to exhaust other options before again requesting a narrower set of information from Google.

3.      A true and correct copy of the Second Amended Complaint filed by Plaintiffs in the Underlying Litigation is attached as **Exhibit B** to the Subpoena.

4.      The central issue in the Underlying Litigation, as reflected in the Second Amended Complaint, is whether the USANA distributorship of Elizabeth Strand ("Ms. Strand") was, as she claims, terminated unlawfully or was instead, as USANA claims, properly terminated because Ms. Strand violated USANA's Policies and Procedures when her husband, Dr. Ray Strand ("Dr. Strand") appeared in an August 2011 "webinar" presentation that endorsed and advertised a competitor's products to USANA customers and/or distributors. The "webinar" itself was posted to YouTube in the form of the 41-minute video identified in Exhibit 2 to the Subpoena. Exhibit 1 to the Subpoena is a 35-second video of Dr. Strand endorsing Ariix and its products.

5.      USANA has focused discovery efforts in the Underlying Litigation on learning who viewed or was exposed to the statements in the "webinar" or Dr. Strand's other promotions of Ariix, including the promotional videos in question. Among other things, USANA has issued party discovery to Plaintiffs, interviewed individuals, and deposed or issued third-party subpoenas to

1    third parties that may have relevant information, including Dr. Strand, Rick Billings (the individual

2    who posted one of the videos), and Ariix (the company who produced the video, whose products

3    were being endorsed, and who posted one of the videos) and its representatives. USANA has

4    brought multiple successful motions to compel additional information with respect to this issue.

5    Despite these efforts, USANA has been unable to discover direct evidence showing the particular

6    individuals who were exposed to these promotional videos. As far as I am aware, this information

7    remains solely in the possession of Google.

8        6.      **Exhibit C** hereto contains samples of the discovery issued related to this issue.

9    Specifically, attached hereto as **Exhibit C-1** is a true and correct relevant excerpt of Plaintiffs'

10   Responses and Objections to Defendant USANA Health Sciences, Inc.'s Interrogatories. Exhibit

11   C-1 demonstrates that USANA asked Plaintiffs to "[i]dentify all persons who participated in, or

12   ever watched or listened to the webinar" (Interrogatory No. 11) and that Plaintiffs responded that

13   "[b]esides her husband, Dr. Ray Strand, Ms. Strand is not aware of anyone else who participated

14   in, watched, or listened to the webinar."

15       7.      Attached hereto as **Exhibit C-2** is a true and correct relevant excerpt of Plaintiffs'

16   Responses and Objections to Defendant USANA Health Sciences, Inc.'s Requests for Production

17   of Documents.   Exhibit C-2 demonstrates that USANA asked Plaintiffs to "[p]roduce all

18   documents . . . reflecting the identity of participants" in the webinar (Request for Production No.

19   4) and Plaintiffs' representation that they have produced all documents responsive to this request.

20       8.      Attached hereto as **Exhibit C-3** is a court order in the Underlying Litigation

21   granting USANA's motion to compel with respect to this set of requests for production.

22       9.      Attached hereto as **Exhibit C-4** is a true and correct copy of USANA's Subpoena

23   to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil

24   Action directed to ARIIX c/o ARIIX LLC, which is the entity that produced the promotional videos

25   in question. This Exhibit C-4 shows that USANA requested from ARIIX any documents

26   "reflecting the identity of participants . . . for the Webinar."

27       10.     Attached hereto as **Exhibit C-5** is a court order in the Underlying Litigation

28   granting USANA's motion to compel with respect to this subpoena to ARIIX.   Despite these

-3-

efforts, none of these individuals and/or entities were able to identify particular individuals who were exposed to Dr. Strand's messages.

11.     Attached hereto as **Exhibit C-6** is a true and correct copy of USANA's Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action directed to Rick Billings, the individual believed to have posted one of the promotional videos in question.

12.     Attached hereto as **Exhibit C-7** is Rick Billings's response to the subpoena from USANA, in which Mr. Billings states that he has no responsive information.

13.     Attached hereto as **Exhibit C-8** is a true and correct copy of USANA's Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action directed to Citrix Systems, Inc., the vendor that provided technology and hosting capabilities for the promotional presentation reflected in the promotional videos in question.

14.     I met and conferred multiple times with counsel for Google, both by telephone and by written correspondence. Although I expressed USANA's willingness to agree to reasonable limitations and parameters, including limiting the time period for responsive information to one year following the posting of the videos in August 2011 and providing notice to any affected users, Google refused to agree to any production of documents. I also provided Google's counsel with a copy of the Standard Protective Order in place in the Underlying Case that would provide protection for any information produced in response to the Subpoena. The parties were unable to reach agreement.

15.     Attached hereto as **Exhibit D** is a true and correct copy of correspondence containing Google's objections to the Subpoena from Molly O'Neil of Google's Legal Investigations Support to me, dated February 24, 2021.

16.     Attached hereto as **Exhibit E** is a true and correct copy of correspondence from me to Molly O'Neill of Google's Legal Investigations Support dated March 16, 2021.

17.     Attached hereto as **Exhibit F** is a true and correct redacted copy of email correspondence between me and Ryan T. Mrazik, counsel for Google, between May 12, 2021, and May 26, 2021.

18.     Attached hereto as **Exhibit G** is a true and correct copy of the Reporter's Transcript of the hearing on Defendant's Motion to Dismiss, held on December 13, 2017.

19.     Attached hereto as **Exhibit H** is a true and correct copy of the operative Standard Protective Order.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 3, 2021.

*/s/ Tyson C. Horrocks*
Tyson C. Horrocks

16970502_v3

Case No. 21-80158                                                    Decl. of Tyson C. Horrocks

# Exhibit A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Utah

| | |
|---|---|
| Elizabeth Strand and Amara Enterprises, Inc. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:17-cv-00925-HCN-JCB |
| USANA Health Sciences, Inc. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: YouTube Entertainment Studios, Inc., c/o Corporation Service Company Which Will Do Business in CA as CSC Lawyers Incorporating Service - 2710 Gateway Oaks, Dr., Suite 150N, Sacramento, CA 95833

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Aggressive Legal Services, Inc. 4110 Truxel Road, Ste 150 Sacramento, CA 95834 | Date and Time: 03/10/2021 5:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 02/05/2021

*CLERK OF COURT*

OR

_____          /s/ Tyson C. Horrocks
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

Usana Health Sciences, Inc.                              , who issues or requests this subpoena, are:

Gregory M. Saylin and Tyson C. Horrocks, Holland Hart, LLP, 222 S. Main Street, Suite 2200, Salt Lake City, UT

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | | FOR COURT USE ONLY |
|---|---|---|
| HOLLAND & HART<br>BURKE R. GAPPMAYER, ESQ. (SBN 11088)<br>222 S MAIN ST STE 2200<br>SALT LAKE CITY, UT 84101<br>     TELEPHONE NO: (801) 799-5800     FAX NO *(Optional):*<br>E-MAIL ADDRESS *(Optional):*  brgappmayer@hollandhart.com<br>   ATTORNEY FOR *(Name):*  Plaintiff | | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  OUT OF STATE COURT |
|---|
|   STREET ADDRESS: |
|   MAILING ADDRESS: |
| CITY AND ZIP CODE: |
|   BRANCH NAME:  OUT OF STATE COURT |

| PLAINTIFF / PETITIONER:  ELIZABETH STRAND AND AMARA ENTERPRISES, INC. | CASE NUMBER:<br>2:17-cv-00925-HCN-JCB |
|---|---|
| DEFENDANT / RESPONDENT:  USANA HEALTH SCIENCES, INC. | |

| PROOF OF SERVICE | Ref. No. or File No.:<br>5354404 (2710) |
|---|---|

1. At the time of service I was 18 years of age and not a party to this action.

2. I served copies of the:
**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION;**

3. Party served: YOUTUBE ENTERTAINMENT STUDIOS, INC.

4. Address where the party was served:
**2710 GATEWAY OAKS DR SUITE 150N
SACRAMENTO, CA 95833**

5.b. I served the party on: **DATE: Feb 12, 2021  TIME: 12:11 pm**

I served the party by **personal service. I left the items in item 2 with the defendant personally.**

I left the documents listed in Item 2 with or in the presence of
**Nicole Sullivan, Person in Charge (Black, female, 30 years old, black hair, brown eyes, 5'4", 190 pounds)**

Physical Description:



7.a. RICHARD R. GONZALES
  b. C/O United Legal
  4110 Truxel Rd, Suite 150
  Sacramento, CA 95834
  c. 855-401-8834
  d.Fee: $85.00

e. California Registered Process Server
Independent Contractor (not employee)
Registration # PS587
County: YOLO

8. I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.
DATE: 02/17/2021

RICHARD R. GONZALES - FILE BY FAX

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev, Jan 1, 2007]

Code of Civil Procedure, Sec 417.10

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:17-cv-00925-HCN-JCB

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____         _____
                                                    *Server's signature*

                                        _____
                                                    *Printed name and title*

                                        _____
                                                    *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

a subpoena duces tecum accompanies the notice, it is subject to the applicable Federal Rules of Civil Procedure and Local Rules.


**DUCivR 37-1     DISCOVERY: MOTIONS AND DISPUTES; REFERRAL TO MAGISTRATE JUDGE**

**(a)     Discovery Disputes.**

(1)     The parties must make reasonable efforts without court assistance to resolve a dispute arising under Fed. R. Civ. P. 26-37 and 45. At a minimum, those efforts must include a prompt written communication sent to the opposing party:

(A)     identifying the discovery disclosure/request(s) at issue, the response(s) thereto, and specifying why those responses/objections are inadequate, and;

(B)     requesting to meet and confer, either in person or by telephone, with alternative dates and times to do so.

(2)     If the parties cannot resolve the dispute, and they wish to have the Court mediate the dispute in accordance with Fed. R. Civ. P. 16(b)(3)(v), the parties (either individually or jointly) may contact chambers and request a discovery dispute conference.

(3)     If the parties wish for the court to resolve the matter by order, the parties (either individually or jointly) must file a Short Form Discovery Motion, which should not exceed 500 words exclusive of caption and signature block.

(4)     The Short Form Discovery Motion must include a certification that the parties made reasonable efforts to reach agreement on the disputed matters and recite the date, time, and place of such consultation and the

48

names of all participating parties or attorneys. The filing party should include a copy of the offending discovery request/response (if it exists) as an exhibit to the Short Form Motion. Each party should also email chambers a proposed order setting forth the relief requested in a word processing format.

(5)     The parties must request expedited treatment as additional relief for the motion in CM/ECF to facilitate resolution of the dispute as soon as practicable. (After clicking the primary event, click Expedite.)



(6)     The opposing party must file its response 5 business days[5] after the filing of the Motion, unless otherwise ordered. Any opposition should not exceed 500 words exclusive of caption and signature block.

(7)     To resolve the dispute, the court may:

(A)     decide the issue on the basis of the Short Form Discovery Motion after hearing from the parties to the dispute, either in writing or at a hearing, consistent with DUCivR 7-1(f);

(B)     set a hearing, telephonic or otherwise, upon receipt of the Motion without waiting for any Opposition; and/or

---

[5] This provision is not subject to the addition of three (3) days provided by Fed. R. Civ. P. 6(d).

49

(C)     request further briefing and set a briefing schedule.

(8)     If any party to the dispute believes it needs extended briefing, it should request such briefing in the short form motion or at a hearing, if one takes place. This request should accompany, and not replace, the substantive argument.

(9)     A party subpoenaing a non-party must include a copy of this rule with the subpoena. Any motion to quash, motion for a protective order, or motion to compel a subpoena will follow this procedure.

(10)    If disputes arise during a deposition that any party or witness believes can most efficiently be resolved by contacting the Court by phone, including disputes that give rise to a motion being made under Fed. R. Civ. P. 30(d)(3), the parties to the deposition must call the assigned judge and not wait to file a Short Form Discovery Motion.

(11)    Any objection to a magistrate judge's order must be made according to Fed. R. Civ. P. 72(a), but must be made within 14 days of the magistrate judge's oral or written ruling, whichever comes first, and must request expedited treatment. DUCivR 72-3 continues to govern the handling of objections.

## DUCivR 41-1     SANCTIONS: FAILURE TO NOTIFY WHEN SETTLEMENT IS REACHED BEFORE A SCHEDULED JURY TRIAL

In any case for which a trial date has been scheduled, the parties must immediately notify the court of any agreement reached by the parties which resolves the litigation as to any or all the parties. Whenever a civil action scheduled for jury trial is settled or otherwise disposed of by agreement in advance of the trial date, jury costs paid or incurred may be assessed against the parties and their attorneys as directed by

***Elizabeth Strand et al., v. USANA Health Sciences Inc.***
United States District Court for the District of Utah
Case No. 2:17-CV-00925-HCN-JCB

**ATTACHMENT A**

**DEFINITIONS**

1.　　The terms "YouTube," "you," and/or "your" shall refer to YouTube and each of its predecessors, successors, subsidiaries, divisions, agents, attorneys, representatives, and current and former employees.

2.　　The term "documents" shall mean all writings including any handwriting, typewriting, printing, photo stating, photographing, photocopying, transmitting by electronic mail, text messages, SMS text messages, iMessages, instant messaging, social media posts, social media messaging, Snapchats, tweets, blogs, other forms of electronic communications, or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.  The term "documents" shall expressly include, without limitation, all communications as defined below.  Without limiting the scope of the foregoing, the word "documents" shall include all originals, copies and drafts of all notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, text messages, social media posts and messages, tweets, blogs, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcripts of records and recordings, business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any person(s) any other pertinent information set forth in written language or any electronic or magnetic representation thereof.

3.　　The term "communication" shall mean any written or oral expression, statement or utterance of any nature whatsoever, including, but not limited to, correspondence,

conversations, telecommunications, text messages, SMS text messages, iMessages, instant messaging, social media posts, social media messaging, Facebook posts or messages, Snapchats, audio recordings, voice memos, video posts, tweets, blogs, and other forms of electronic communications.

    4.    The term "person" shall mean all individuals and entities, including without limitations, any sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts or other entities, and shall include the plural as well as the singular.

    5.    The terms "demonstrating," "relating to," or "relate to" means, without limitation, referring to, alluding to, responding to, arising out of, in connection with, commenting on, in respect of, about, regarding, discussing, showing, describing, mentioning, reflecting, analyzing, constituting, evidencing or pertaining to, directly or indirectly, in whole or in part, in the broadest possible sense.

    6.    The past tense shall be construed to include the present tense, and vice versa, to make the request inclusive rather than exclusive.

    7.    Regardless of whether any of these document requests, instructions, and definitions use a term in plural or singular form, the term shall be construed in both singular and plural forms as is necessary to require the most inclusive response.

## DOCUMENTS TO BE PRODUCED

    1.    Produce all documents or data, including without limitation account names, email addresses, and IP addresses, demonstrating the identity of any person who liked, disliked, posted a comment, or otherwise interacted with the video associated with the following link: https://youtu.be/uRnvqfMLGI8.  A true and correct copy of a screen shot of this link is attached hereto as Exhibit 1.

    2.    Produce all documents or data including without limitation account names, email addresses, and IP addresses, demonstrating the identity of any person who liked, disliked, posted a comment, or otherwise interacted with the video associated with the following link:

https://www.youtube.com/watch?v=CqbLrRRITAM&has_verified=1. A true and correct copy of

a screen shot of this link is attached hereto as Exhibit 2.

16136517_v3

# EXHIBIT 1



Dr. Ray Strand, Nutritionist Expert
Ariix Scientific Advisory Board

X: Dr. Ray Strand Endorsement

views • Aug 9, 2011

# EXHIBIT 2



# WHO IS DR. RAY STRAND?

A specialist in nutritional and preventive medicine; one of the world's leading authorities on these subjects

A graduate of the University of Colorado Medical School; post graduate education at Mercy Hospital in San Diego, CA

Private family doctor for over 30 years, with the last 16 years focused on preventive and nutritional medicine.

Sought-after public speaker; lectured throughout the USA, Canada, Australia, New Zealand, Malaysia, and Singapore.

   1:09 / 41:05



Ray Strand Joins the ARIIX Scientific Advisory Board

0 views • Aug 19, 2011

👍 2   👎 0   ➤ SHARE

# Exhibit B

Jason Kerr
jasonkerr@ppktrial.com
Utah Bar No. 8222
Local Counsel for Plaintiffs
PRICE PARKISON & KERR, PLLC
5742 W. Harold Gatty Dr., Suite 101
Salt Lake City, UT 84116

Jarod Bona (admitted *pro hac vice*)
jarod.bona@bonalawpc.com
Aaron Gott (admitted *pro hac vice*)
aaron.gott@bonalawpc.com
Luke Hasskamp (admitted *pro hac vice*)
luke.hasskamp@bonalawpc.com
Matthew Riley (admitted *pro hac vice*)
matthew.riley@bonalawpc.com
David C. Codell (admitted *pro hac vice*)
david.codell@bonalawpc.com
Counsel for Plaintiffs
BONA LAW PC
4275 Executive Square, Suite 200
La Jolla, CA 92037

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| ELIZABETH STRAND and AMARA ENTERPRISES, INC., | Case No.: 2:17-cv-00925-HCN-JCB |
| Plaintiffs, | **SECOND AMENDED COMPLAINT** |
| vs. | JURY TRIAL DEMANDED |
| USANA HEALTH SCIENCES, INC., | |
| Defendant. | |

Plaintiffs Mrs. Elizabeth Strand and Amara Enterprises, Inc. allege as follows upon actual knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

Plaintiffs seek legal and equitable redress for their substantial and ongoing injuries. After Strand entered into a contract with USANA Health Sciences, Inc., and built a successful distributorship benefitting it, USANA fabricated a pretextual reason to wrongfully terminate plaintiffs' contract.[1]

USANA is a multi-level marketing ("MLM") company that sells nutritional products. It recruits associates, who (1) purchase products from USANA to sell and for their own consumption and (2) recruit "down-line associates" to sponsor. In 1995, Strand executed a distributor agreement as an independent contractor allowing her to promote and sell USANA products and recruit her own down-line associates. And over the course of 16 years, she built a very successful distributorship, which was eventually incorporated as Amara, generating annual revenues of $1 million for USANA and earning USANA's emerald director designation and the top-tier compensation plan that comes with it. Over the years, Strand's husband, Dr. Ray Strand—separately and independently from Strand or Amara—began a nonexclusive business relationship to promote USANA products as a nutrition spokesman. Dr. Strand, a well-respected and influential medical doctor author, speaker, and consultant, was paid a modest sum of $2,000

---

[1]     In 1995, Strand entered into a contract with USANA individually doing business as "Redeeming Health International." Strand is informed and believes that in 2004, she took the necessary steps outlined by USANA to associate Amara as a party to the original contract and continued to operate the business through Amara until the events described herein.

a year for his work with USANA, which coincided with other speaking engagements—including with USANA competitors—throughout his relationship with USANA.

USANA's founder eventually handed the reigns to his son, and bad decisions led to public accusations of fraud and corruption in 2007. This led to an eventual exodus of USANA executives, some of whom formed Ariix, LLC to compete with USANA—attracting USANA distributors in significant numbers. These issues undermined USANA's prospective financial position and ability to attract new independent distributors, and Ariix became the focus of animus at USANA.

In 2011, Dr. Strand agreed to speak on behalf of Ariix—as he was free to do: he had no exclusive agreement and had openly spoke for some of USANA's competitors in the past without any complaint. Nevertheless, USANA saw red and retaliated—not by cutting ties with Dr. Strand, but by doing something it felt would hit close to home: it took deliberate steps to manufacture a pretext to wrongfully terminate one of its most successful distributorships, Amara, ultimately wiping away Strand's 16 years of hard work, punishing her for her husband's independent career choices.

USANA apparently thought its drastic action would send a message and chill the mass exodus of its distributors to Ariix and, ultimately, stall the growth of a fierce competitor with whom it shared bad blood. Ultimately, plaintiffs were the ones who suffered: USANA converted Amara's stable customer base into its own, depriving plaintiffs of self-sustaining revenues they had earned and refusing to pay the compensation that it was contractually obligated to pay.

## JURISDICTION AND VENUE

1.     The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because more than $75,000 is in controversy and the parties are citizens of different states—in particular:

     a.     Plaintiff Mrs. Elizabeth Strand is a citizen of and domiciled in South Dakota;

     b.     Plaintiff Amara Enterprises, Inc. is incorporated in South Dakota and its principal place of business is in Rapid City, South Dakota; and

     c.     Defendant, USANA Health Sciences, Inc. is incorporated in Utah and its principal place of business is in Salt Lake City, Utah.

2.     The Court has personal jurisdiction over the Defendant because USANA's principal place of business is in Utah.

3.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because USANA resides in this district. Moreover, the parties agreed to venue in this Court.

## PARTIES

4.     Plaintiff Elizabeth Strand is an individual domiciled in South Dakota and the sole registered owner of Amara Enterprises, Inc.

5.     Plaintiff Amara Enterprises, Inc. is a registered corporation in South Dakota, created for the purpose of distributing USANA nutrition products.

6.     Defendant USANA Health Sciences, Inc., or USANA, is a publicly traded, Utah-based multi-level marketing company that promotes and sells various nutritional products and dietary supplements.

## SUBSTANTIVE ALLEGATIONS

7.      USANA sells its products worldwide through a multi-level marketing system business model. This model utilizes vertically organized independent distributors, which it calls associates. USANA also sells directly to "preferred customers" who purchase USANA products for personal use. Unlike associates, preferred customers cannot resell products.

8.      To become an associate, one must complete an application under the sponsorship of an existing associate, thereby becoming part of the sponsoring associate's "down-line" sales organization. These new associates sign a written contract and agree to USANA's terms and conditions, policies and procedures, and compensation plan. They are further required to purchase a starter kit and are solicited by USANA to purchase additional training and marketing materials, which promise to help associates start and build their businesses.

9.      Each associate is an independent contractor and not a USANA employee, and therefore each associate has complete control to determine how to set up her business, sell USANA products, recruit new down-line associates, or otherwise run her USANA distributorship. USANA does not offer its associates any mandatory training and each associate is allowed freedom to develop her own unique business, restricted only by USANA's policies and procedures.

10.     To earn commissions or other associate incentives, USANA's policies and procedures require each associate to make additional "qualifying purchases" of USANA's products each month. The products received from these qualifying purchases must then either be resold to consumers or personally used by the associates. Therefore, to successfully earn commissions or other associate incentives—bonuses, retail markups, or awards from contests

4

and promotions—an associate must either sell USANA products to customers or recruit and sponsor new down-line associates.

11.     The success of USANA's business model is wholly dependent upon new associate recruitment because product sales to its own associates comprise nearly all of USANA's revenue in any given year. In 2011, for example, net sales to its 45,000 associates in North America comprised 90% of all sales and revenues made that year. In fact, recruitment of new associates into USANA and product sales to those new associates are essential to USANA's business model. To increase its revenue, USANA must increase the number and/or the productivity of its associates.

12.     Because there is only a nominal demand for USANA's products outside its own associates, or in the general consumer retail market—USANA's business model is particularly sensitive to competitors' actions; particularly competitors like Quixtar, an affiliate of Amway, or Ariix, both which manufacture competing nutrition products, and also provide MLM opportunities with competing compensation plans.

13.     In fact, because associates are a disproportionate share of USANA's customer base, USANA must promote compensation plans that are competitive with the compensation plans of other similar MLM companies. Failure to do so results in USANA associates, particularly new associates, leaving USANA to begin working under a competitor's more rewarding compensation plan.

### Strand's Relationship with USANA

14.     In 1995, Mrs. Strand, initially doing business as "Redeeming Health International," applied for and entered into a contract with USANA to become an associate. In

5

2000, Strand incorporated Amara and began operating the distributorship through that entity. Exhibit A (Dkt. 26-1). Strand is informed and believes that she executed all necessary documents and took all necessary actions to associate Amara as a party to the contract with USANA by August 5, 2004, including, but not limited to, all steps outlined in the applicable policies and procedures. In August 2004, USANA began making commission payments directly to Amara.

15.    Throughout 1995 and over the course of the next 16 years, Strand was dedicated to and solely responsible for building her USANA distributorship business (hereinafter "Amara")—selling USANA products to customers and recruiting preferred customers and new associates—thereby creating a substantial down-line business network.

16.    At the height of Amara's development, Strand was running 14 business centers, in total generating over $1 million of commissionable business for USANA each year.

17.    In 1997, as a result of Strand's success, Redeeming Health International (the predecessor to Amara) qualified to become an emerald director within USANA's associate incentive program, which is the top tier of USANA's director program.

18.    As an emerald director, Strand, and later Amara became eligible for incentives and leadership bonuses, which include the most exclusive, lucrative, and valuable incentives USANA offers in its compensation plan.

19.    Further, as a material part of the contract, Strand and Amara were capable of transferring their ownership interest and executive rank and benefits to Strand's children. That is, Strand had the right to continue the business that she had built in perpetuity and then pass it onto her children. Indeed, Strand worked up to 60 hours a week while her three children were at home so that she could build the business up for her children's benefit later in life.

20.     From 1995 to 2011, Strand and Amara were always among the top 50 "earners" for USANA and were usually always among the top 25 "enrollers" of new USANA preferred customers. USANA benefited immensely from her success, and not only financially: USANA featured plaintiffs in marketing materials to show prospective associates the potential for their business (a potential very few would ever reach), and even featured Strand on the front cover of USANA's magazine.

21.     Around the same time that Strand began as a USANA associate, her husband, Dr. Ray Strand—separately and independently from Strand or Amara—began a *nonexclusive* business relationship to consult with USANA as an independent nutrition expert. Dr. Strand, a well-respected and influential medical doctor author, speaker, and consultant, was paid a modest sum of $2,000 a year for his work with USANA, which coincided with other speaking engagements—including with USANA competitors—throughout his relationship with USANA.

22.     In all of his activities, Dr. Strand postured himself as an independent nutrition expert; his mission in life is to spread his professional opinions about the importance of proper nutrition and nutrition supplementing.

### USANA's Market Problems—Competition

23.     Beginning in 2007, USANA began facing a number of adverse market, business, and public challenges, not the least of which was an increased competitive environment created by the entrance of other nutritional MLM companies into the market.

24.     On February 21, 2007, USANA stock was trading at a high of $61.80. Less than a month later, on March 15, 2007, The Wall Street Journal published an article detailing improper business practices by USANA.

25.     The WSJ article, Securities and Exchange Commission filings, and other publicly available documents made clear that USANA's business model was unsustainable because:

a.      the vast majority of the company's reported sales were made to distributors who were not end users of the products;

b.      the company's long-term growth prospects were precarious because growth was almost entirely dependent upon recruitment, rather than upon an increase in retail demand for the company's products;

c.      the overwhelming majority of USANA's distributors—who accounted for an overwhelming majority of the company's revenues—were *losing* money;

d.      nearly three-quarters of distributors failed within the first year;

e.      the top 3% of all distributors were receiving more than two-thirds of all company-paid commissions;

f.      the company misrepresented the average income for distributors;

g.      USANA products were greatly overpriced; and

h.      the company's ability to attract new distributors would be materially and adversely affected if prospective distributors were aware of both the company's failure and collapse rates and associates' inability to resell overpriced products, as well as the fact that the top 3% of USANA associates receive most of the commissions.

26.     Immediately following publication of the WSJ article, shares of USANA's common stock fell over 15%. The SEC announced that it was commencing a formal investigation of USANA.

27. A year later, in March 2008, USANA was faltering. USANA's disappointing financial results for the first quarter of 2008 were due to its difficulties in recruiting new associates. USANA projected that its difficulties in attracting associates would likely result in a 20% decrease in net sales and earnings growth for 2008. Securities analysts downgraded USANA stock and on March 28, its stock fell again by almost 21%.

28. USANA lost approximately 18,000 associates between 2009 and 2011—from 63,000 associates in 2009, to 45,000 associates in 2011.

29. As a result of the scandals, poor decisionmaking, and poor performance that plagued USANA, a number of key USANA executives and board members left USANA and started a new company: Ariix, LLC. Ariix, along with other new entrants in the market, became fierce competition to USANA. While USANA looked for ways to rein in associate incentive payouts, Ariix and other competitors began offering a more attractive compensation plan as an alternative.

30. In May 2011, Dr. Ray Strand, Strand's husband and a well-respected doctor in the nutritional supplement community, entered into discussions to speak on behalf of and consult with Ariix.

## USANA Deliberately Targets Strand

31. USANA's contract with Dr. Strand specified and encouraged his independence and was nonexclusive: he was free to work for Ariix if he wanted. USANA could decide not to work with Dr. Strand in the future, but it knew that wouldn't be enough leverage. Instead, USANA knew that its only leverage was its unrelated contract with plaintiffs.

32.     Dr. Strand spoke with Kevin Guest, USANA's President, late in June 2011. During the course of that discussion Mr. Guest threatened Dr. Strand, asserting a "household clause" in plaintiffs' contract applies to him as a consequence of his marriage to Strand. Guest claimed this "household clause" prohibited Dr. Strand from promoting USANA's competitors, particularly Ariix. If Dr. Strand promoted Ariix's products, he would be putting his wife's business in jeopardy.  In short, USANA sought to force Dr. Strand's compliance with its desires through an unrelated contract with plaintiffs because it could not do so through its contract with Dr. Strand.

33.     Plaintiffs' contract with USANA does not have a "household clause." Rather, plaintiffs are informed and believe that USANA had a set of  "policies and procedures" that include a clause stating that "[i]f any member of an Associate's immediate household (an Associate's spouse or dependents) engages in any activity, which, if performed by the Associate, would violate any provision of the Associate Agreement, such activity will be deemed a violation by the Associate."

34.     Plaintiffs are informed and believe that these "policies and procedures" also include an "unauthorized recruiting" provision that allows USANA associates to "participate in other direct selling or network marketing or multi-level marketing ventures, and Associates may engage in selling activities related to non-USANA products and services, if they desire to do so. However, Associates are prohibited from unauthorized recruiting activities . . . ." The provision is designed to keep USANA associates from cannibalizing their downstream associates by recruiting them to sell for USANA competitors.

35.     USANA changed its policies and procedures annually without providing a copy to its distributors, consequently plaintiffs do not have a copy of the 2011 policies and procedures.

36.     Even assuming the household clause applies to both Strand (an individual) and Amara (a corporation) similarly, Dr. Strand did not "participate in other direct selling . . . ventures" or engage in "unauthorized recruiting activities"; he speaks on behalf of nutrition companies about nutrition, as his separate independent consulting agreement with USANA contemplates.

37.     Additionally, Mr. Guest's threats were contrary to USANA's course of dealing: throughout Amara's contract with USANA—or even during Dr. Strand's own contract with USANA—Dr. Strand openly promoted other nutritional products as an independent third-party medical expert, including those that competed with USANA, in the same way that he intended to do so for Ariix. Indeed, USANA originally offered Dr. Strand a consultation agreement because it knew Dr. Strand engaged in public promotions on behalf of manufacturers of nutritional, personal care, and weight management products—some of which were direct competitors of USANA. These included Quixtar, the Yager Group, Nutrilite, and Nature's Way. USANA knew Dr. Strand was a publicly known and well-respected author and commentator. He had published books, blogs, videos, and articles concerning health and nutritional supplements that other companies used to market their products—including two books titled *Healthy for Life* and *What Your Doctor Doesn't Know about Nutritional Medicine May Be Killing You*.

38.     But at no time from 1995 to May 2011 did USANA raise concerns related to Dr. Strand's relationships with USANA's competitors, or that any such relationship was in violation of any term of plaintiffs' contract. Indeed, Dr. Strand's contract required USANA to explore

additional avenues by which USANA could actively promote Dr. Strand as a leader in the field of nutritional medicine. His work for multiple companies showed both his expertise in nutritional medicine and his independence, which brought him broader name recognition and thus benefited USANA. So not only was Dr. Strand free to provide similar services for USANA's competitors, he was encouraged to do so by USANA. And not once—until Ariix—did USANA claim that either Dr. Strand or plaintiffs were breaching a contractual obligation. In fact, USANA admitted as much when the Strands pressed USANA chief legal officer and general counsel James Bramble about these facts. According to Bramble, "Ariix is just too close."

39.     USANA consistently states in its 10-K Annual Report filed with the SEC, that— "We rely on non-employee, independent Associates to market and sell our products to generate our sales. Associates typically market and sell our products on a part-time basis *and likely will engage in other business activities, some of which may compete with us*."

40.     Plaintiffs have never violated this term of the distributor agreement. Indeed, USANA's course of dealing shows that it did not view Dr. Strand's activities as violating the household clause and unauthorized recruiting clause throughout the years that Dr. Strand carried on with similar activities for USANA competitors. Even if USANA did view those activities as violations—a view that would fatally conflict with the terms of the Dr. Strand contract described above—it failed to ever seek to enforce those policies and procedures and therefore waived them. USANA's threats to Mrs. Strand and Amara were baseless.

### USANA's Deliberate Acts to Wrongfully Terminate
### Strand Upon Its Improper and Manufactured Pre-Textual Cause

41.     Despite no legitimate basis to apply or enforce the household and unauthorized recruiting clauses against Amara, Bramble repeated and reiterated to Mrs. Strand on July 11,

2011 both that a "household clause" applies to Dr. Strand and that if he participated in the Ariix webinar; plaintiffs would be subject to termination under USANA's policies and procedures.

42.     As USANA's top in-house attorney, Mr. Bramble was competent in the practice of law and knew that Dr. Strand's activities did not and could not form a basis to terminate Amara. Rather, understanding that Mrs. Strand would rely upon his statements, Mr. Bramble, on July 8, 2011 made such statements, for the deliberate purpose of misinforming Mrs. Strand of her contractual rights in the hope it would induce her to take action that *could* lead to an actual breach.

43.     Strand made clear to Mr. Bramble at the July 8 meeting that she intended to sell Amara—as she is contractually entitled to do. Strand did not want to sell the business, but Bramble had made clear that USANA was going to terminate Amara if Dr. Strand moved forward with Ariix—reasoning Strand now realizes in hindsight was a sham.  Strand knew that if she sold, she would at least get *something* for all the hard work she put into it. She made inquiries concerning the time it would take to approve a buyer and complete the transfer and sale of Amara. Mr. Bramble knew Strand sought to ensure the sale of Amara would be consummated prior in time to Dr. Strand's attendance of the Ariix webinar—thereby ensuring USANA would not wrongfully and unilaterally terminate plaintiffs, leaving her with nothing.

44.     In response to Mrs. Strand's questions, Mr. Bramble stated that once Strand selected a buyer, USANA's approval and transfer process would take two weeks to complete. Mr. Bramble knew Strand would rely upon the two-week time period he expressed at the July 8 meeting in coordinating the sale of Amara before her husband promoted Ariix's products.

45.     Relying on Mr. Bramble's statements, Strand took immediate action to select a buyer who had the character, competence, and experience to continue running her business successfully. On July 12, 2011, Strand, in full accordance with the instructions Mr. Bramble gave her, submitted the application for Amara's sale and transfer, expecting the sale would be complete no later than July 26, 2011.

46.     Despite USANA's representations to quickly act, it took no meaningful action to approve the prospective buyer. Rather, it took deliberate steps to delay and sabotage the transfer while it began taking steps to terminate plaintiffs. USANA's inaction was motivated by the understanding that USANA would benefit most if it did not have to continue paying emerald director commissions and benefits to a new buyer.

47.     As a pretext to termination, USANA started an "investigation" while intentionally delaying the sale of Amara by imposing new processes contrary to USANA's policies and procedures, its own practices, and the course of dealing between the parties, and then further requiring the prospective buyer to undergo an unprecedented three-week "mandatory training period" to learn USANA's policies and procedures.

48.     USANA extended the expected and promised transfer period from two to seven weeks and imposed significant, time-consuming new requirements that cost the buyer significant amounts of money neither Strand nor the buyer had expected. This undermined the buyer's confidence in USANA, which caused her to withdraw her offer to purchase Amara on August 6, 2011.

49.     Two days following the prospective buyer's withdrawal, on August 8, 2011, Mr. Bramble notified Strand that Ariix was advertising Dr. Strand's webinar with Ariix on August 9,

2011. Mr. Bramble threatened Strand, stating that if Dr. Strand went forward with the webinar, such actions would constitute a breach of the Amara contract. Mr. Bramble knew Dr. Strand's action would not constitute a violation or breach of the plaintiffs' contract. Rather, Mr. Bramble's statement was made to deliberately intimidate and misinform plaintiffs of their contractual rights.

50.     On August 9, 2011, Dr. Strand participated in a webinar with Ariix. His participation in the webinar was consistent with his usual practice of providing third-party expertise on the medical importance of nutrition. Dr. Strand's actions in no way violated any provision of plaintiffs' contract. The nutritional advice Dr. Strand provided in the webinar did not influence any USANA customer, preferred customer, or associate to choose either the business opportunity or the products offered by Ariix over USANA's competing products, nor did the advice have any other cognizable effect on USANA's business. Accordingly, even if Dr. Strand's participation in the webinar were considered a breach—which plaintiffs vigorously deny—such breach was not material.

51.     Following Dr. Strand's webinar with Ariix on August 9, 2011, Mr. Bramble set out to deliberately intimidate Mrs. Strand, making statements which he knew were undoubtedly false—in particular, that USANA had justification to terminate the plaintiffs' contract.

52.     On September 8, 2011, Mr. Bramble sent a letter on behalf of USANA wrongfully terminating plaintiffs citing Section 3.6 of USANA's policies and procedures. Section 3.6 of USANA's policies and procedures only forbids distributors from selling similar or competitive products to other USANA distributors or recruiting USANA distributors to sell such products for USANA competitors and would not apply to the sorts of activities—giving speeches about

nutrition—Dr. Strand engaged in. Although by its terms the provision did not apply to Dr. Strand, USANA claimed that Dr. Strand's webinar for Ariix **could** have been viewed by USANA distributors. Moreover, even if the provision did apply, USANA waived any right to enforce it by failing to do so over the course of 16 years during which Dr. Strand was engaged in exactly the same activities with other USANA competitors.

53.     USANA has a pattern, practice, and history of wrongfully terminating distributors for its own enrichment. In December 2008, for example, an arbitrator determined that USANA wrongfully terminated the distributorship of Praise Enterprises Ltd., a distributorship owned by Chris and Elizabeth Kutschera. In that case, USANA accused the Kutscheras of breaching their contract where no breach had occurred. Rather, it was USANA, acting in bad faith, who breached its agreement with the Kutscheras, causing damages of approximately $7 million and an arbitration judgment against USANA.

54.     Plaintiffs' damages are extensive. USANA did not merely wrongfully terminate the contract—it unjustly enriched itself by depriving plaintiffs of a distributorship with which they had created a revenue stream that would have continued in perpetuity. As long as the distributorship remained, plaintiffs' down-line distributors would continue to sell products and continue to recruit their own down-line distributors in a cycle that would continue indefinitely. Indeed, one of USANA's selling points was that anyone could set up a distributorship and, once it became successful, it would run itself.

## FIRST CLAIM
### Breach of Good Faith and Fair Dealing

55.     Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as if fully set forth at length herein.

56.     The distributor agreement, along with USANA's compensation plan and DBA registration form, are a valid and enforceable written contract between plaintiffs and USANA.

57.     At all times, plaintiffs fully and completely performed each and every term of the contract in good faith and in accordance with their obligations.

58.     The written contract manifests a clear common purpose whereby plaintiffs, acting as an independent contractor and in accordance with the contract, would be allowed to distribute USANA products, otherwise develop the distributorship business, and earn revenue from those activities.

59.     Plaintiffs were justified in their reliance that USANA would act in good faith while executing the written contract and would take no action in bad faith to frustrate or otherwise diminish the clear purpose of the contract.

60.     Throughout 2011, USANA took numerous actions more fully detailed above, including, but not limited to, manufacturing a pretextual cause to terminate plaintiffs and delaying its approval of Amara's sale, which were deliberately taken in bad faith and for no other purpose but to frustrate and undermine the common purpose each party agreed to promote under the contract.

61.     USANA's bad faith actions caused plaintiffs substantial injury.

### SECOND CLAIM
### Breach of Written Contract–Section 3.15 of USANA's Policies and Procedures

62.     Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as if fully set forth at length herein.

63.     The distributor agreement, along with USANA's compensation plan, policies and procedures, and DBA registration form—to the extent not otherwise invalid or unenforceable

under policy or the law—are a valid and enforceable written contract between plaintiffs and USANA.

64. USANA's policies and procedures establishes an Associate's right to sell its distributorship rights to another person.

65. Specifically, USANA's policies and procedures provide that USANA will approve the sale of an Associate's distributorship rights if the Associate meets several specific enumerated requirements. (*See* Ex. B. § 3.15.)

66. On July 8, 2011, Mrs. Strand notified USANA of her intent to exercise her right to sell her distributorship rights under Section 3.15 of USANA's policies and procedures.

67. On or by July 12, 2011, Mrs. Strand fully performed and fulfilled her obligations as outlined and enumerated under the written contract to obtain USANA's approval to sell her distributorship rights to a qualified buyer, Lynne Shricker.

68. Notwithstanding Mrs. Strand's full performance and meeting the criteria for receiving USANA approval for sale under the written contract, USANA refused to approve the sale.

69. Indeed, USANA unilaterally and unlawfully attempted to modify the written contract by demanding Mrs. Strand fulfill ever-changing, unwritten, and additional requirements nowhere found in the written contract before it would approve the sale. This included but was not limited to USANA requiring the buyer to go through a multi-stage interview process, and complete mandatory training and testing over the terms of the written contract and distributor materials.

70. USANA's refusal to approve Mrs. Strand's sale of her distributorship rights and refusal to act in accordance with the express terms set forth in Section 3.15 of the policies and procedures in relation to the sale constitute a breach of the written contract, which caused the prospective buyer, Lynne Shricker, to withdraw her offer to buy Mrs. Strand's distributorship rights.

71. Consequently, and shortly after Mrs. Shricker's offer to buy Mrs. Strand's rights, USANA terminated Mrs. Strand's distributorship because of Dr. Strand's work with Ariix, and Mrs. Strand received no value for the profitable distributorship rights she possessed.

72. USANA's breach of the agreement due to its failure to approve the sale of Mrs. Shricker caused Plaintiffs to suffer substantial injury.

**THIRD CLAIM**
**Breach of Written Contract—Wrongful Termination**

73. Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as if fully set forth at length herein.

74. The distributor agreement, along with compensation plan and DBA registration form, are a valid and enforceable written contract entered into between plaintiffs and USANA.

75. At all times, plaintiffs fully and completely performed each and every term of the contract in good faith and in accordance with their obligations.

76. As a material term of the contract, the parties agreed that the contract could only be terminated "for cause," or only if and after the contract's express terms were violated by plaintiffs.

77. Plaintiffs at all relevant times acted in good faith executing the contract and never violating any term with USANA.

19

78.     On September 8, 2011, USANA wrongfully terminated the written contract
without cause. Even if the policies and procedures USANA sought to enforce were applicable,
USANA waived its right to enforce them by failing to do so throughout the parties' relationship.

79.     The wrongful termination of the contract caused plaintiffs to suffer
substantial injury.

### REQUEST FOR RELIEF

WHEREFORE, plaintiffs request that this Court:

A.     Enter judgment against defendant;

B.     Award Plaintiffs damages, including but not limited to actual damages,
general damages, restitutionary damages, and punitive damages;

C.     Award Plaintiffs equitable relief;

D.     Award plaintiffs pre- and post-judgment interest at the applicable rates on
all amounts awarded; and

E.     Order any other such relief as the Court deems appropriate.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims.

Respectfully submitted,

Dated: July 9, 2020                          PRICE PARKISON & KERR, PLLC

/s/ Jason Kerr
JASON KERR
jasonkerr@ppktrial.com
Utah Bar No. 8222
Local Counsel for Plaintiffs
PRICE PARKISON & KERR, PLLC
5742 W. Harold Gatty Dr., Suite 101

Salt Lake City, UT 84116

Jarod Bona (admitted pro hac vice)
jarod.bona@bonalawpc.com
Aaron Gott (admitted pro hac vice)
aaron.gott@bonalawpc.com
Luke Hasskamp (admitted pro hac vice)
luke.hasskamp@bonalawpc.com
Matthew Riley (admitted pro hac vice)
matthew.riley@bonalawpc.com
David C. Codell (admitted pro hac vice)
david.codell@bonlawpc.com
Counsel for Plaintiffs
BONA LAW PC
4275 Executive Square Suite 200
La Jolla, CA 92037

# Exhibit C-1

Jason Kerr
jasonkerr@ppktrial.com
Utah Bar No. 8222
Local Counsel for Plaintiffs
PRICE PARKISON & KERR, PLLC
5742 W. Harold Gatty Dr. Suite 101
Salt Lake City, UT 84116

Jarod Bona (admitted *pro hac vice*)
jarod.bona@bonalawpc.com
Aaron Gott (admitted *pro hac vice*)
aaron.gott@bonalawpc.com
Counsel for Plaintiffs
BONA LAW PC
4275 Executive Square, Suite 200
La Jolla, CA 92037

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ELIZABETH STRAND and AMARA ENTERPRISES, INC., | Case No.: 2:17-cv-00925-BCW |
| Plaintiffs, | **Plaintiffs' Responses and Objections to Defendant USANA Health Sciences, Inc.'s Interrogatories** |
| vs. | |
| USANA HEALTH SCIENCES, INC., | |
| Defendant. | |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs, Elizabeth Strand and Amara Enterprises, Inc. (together, "Plaintiffs"), hereby respond to USANA Health Sciences, Inc.'s ("USANA") First Set of Interrogatories (the "Requests" or "Interrogatories").

## GENERAL STATEMENTS

1.     **Objections Not Waived**. By answering these Interrogatories, Plaintiffs do not

communicated since the termination.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiffs object to this interrogatory as overly broad, unreasonably burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request is not proportional to the needs of the case under Rule 26 of the Federal Rules of Civil Procedure. Plaintiffs further object that the terms "member," "substantial," "down-line," "business network," "created," and the phrases "substantial down-line business network," are vague and ambiguous. Plaintiffs further object that the interrogatory seeks information that is protected by the attorney-client or work-product privileges. Plaintiffs further object that the request improperly seeks information that is confidential, proprietary, or subject to trade protections. Plaintiffs further object that the interrogatory is compound. Plaintiffs object to these interrogatories are unduly burdensome to the extent that they seek information outside of a relevant time period, which is from July 1995 to September 8, 2011.

Plaintiffs' investigation is ongoing and we reserve the right to supplement our response to this interrogatory.

Plaintiffs stand on their objections and will meet and confer with USANA to address issues and define the relevant scope of this interrogatory.

**INTERROGATORY NO. 11:**

Identify all persons who participated in, or ever watched or listened to the webinar.

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiffs object to this interrogatory as overly broad, unreasonably burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request is not proportional to the needs of the case under Rule 26 of the Federal Rules of Civil Procedure. Plaintiffs further object that the terms "persons," "participated," "watched," "listened," and the phrases "all persons who participated in," and "ever watched or listened to the webinar" are vague and ambiguous. Plaintiffs further object that the interrogatory seeks information that is protected by the attorney-client or work-product privileges. Plaintiffs further object that the request improperly seeks information that is confidential, proprietary, or subject to trade protections Plaintiffs further object that the interrogatory is compound. Plaintiffs object to these interrogatories as unduly burdensome to the extent that they seek information outside of a relevant time period, which is from July 1995 to September 8, 2011.

Plaintiffs' investigation is ongoing and we reserve the right to supplement our response to this interrogatory.

Subject to and without waiver of the foregoing specific and general objections, Plaintiffs respond as follows:

Besides her husband, Dr. Ray Strand, Ms. Strand is not aware of anyone else who participated in, watched, or listened to the webinar.

**INTERROGATORY NO. 12:**

Identify all persons who have knowledge of the damages you allegedly suffered as set forth

# Exhibit C-2

Jason Kerr
jasonkerr@ppktrial.com
Utah Bar No. 8222
Local Counsel for Plaintiffs
PRICE PARKISON & KERR, PLLC
5742 W. Harold Gatty Dr. Suite 101
Salt Lake City, UT 84116

Jarod Bona (admitted *pro hac vice*)
jarod.bona@bonalawpc.com
Aaron Gott (admitted *pro hac vice*)
aaron.gott@bonalawpc.com
Counsel for Plaintiffs
BONA LAW PC
4275 Executive Square, Suite 200
La Jolla, CA 92037

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ELIZABETH STRAND and<br>AMARA ENTERPRISES, INC.,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>USANA HEALTH SCIENCES, INC.,<br><br>                    Defendant. | Case No.: 2:17-cv-00925-JNP-PMW<br><br>**Plaintiffs' Responses and Objections to Defendants USANA Health Sciences, Inc.'s Requests for Production of Documents** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Elizabeth Strand and Amara Enterprises, Inc. (together, "Plaintiffs") hereby respond to USANA Health Sciences, Inc.'s ("USANA") Requests for Production of Documents ("Requests").

## GENERAL RESPONSES AND OBJECTIONS

Plaintiffs incorporate the following General Responses and Objections into their specific responses to each of USANA's specific requests, whether or not such

the custody, possession, or control of USANA or is otherwise readily or equally available to USANA as it is to Plaintiffs. Plaintiffs' investigation for responsive documents is ongoing and so reserve the right to supplement any productions.

Subject to and without waiver of the foregoing specific and general objections, Plaintiffs respond as follows:

Plaintiffs will produce non-privileged and responsive materials between July 1995 to September 8, 2011, not otherwise protected or requiring redactions in accordance with the parties' agreements, the Federal Rules of Civil Procedure or other applicable statute or regulation, or by any order of the court, which are within Plaintiffs' possession, custody and control.

## AMENDED RESPONSE TO REQUEST NO. 3

Plaintiffs have produced all non-privileged responsive documents within plaintiffs' possession, custody or control located after a reasonable inquiry and search in accordance with the parties' agreements, the Federal Rules of Civil Procedure or other applicable statute or regulation, or by any order of the Court. Documents withheld on privilege grounds are identified on plaintiffs' privilege logs.

## REQUEST FOR PRODUCTION NO. 4

Produce all documents, including without limitation communications, relating to the webinar, including without limitation documents reflecting the identity of participants, marketing materials, documents reflecting the planning of or preparation for the webinar, any associates joining Ariix as a result of the webinar, any sales to Ariix as a result a result of the webinar, and any recordings of the webinar itself.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 4

Plaintiffs object to this request as overly broad, unreasonably burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request is not proportional to the needs of the case under Rule 26 of the Federal Rules of Civil Procedure. Plaintiffs further object that the terms "associates," and "joining," and the phrases "reflecting the planning of or preparation for the webinar," are vague and ambiguous. Plaintiffs further object that the request seeks documents that are protected by the attorney-client, work-product, or common interest privileges. Plaintiffs further object that the request improperly seeks documents that are confidential, proprietary, or subject to trade protections. Plaintiffs object to this request as overly broad to the extent that it seeks the production of documents outside of the relevant time period, which is from July 1995 to September 8, 2011, causing undue burden and expense. Plaintiffs object to this request to the extent that it seeks the documents and information in the control of non-parties, including but not limited to Dr. Ray Strand. Plaintiffs' investigation for responsive documents is ongoing and so reserve the right to supplement any productions.

Subject to and without waiver of the foregoing specific and general objections, Plaintiffs respond as follows:

Plaintiffs stand on their objections but are willing to continue their meet and confer with USANA to address issues and define the relevant scope of this request.

## AMENDED RESPONSE TO REQUEST NO. 4

Plaintiffs have produced all non-privileged responsive documents within plaintiffs'

possession, custody or control located after a reasonable search and inquiry in accordance with the parties' agreements, the Federal Rules of Civil Procedure or other applicable statute or regulation, or by any order of the Court. Plaintiffs are not withholding any documents in relation to this request.

## REQUEST FOR PRODUCTION NO. 5

Produce all documents, including without limitation communications, relating to the termination.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 5

Plaintiffs object to this request as overly broad, unreasonably burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request is not proportional to the needs of the case under Rule 26 of the Federal Rules of Civil Procedure. Plaintiffs further object that the phrase "relating to the termination," is vague and ambiguous. Plaintiffs further object that the request seeks documents that are protected by the attorney-client, work-product, marital privilege or common interest privileges. Plaintiffs further object that the request improperly seeks documents that are confidential, proprietary, or subject to trade protections. Plaintiffs further object that the request is compound. Plaintiffs further object that the request seeks the production of documents and information that is already in the custody, possession, or control of USANA or is otherwise readily or equally available to USANA as it is to Plaintiffs. Plaintiffs object to this request on the grounds it is overly broad to the extent that it seeks the production of documents outside of the relevant time period, which is from July 1995 to September 8, 2011, causing undue burden and expense. Plaintiffs' investigation for responsive documents

# Exhibit C-3

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **ELIZABETH STRAND; and AMARA ENTERPRISES, INC.,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiffs,** | **Case No. 2:17-cv-00925-HCN-PMW** |
| **v.** | |
| **USANA HEALTH SCIENCES, INC.,** | **District Judge Howard C. Nielson, Jr.** |
| **Defendant.** | **Chief Magistrate Judge Paul M. Warner** |

District Judge Howard C. Nielson, Jr. referred this case to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court are Plaintiffs Elizabeth Strand ("Ms. Strand") and Amara Enterprises, Inc.'s ("Amara") (collectively, "Plaintiffs") (1) Motion for Short Form Discovery re: Electronically Stored Information (the "ESI Motion");[2] (2) Motion for Protective Order and to Stay Deposition (the "Original Motion to Stay');[3] (3) Amended Motion for Protective Order and to Stay Deposition (the "Amended Motion to Stay");[4] (4) Motion to Quash Dr. Strand's Subpoena to Testify (the "Motion to Quash");[5] (5) Motion to

---

[1] *See* docket no. 113.

[2] *See* docket no. 65.

[3] *See* docket no. 74

[4] *See* docket no. 80.

[5] *See* docket no. 79.

Compel Discovery Responses (the "First Motion to Compel");[6] and, (6) Second Motion to Compel Discovery Responses (the "Second Motion to Compel").[7] Also before the court are Defendant USANA Health Sciences, Inc.'s ("USANA" or "Defendant") (1) Motion to Compel Responses to Interrogatories (the "Motion re: Interrogatories");[8] (2) Motion for Protective Order to Stay 30(b)(6) Depositions (the "Motion re: 30(b)(6) Depositions");[9] and, (3) Motion to Compel Responses to Requests for Production (the "RFP Motion").[10]

The court has carefully reviewed the written memoranda submitted by the parties. Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will decide the motions on the basis of the written memoranda. *See* DUCivR 7-1(f).

Before addressing the above-referenced motions, the court sets forth the following general legal standards governing discovery. Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is *relevant to any party's claim or defense and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery *need not be admissible in evidence to be discoverable*.

---

[6] *See* docket no. 81.

[7] *See* docket no. 96.

[8] *See* docket no. 71.

[9] *See* docket no. 70.

[10] *See* docket no. 72.

Fed. R. Civ. P. 26(b)(1) (emphasis added). "'Relevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action.'" *Groesbeck v. Bumbo Int'l*, No. 1:13-CV-00090, 2015 WL 365922, at *1 (D. Utah Jan. 27, 2015) *(quoting Smith v. MCI Telecomm. Corp.,* 137 F.R.D. 25, 27 (D. Kan. 1991)). "The district court has broad discretion over the control of discovery, and [the Tenth Circuit] will not set aside discovery rulings absent an abuse of that discretion." *Sec. & Exch. Comm'n v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (quotations and citations omitted).

## I. <u>Plaintiffs' Motions</u>

The court first addresses the motions filed by Plaintiffs.

### a. **ESI Motion**

On October 3, 2017, the court entered a stipulated scheduling order, which contains a one-paragraph provision addressing how ESI will be handled in this case (the "Stipulated ESI Provision").[11] In the ESI Motion, Plaintiffs argue that Defendant has "abused" "insufficiencies" in the Stipulated ESI Provision to "justify inadequate, unreasonable, and unusable document productions."[12] As a remedy, Plaintiffs ask this court to enter their proposed order governing discovery of ESI. The court declines to do so. The Stipulated ESI Provision governs discovery of ESI in this case. If any party believes that provision has been violated, they may file a motion to compel, or any other appropriate motion to enforce the Stipulated ESI Provision. The ESI Motion is therefore denied.

---

[11] *See* docket no. 28, paragraph II(g).

[12] Docket no. 65 at 1.

### b. Original Motion to Stay and Amended Motion to Stay

First, although Plaintiffs did not withdraw the Original Motion to Stay when they filed the Amended Motion to Stay, the court concludes that the Amended Motion to Stay is the operative motion, and therefore, the Original Motion to Stay is hereby moot. The Amended Motion to Stay seeks a stay of Ms. Strand's deposition, originally scheduled for April 16, 2019. The court finds good cause to grant the motion. The parties are ordered to meet and confer to find a mutually agreeable date to reschedule the deposition within thirty (30) days of the date of this order. If the parties cannot agree, either party may file a motion and the court will set a date for the deposition.

### c. Motion to Quash

The Motion to Quash seeks an order quashing the subpoena for non-party Dr. Ray Strand ("Dr. Strand") to testify at a deposition. Dr. Strand is a fact witness, not a party, and therefore the rules governing subpoenas of non-parties apply. The Motion to Quash argues, and the court agrees, that the subpoena does not comply with rule 45 of the Federal Rules of Civil Procedure or 28 U.S.C. § 1821(b) and (d). The Motion to Quash is therefore granted. If Defendant still intends to depose Dr. Strand, Defendant shall re-serve the subpoena in compliance with the applicable rules and statutes.

### d. First Motion to Compel

The First Motion to Compel asks this court to compel a "comprehensive examination of USANA's discovery practices."[13] The court will not issue an advisory opinion based on generalized allegations of Defendant's failure to produce discovery. The rules provide a process

---

[13] Docket no. 96 at 2 (describing the First Motion to Compel).

4

for discovery and a remedy for review of violations of those rules. If Plaintiffs believe that Defendant has failed to produce discovery in response to specific responses, they must file a motion based on a discrete dispute. The First Motion to Compel is therefore denied.

### e. Second Motion to Compel

In the Second Motion to Compel, Plaintiffs seek an order compelling responses to requests related to: a) Ariix, LLC ("Ariix") (Requests for Production ("RFP") Nos. 17, 18, 22, 23, 29, and Interrogatory No. 8) (collectively, the "Ariix Requests"); and, b) USANA's enforcement action related to the handling of distributorship sales (RFP Nos. 20, 21, 26, and Interrogatory Nos. 5, 8, and 11) (collectively, the "Other Requests"). Plaintiffs' arguments in the Second Motion to Compel focus solely on the relevance of the requested discovery. However, relevance is only one part of the standard for permitted discovery under rule 26(b). Defendant has legitimately raised objections on the basis of proportionality and undue burden. Accordingly, the Second Motion to Compel is denied. Nothing in this order prevents Plaintiffs from refiling their motion if they wish to address the other objections raised by Defendant.

## II.  USANA's Motions

The court next addresses the motions filed by USANA.

### a. Motion re: Interrogatories

The Motion re: Interrogatories seeks an order compelling Plaintiffs to completely respond to Interrogatory Nos. 1, 2, 3, 5, 6 7, 9, 10, and 12. The instructions for the Interrogatories served by Defendant define the term "identity" or "identify" as follows:

> With respect to a person or persons, to state (a) full name; (b) occupation, title or job description and date(s) of employment; (c) present or last known business and home  addresses and telephone numbers; and (d) personal and business e-mail address(es);

> With respect to a corporation or other entity, to state its (a) full name; (b) form of entity (i.e., corporation, partnership, etc.); (c) type of business engaged in; (d) present business address and telephone number; and (e) any website, email address or other electronic means you used to communicate with it. [14]

In response to Interrogatory Nos. 1, 2, 5, 6, 7, and 12, Plaintiffs have not provided all the information requested by Defendant in identifying the person or persons, or corporation or other entity responsive to each Interrogatory. The court concludes that the information sought by Defendant is relevant, proportional, and not unduly burdensome. Plaintiffs' objections that the information sought regarding the identified persons and entities is already known by USANA, publicly available, or previously provided, do not change the analysis.

In response to Interrogatory Nos. 3, 9, and 10, Plaintiff insists that they have provided "sufficient" responses to these Interrogatories. The court disagrees. The information sought by Interrogatory Nos. 3, 9, and 10, is relevant and proportional. Plaintiffs cannot avoid providing relevant, discoverable information by unilaterally limiting the scope of the requests or producing only those documents they believe are "sufficient to show Ms. Strand's income" during the requested time frame.

Accordingly, the Motion re: Interrogatories is granted, and Plaintiffs shall provide complete responses to Interrogatory Nos. 1, 2, 3, 5, 6 7, 9, 10, and 12 within fourteen (14) days of the date of this order.

### b.  Motion re: 30(b)(6) Depositions

In its Motion re: 30(b)(6) Depositions, Defendant seeks an order staying the 30(b)(6) depositions and requiring Plaintiffs to withdraw and re-serve their 30(b)(6) deposition notices

---

[14] Docket no. 71-2 at 3.

(the "Notices") as a single updated notice. Defendant argues that the topics identified in the two notices served by Plaintiffs are not specific enough to allow Defendant to designate representatives, and that some topics are more properly served as interrogatories. The court concludes that the Notices should be withdrawn and re-served. However, the court will not make any ruling on the specificity of individual topics, or whether certain topics are better served as interrogatories. Instead, the Motion re: 30(b)(6) Depositions is granted in part and denied in part. Plaintiff shall withdraw the Notices and re-serve a single 30(b)(6) deposition notice, and Plaintiffs shall have seven (7) hours total to depose Defendant's 30(b)(6) witnesses. Defendant may designate as many 30(b)(6) witnesses it needs to in order to address the topics Plaintiffs identify in their renewed 30(b)(6) notice.

### c. RFP Motion

Finally, Defendant's RFP Motion seeks an order compelling Plaintiffs to produce all information responsive to their requests for production ("RFP") Nos. 1-16 and 18. Plaintiffs argue that they should not be required to supplement their responses because they have "done what they promised"[15] in responding to the RFPs. Again, Plaintiffs are not entitled to decide what information is "sufficient" when Defendant has requested relevant, discoverable documents, as it has done here. Nor can Plaintiffs object to producing documents without identifying which documents are being withheld on the basis of each objection. Accordingly, the RFP Motion is granted. Plaintiffs shall amend their responses to the RFPs as detailed below.

---

[15] Docket no. 78 at 2.

## CONCLUSION

In summary, for the reasons set forth above, the court ORDERS as follows:

1. Plaintiffs' ESI Motion[16] is hereby DENIED;

2. Plaintiffs' Original Motion to Stay[17] is hereby MOOT;

3. Plaintiffs' Amended Motion to Stay[18] is hereby GRANTED. The parties are ORDERED to meet and confer to find a mutually agreeable date to reschedule the deposition within thirty (30) days of the date of this order. If the parties cannot agree, either party may file a motion and the court will set a date for the deposition;

4. Plaintiffs' Motion to Quash[19] is hereby GRANTED;

5. Plaintiffs' First Motion to Compel[20] is hereby DENIED;

6. Plaintiffs' Second Motion to Compel[21] is hereby DENIED;

7. Defendant's Motion re: Interrogatories[22] is hereby GRANTED. Within fourteen (14) days of the date of this order, Plaintiffs are ORDERED to amend their responses to Interrogatory Nos. 1, 2, 3, 5, 6, 7, 9, 10, and 12 and provide all responsive information;

---

[16] *See* docket no. 65.

[17] *See* docket no. 74.

[18] *See* docket no. 80.

[19] *See* docket no. 79.

[20] *See* docket no. 81.

[21] *See* docket no. 96.

[22] *See* docket no. 71.

8. Defendant's Motion re: 30(b)(6) Depositions[23] is hereby GRANTED IN PART and DENIED IN PART. Plaintiffs shall have seven (7) hours total to depose Defendant's 30(b)(6) witnesses.

9. Defendant's RFP Motion[24] is hereby GRANTED. Plaintiffs are ORDERED to, within fourteen (14) days of the date of this order:

   a. Amend their responses to Defendant's RFP to identify whether any documents are being withheld on the basis of each objection;

   b. Amend their responses to Defendant's RFP Nos. 3, 5-10, 12, and 14 and produce all responsive, non-privileged documents without limiting the requested time period; and

   c. Amend their responses to Defendant's RFP Nos. 2, 4, 15, 16, and 18 and produce all responsive, non-privileged documents.

IT IS SO ORDERED.

DATED this 28th day of June, 2019.

BY THE COURT:

_____

PAUL M. WARNER
Chief United States Magistrate Judge

---

[23] *See* docket no. 70.

[24] *See* docket no. 72.

# Exhibit C-4

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Utah

| | | |
|---|---|---|
| ELIZABETH STRAND, ET AL. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   2:17-cv-00925-JNP-PMW |
| USANA HEALTH SCIENCES, INC. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:               ARIIX c/o ARIIX LLC, Registered Agent
               563 W. 500 S., Ste 340, Bountiful, UT  84010

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   See Attachment A hereto.

| Place: Fabian VanCott | Date and Time: |
|---|---|
| 215 S. State Street, Suite 1200 Salt Lake City, UT  84111 | 11/05/2018 5:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:       10/16/2018

| | OR | |
|---|---|---|
| *CLERK OF COURT* | | /s/ Tyson C. Horrocks |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
USANA HEALTH SCIENCES, INC.                                    , who issues or requests this subpoena, are:

Tyson C. Horrocks/Fabian VanCott 215 S State St. #1200, SLC UT 84111, 801-531-8900, thorrocks@fabianvancott.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   2:17-cv-00925-JNP-PMW

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

***Elizabeth Strand et al., v. USANA Health Sciences Inc.***
United States District Court for the District of Utah
Case No. 2:17-CV-00925-JNP-PMW

## ATTACHMENT A

## DEFINITIONS

1.      The terms "Ariix," "you," and/or "your" shall refer to Ariix, LLC and each of its predecessors, successors, subsidiaries, divisions, agents, attorneys, representatives, and current and former employees.

2.      The term "documents" shall mean all writings including any handwriting, typewriting, printing, photo stating, photographing, photocopying, transmitting by electronic mail, text messages, SMS text messages, iMessages, instant messaging, social media posts, social media messaging, Snapchats, tweets, blogs, other forms of electronic communications, or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.  The term "documents" shall expressly include, without limitation, all communications as defined below.  Without limiting the scope of the foregoing, the word "documents" shall include all originals, copies and drafts of all notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, text messages, social media posts and messages, tweets, blogs, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcripts of records and recordings, business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any person(s) any other pertinent information set forth in written language or any electronic or magnetic representation thereof.

3.      The term "communication" shall mean any written or oral expression, statement or utterance of any nature whatsoever, including, but not limited to, correspondence,

conversations, telecommunications, text messages, SMS text messages, iMessages, instant messaging, social media posts, social media messaging, Facebook posts or messages, Snapchats, audio recordings, voice memos, video posts, tweets, blogs, and other forms of electronic communications.

4.      The term "person" shall mean all individuals and entities, including without limitations, any sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts or other entities, and shall include the plural as well as the singular.

5.      The terms "demonstrating," "relating to," or "relate to" means, without limitation, referring to, alluding to, responding to, arising out of, in connection with, commenting on, in respect of, about, regarding, discussing, showing, describing, mentioning, reflecting, analyzing, constituting, evidencing or pertaining to, directly or indirectly, in whole or in part, in the broadest possible sense.

6.      The term "Strand" shall refer to Plaintiff Elizabeth Strand and each of her agents, employees, attorneys and/or representatives.

7.      The term "Amara" shall refer to Plaintiff Amara Enterprises, Inc. and each of its predecessors, successors, subsidiaries, divisions, agents, attorneys, representatives, and current and former employees.

8.      The term "Plaintiffs" shall refer to Plaintiffs Strand and Amara, collectively or individually, and, where appropriate in context, each of their predecessors, successors, subsidiaries, divisions, agents, attorneys, representatives, and current and former employees, including without limitation Redeeming Health International.

9.      The term "Dr. Strand" shall refer to Dr. Ray Strand and each of his agents, employees, attorneys and/or representatives.

10.      The terms "Defendant" or "USANA" shall refer to USANA Health Sciences, Inc. and each of its predecessors, successors, subsidiaries, divisions, agents, attorneys, representatives, and current and former employees.

11.     The term "Webinar" shall refer to the webinar presented by Dr. Ray Strand on or about August 9, 2011.

12.     The term "Lawsuit," unless expressly designated otherwise, shall refer to the Complaint that was filed, and later amended, by Elizabeth Strand and Amara Enterprises, Inc., in the United States District Court for the District of Utah, bearing Case No.: 2:17-cv-00925.

13.     The term "MLM" shall refer to multi-level marketing companies, including without limitation Ariix.

14.     The past tense shall be construed to include the present tense, and vice versa, to make the request inclusive rather than exclusive.

15.     Regardless of whether any of these document requests, instructions, and definitions use a term in plural or singular form, the term shall be construed in both singular and plural forms as is necessary to require the most inclusive response.

## DOCUMENTS TO BE PRODUCED

1.     Produce all documents, including without limitation communications, relating to the Webinar, including without limitation documents reflecting the identity of participants, marketing materials, documents reflecting the planning of or preparation for the Webinar, any associates joining Ariix as a result of the Webinar, any sales to Ariix as a result a result of the Webinar, and any recordings of the Webinar itself.

2.     Produce all documents, including without limitation communications, from January 1, 2010 to January 1, 2012 relating to Dr. Strand contracting with, joining, or otherwise providing services to Ariix.

3.     Produce all documents, including without limitation communications, from January 1, 2010 to January 1, 2012 relating to Plaintiffs contracting with, joining, or otherwise providing services to Ariix.

4.     Produce all documents demonstrating all earnings Plaintiffs have received and revenues they have generated from January 1, 2011 to the present from operating a distributorship for or otherwise selling produces on behalf of Ariix.

5.      Produce all Ariix policies and procedures that have been in effect from January 1, 2010 to the present.

6.      Produce all communications between you and Dr. Strand from January 1, 2010 to January 1, 2012.

7.      Produce all communications between you and Plaintiffs from January 1, 2010 to January 1, 2012.

8.      Produce all communications between you and any person or entity from January 1, 2010 to January 1, 2012 relating to or referring to Dr. Strand and/or Plaintiffs.

9.      Produce all documents, including without limitation communications, sufficient to identify Plaintiffs' down-line associates or preferred customers with Ariix from January 1, 2010 to the present, including without limitation documents, contracts, or agreements Plaintiffs' down-line associates or preferred customers.

10.      Produce all videos you posted on YouTube between January 1, 2010 and January 1, 2012 relating to or containing Dr. Strand and/or Plaintiffs.

# Exhibit C-5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ELIZABETH STRAND and AMARA ENTERPRISES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> USANA HEALTH SCIENCES, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:17-cv-00925-HCN-PMW <br><br> District Judge Howard C. Nielson, Jr. <br> Chief Magistrate Judge Paul M. Warner |

District Judge Howard C. Nielson, Jr. referred this case to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Defendant USANA Health Science Inc.'s ("Defendant" or "USANA") Short Form Discovery Motion to Compel Ariix, LLC's ("Ariix") Responses to Third-Party Subpoena.[2] The court has carefully reviewed the written memoranda submitted by the parties. Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the Motion on the basis of the written memoranda. *See* DUCivR 7-1(f).

---

[1] *See* docket nos. 23 and 113.

[2] *See* docket no. 110.

## BACKGROUND

Elizabeth Strand and Amara Enterprises, Inc. ("Plaintiff(s)") entered into a Distributor Agreement with USANA in 1995.[3] From 1995 to 2011, Plaintiff ran a business selling USANA products and recruiting down-line associates, generating revenues of approximately $1 million a year for USANA.[4] In 1995, Plaintiff's husband, Dr. Strand, also began consulting for and speaking on behalf of USANA as an independent nutrition expert.[5] Dr. Strand's consulting agreement was nonexclusive and independent from Plaintiff's Distributorship Agreement with USANA.[6]

In or around May 2011, several key executives resigned from USANA to launch their own multi-level marketing company, Ariix, LLC.[7] Around this same time, Ariix entered into discussions with Dr. Strand about possible consultant opportunities, and Dr. Strand agreed to participate in a webinar for Ariix to promote its products.[8] The webinar was scheduled to take place on August 9, 2011.[9] Leading up to the webinar, USANA notified Dr. Strand that the "household clause" in Plaintiffs' contract prohibited Dr. Strand from promoting USANA

---

[3] *See* docket no. 40 at ¶¶ 7-8, 13.

[4] *See id.* at ¶¶ 14-15, 19.

[5] *See id.* at ¶¶ 20-21.

[6] *See id.* at ¶ 20.

[7] *See id.* at ¶ 28.

[8] *See id.* at ¶¶ 29, 48.

[9] *See id.*

2

competitors, especially Arrix.[10] Plaintiffs' Distributor Agreement allegedly does not contain a household clause; however, USANA's policies and procedures do include a provision which states: "If any member of an Associate's immediate household (an Associate's spouse or dependents) engages in any activity, which, if performed by the Associate, would violate any provision of the Associate Agreement, such activity will be deemed a violation by the Associate."[11]

In July 2011, Plaintiff initiated the process to sell the distributor business, pending USANA's approval of the sale.[12] Plaintiff anticipated the sale would be complete by no later than July 26, 2011, based on certain representations made by USANA.[13]

The approval process took longer than anticipated, and on August 6, 2011, the prospective buyer withdrew the offer.[14] On August 8, 2011, USANA warned Plaintiff that Dr. Strand's participation in the impending webinar would constitute a breach of her contract.[15] On August 9, 2011, Dr. Strand participated in the webinar with Ariix as planned.[16] On or around

---

[10] *See id.* at ¶ 31.

[11] Docket no. 40 at ¶ 32.

[12] *See id.* at ¶¶ 42-43.

[13] *See id.* at ¶¶ 43-44.

[14] *See id.* at ¶¶ 45-47.

[15] *See id.* at. ¶ 48.

[16] *See id.* at ¶ 49.

September 8, 2011, Plaintiff received a letter terminating her Distributor Agreement for breach of contract, citing Dr. Strand's activities on behalf of Ariix as the cause.[17]

Plaintiff filed the instant lawsuit against USANA alleging breach of contract and breach of the implied covenant of good faith and fair dealing.[18] Plaintiff claims she did not breach the Distributor Agreement and that Defendant did not have cause to terminate the contract.[19] Plaintiff asserts even if the household clause applies, USANA waived its right to enforce the clause by failing to do so through the parties' relationship.[20]

The pending Motion to Compel concerns Defendant's subpoena for production of documents served upon non-party Ariix on October 16, 2018,[21] and responded to by Ariix on October 31, 2018.[22] By the instant Motion, Defendant challenges Ariix's objections and refusal to comply with its Requests for Production of Documents No. ("Requests") 2, 3, 4, 5, 6, 7, 8, and 9.[23] Defendant also contends Ariix's response to Request 1 is incomplete.[24] Defendant moves the court for an order compelling Ariix to respond fully to its discovery Requests,[25] and

---

[17] *See* docket no. 40 at ¶ 51.

[18] *See* docket nos. 2 and 40.

[19] *See* docket no. 40 at ¶¶ 63, 66.

[20] *See id.* at ¶ 66.

[21] *See* docket no. 110-2.

[22] *See* docket no. 110-3.

[23] *See* docket nos. 110, 118, and 124.

[24] *See id.*

[25] *See id.*

for an award of reasonable attorneys' fees.[26] Ariix contends that the Motion to Compel should

be denied because it seeks information that is not relevant to Plaintiffs' claims, the Requests are

overly broad and the requested disclosures would be unduly burdensome, the requested

disclosures are duplicative and can be obtained elsewhere, the requested disclosures would

require revealing confidential and/or privileged information, and/or responsive documents have

already been produced.[27] Ariix also moves the court for an award of reasonable attorneys'

fees.[28] The Motion to Compel will be granted in part and denied in part, as described below.

## **DISCUSSION**

The Motion before the court relates to discovery. "The district court has broad discretion

over the control of discovery, and [the Tenth Circuit] will not set aside discovery rulings absent

an abuse of that discretion." *Sec. & Exch. Comm'n v. Merrill Scott & Assocs., Ltd.*, 600 F.3d

1262, 1271 (10th Cir. 2010) (quotations and citations omitted).

Pursuant to Fed. R. Civ. P. 45, nonparties to litigation may be served a subpoena

commanding them to produce designated documents, electronically stored information, or

tangible things in their possession, custody, or control. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). "[I]t

is well established that the scope of discovery under a subpoena is the same as the scope of

discovery under Rule 26(b) and Rule 34." *Chichakli v. Samuels*, No. CV-15-687-D, 2017 WL

---

[26] *See* docket nos. 118 and 124.

[27] *See* docket nos. 111 and 120.

[28] *See id*.

9988971, at *2 (W.D. Okla. Apr. 17, 2017); *see also XPO Logistics Freight, Inc. v. YRC, Inc.*,

No. 16-MC-221-JWL-TJJ, 2016 WL 6718076, at *3 (D. Kan. Nov. 15, 2016).

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows for "discovery regarding

any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevancy is broadly construed at the discovery

stage and a request for discovery should be considered relevant if there is any possibility the

information sought may be relevant" to a party's claim or defense. *Smith v. MCI Telecomm.*

*Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991). That said, if the requested discovery is "unreasonably

cumulative or duplicative, or can be obtained from a source that is more convenient, less

burdensome, or less expensive," the court is required to limit the frequency or extent of

discovery. Fed. R. Civ. P. 26(b)(2)(C)(i). The court should also consider whether the request is

proportional based on the "needs of the case, the amount in controversy, the parties' resources,

the importance of the issues at stake in the action, and the importance of the discovery in

resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

## I. GENERAL OBJECTIONS

### A. Overly Broad and Unduly Burdensome

Ariix argues Defendant's definitions of "documents" and "communications" are

impermissibly broad. On this basis, Ariix objects to Requests 1, 2, 3, 7, 8, and 9 as overly broad

and unduly burdensome.[29] While the court recognizes that "[c]ompliance with a subpoena

inevitably involves some measure of burden to the producing party[,]. . . the court will not deny

---

[29] *See* docket nos. 110-3, 111, and 120.

a party access to relevant discovery because compliance inconveniences a nonparty or subjects it to some expense." *Ficep Corp. v. Haas Metal Eng'g, Inc.,* No. 14-243-CM, 2015 WL 566988, at *3 (D. Kan. Feb. 11, 2015). The party resisting discovery "has the burden to show compliance would cause undue burden, typically by presenting an affidavit or other evidentiary proof of the time and expense involved in responding to the subpoena." *In re EpiPen Mktg., Sales Practices & Antitrust Litig.,* No. 17-MD-2785-DDC-TJJ, 2018 WL 3620766, at *3 (D. Kan. July 30, 2018).

Ariix contends "documents" and "communications" as defined in the subpoena are too expansive, and compliance with its terms would require Ariix to "spend hundreds, if not thousands, of hours searching for various items."[30]

The subpoena defines "documents" as:

> all writings including any handwriting, typewriting, printing, photo stating, photographing, photocopying, transmitting by electronic mail, text messages, SMS text messages, messages, instant messaging, social media posts, social media messaging, Snapchats, tweets, blogs, other forms of electronic communications, or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored. The term "documents" shall expressly include, without limitation, all communications as defined below. Without limiting the scope of the foregoing, the word "documents" shall include all originals, copies and drafts of all notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, text messages, social media posts and messages, tweets, blogs, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcripts, affidavits, bills, receipts, prescriptions,

---

[30] Docket no. 120 at 9.

> diagnosis, checks, memoranda of telephone or other conversations
> by or with any person(s) any other pertinent information set forth
> in written language or any electronic or magnetic representation
> thereof.[31]

The subpoena defines "communications" as:

> any written or oral expression, statement or utterance of any nature
> whatsoever, including, but not limited to, correspondence,
> conversations, telecommunications, text messages, SMS text
> messages, iMessages, instant messaging, social media posts, social
> media messaging, Facebook posts or messages, Snapchats, audio
> recordings, voice memos, video posts, tweets, blogs, and other
> forms of electronic communications.[32]

The court sees nothing in these definitions that would make them overbroad to the point of creating an undue burden. Ariix enumerates, generally, the various documents and possible storage locations that it would have to search through and concludes without support that compliance would require "hundreds, if not thousands, of hours" of labor. Beyond noting the number of *possible* places relevant documents or communications may be located, Ariix has submitted no explanation, let alone an affidavit or other proof, demonstrating that responding to the referenced discovery Requests would impose an undue burden. The mere assertion that Ariix will be burdened by compliance with the subpoena is not sufficient to show an undue burden, and cannot serve as grounds to object. Accordingly, the overly broad and unduly burdensome objections are overruled.

---

[31] Docket no. 110-2 at ¶ 2.

[32] Docket no. 110-2 at 3.

### B.     Confidential or Privileged Information

Ariix objects to Requests 1, 2, 3, and 6 on grounds they would require disclosure of confidential or privileged information.[33] Ariix claims disclosing "the identities of customers, profits and other sensitive information" to USANA, a business competitor, "would give USANA a competitive advantage."[34] Additionally, compliance would "require disclosure of communications with counsel as the [subpoena's definition of] "Ariix" includes its attorneys."[35]

Fed. R. Civ. P. 45 provides, in pertinent part, the court may, on motion, quash or modify the subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). However, "[t]here is no absolute privilege for trade secrets and similar confidential information." *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981). The party resisting discovery must first show that the information sought is confidential information and then demonstrate that its disclosure might be harmful. *See id.* If these requirements are met, then the burden shifts to the party seeking the discovery to show that disclosure of the confidential information is relevant and necessary to the action. *See id.*

As for claims of privilege, Fed. R. Civ. P. 26 requires a party withholding otherwise discoverable information based on a claim of privilege to: "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or

---

[33] *See* docket nos. 110-2, 111, and 120.

[34] Docket no. 111 at 2-3.

[35] *Id.*

disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)

Ariix has not provided any support for its claims that the information sought from USANA is confidential business information aside from pointing out that USANA is a business competitor. Therefore, on the exceptionally sparse record presented on the issue, the court is unable to make a finding that the information sought is confidential. Moreover, a standard protective order applies in every case involving the disclosure of any information designated as confidential, *see* DUCivR 26(a)(1), and exists to address these exact types of controversies.[36]

Ariix also has not properly asserted a claim of privilege or otherwise identified which documents are withheld. Notwithstanding, attorney communications are not categorically undiscoverable and are protected by privilege only under certain conditions. Accordingly, Ariix's confidential and privileged information objections are overruled.

## II.   SPECIFIC OBJECTIONS

### A.   Request 1

Request 1 seeks "all documents, including without limitation communications, relating to the Webinar, including without limitation documents reflecting the identify of participants, marketing materials, documents reflecting the planning of or preparation for the Webinar, any

---

[36] The court assumes the protective order to which Defendant mentions Ariix utilizing to respond to other discovery requests, *see* docket no. 118 at 5, is the Standing Protective Order effective by virtue of DUCivR 26-2(1) as it was unable to find any other protective order otherwise entered in this case.

associates joining Ariix as a result of the Webinar, any sales to Ariix as a result of the Webinar, and any recordings of the Webinar itself."[37]

Ariix asserts it already provided the "marketing/advertising materials" for the webinar and a copy of the webinar and "does not have any other responsive documents to this request."[38] Defendant counters that Ariix has unilaterally limited the scope of the Request.[39] The court agrees with Defendant. Ariix's response is silent as to the portion of the Request that seeks the identity of webinar participants, associates recruited from the webinar, and webinar sale results. Ariix's response does not clarify what, if any, responsive documents have been withheld, or if all non-privileged responsive documents in its possession have been produced. As such, this portion of Defendant's Motion is granted. Ariix is directed to fully respond to Request 1 within 30 days from the of this order.

B.    <u>Requests 2 and 6</u>

Request 2 seeks "all documents, including without limitation communications, from January 1, 2010 to January 1, 2012 relating to Dr. Strand contracting with, joining, or otherwise providing services to Ariix." Request 6 seeks "all communications between [Ariix] and Dr. Strand from January 1, 2010 to January 1, 2012." Ariix objects to these Requests on relevancy grounds.

---

[37] Docket no. 110-2 at 8.

[38] Docket no. 120 at 5.

[39] *See* docket no. 124 at 4.

Ariix argues the requested documents are irrelevant to the allegations of the complaint because it is undisputed Dr. Strand participated in the webinar and "[b]y its own admissions, USANA terminated Plaintiffs' distributorship on September 8, 2011, for the sole reason that Dr. Strand participated in a single Webinar for Ariix on August 9, 2011, allegedly in violation of section 3.6 of USANA's policies or procedures."[40] On account of this, Ariix suggests the relevant and discoverable issues should be confined to the terms of the Distributor Agreement and whether Dr. Strand's actions amounted to a material breach of Plaintiff's contract. Ariix also asserts the "timeframes that are irrelevant to the allegations of the complaint."[41]

As previously indicated, relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2018 WL 3620766, at *2. Conversely, when relevancy is not

---

[40] Docket no. 120 at 8.

[41] Docket no. 110-3; *see* docket no. 111.

apparent on its face, the requesting party has the burden to show the relevancy of the request. *See id.*

The requested discovery is relevant on its face to Defendant's defense that it properly terminated Plaintiff for breach of contract. Specifically, the information sought is relevant to determining the nature of Dr. Strand's relationship with Ariix, how the webinar compares to prior work with USANA competitors, and if the conduct amounts to a material violation. The court finds the time period, from January 1, 2010, to January 1, 2012, sufficiently linked to the subject matter and relevant to the claims at issue. The court also finds the two-year timeframe reasonably calculated to lead to discovery of relevant information regarding the development, formation, and nature of the business relationship. Accordingly, this portion of Defendant's Motion is granted. Ariix shall produce documents responsive to Requests 2 and 6 within 30 days from the date of this order.

C.    Requests 3 and 7

Request 3 seeks "all documents, including without limitation communications, from January 1, 2010 to January 1, 2012 relating to Plaintiffs contracting with, joining, or otherwise providing services to Ariix." Request 7 seeks "all communications between Ariix and Plaintiffs from January 1, 2010 to January 1, 2012." Ariix asserts relevancy, unreasonably cumulative, and unduly burdensome objections to these Requests.

Ariix asserts the timeframe in the Requests is not relevant to Plaintiffs' allegations.[42] Based on the court's understanding of the facts, claims, and defenses alleged in this action, the

---

[42] *See* docket nos. 110-3 and 111.

court finds the timeframe sufficiently related to the subject matter, and reasonably confined to the allegations of the complaint. The court finds the Requests relevant on their face to the claims and defenses.

Next, Ariix asserts the Requests are unreasonably cumulative or duplicative, and can be obtained more conveniently from Plaintiffs to avoid unnecessarily burdening a non-party.[43] As previously discussed, the Requests are limited sufficiently by timeframe and scope so that they do not to place an undue burden upon Ariix. Moreover, the court rejects Ariix's unsupported assertion that every document requested by the subpoena could be obtained by Plaintiffs. To the extent Defendants seeks Ariix's internal documents, communications, deliberations, and agreements with not only Plaintiff but other non-parties, there would be no duplication. In addition, Ariix is not in a position to know what other parties will produce, or whether a particular document may differ in version or have additions or omissions when coming from two different sources. For the foregoing reasons, this portion of Defendant's Motion is granted. Ariix shall provide complete responses to Requests 3 and 7 within 30 days from the date of this order.

> D.    Requests 4, 5, and 9

Ariix alleges it has already produced documents responsive to these Requests on November 12, 2018.[44] Defendant counters that this is the first time Ariix has asserted it

---

[43] *See* docket nos. 110-3 at 3, 111 at 2, and 120 at 6.

[44] *See* docket no. 120 at 3-4.

produced any documents in response to Requests 4, 5, and 9.[45] After carefully reviewing the memoranda, the court is unable to determine whether or not responsive documents to these Requests were included in the November 12, 2018 production. Compounding the confusion, Ariix objects to Request 9 while simultaneously asserting responsive documents have been produced.[46] It is also unclear whether Ariix has produced all, or just some, responsive documents in its possession. In general, the court acknowledges a need for clarity.

Since Ariix's position is that documents responsive to these Requests have already been produced, the court grants this portion of Defendant's Motion, but will only require Ariix to identify by bates number, or otherwise specify, the documents responsive to Requests 4, 5, and 9 that have already been produced. If documents responsive to Requests 4, 5, and 9 have not been produced, Ariix should produce responsive documents or appropriately indicate that no such documents exist. Ariix shall provide complete responses to these Requests, in the manner described, within 30 days from the date of this order.

      E.    Request 8

Request 8 seeks "all communications between Ariix and any person or entity from January 1, 2010 to January 1, 2012 relating or referring to Dr. Strand and/or Plaintiffs." Ariix asserts the Request is overly broad.[47] The court has reviewed Request 8 and concludes that the Request is overly broad on its face. The Request is not restricted to a specific entity or

---

[45] *See* docket no. 124 at 2-3.

[46] *See* docket no. 120 at 4.

[47] *See* docket nos. 110-3 at 4 and 120 at 8.

reasonably limited to certain category of possible persons. Instead, it seeks communications between Ariix and *any* persons or entity relating or referring to Dr. Strand and/or Plaintiffs. Therefore, this portion of Defendant's Motion is denied. Ariix is not required to produce documents in response to Request 8.

### III.    EXCHANGE OF DISCOVERY

In general, there appears to be a dispute regarding what information Ariix previously agreed to provide and whether this information has been produced.[48] Based on the papers, the court cannot say with certainty which documents Ariix agreed to produce or whether Defendant has received them. As such, and in attempt to resolve the discovery disputes regarding the subpoena in their entirety, the court orders Ariix to, within 30 days from the date of this order, produce all documents previously agreed to or otherwise required pursuant to this order. Once Ariix has done so, it shall provide a sworn declaration to Defendant to that effect.

### IV.    REQUESTS FOR AN AWARD OF REASONABLE EXPENSES

Ariix requests an award of attorneys' fees and costs incurred in responding the Motion,[49] and Defendant requests an award of attorneys' fees and costs "in light of Ariix's request for fees."[50] The court has granted portions of Defendant's Motion, while denying other parts. Accordingly, Rule 37(a)(5)(C) of the Federal Rules of Civil Procedure governs any potential award of reasonable expenses. While that rule does allow the court to apportion an award of

---

[48] *See* docket nos. 118 at 5-9, 120 at 2-8, and 124 at 2.

[49] *See* docket nos. 111 at 3 and 120 at 3, 9.

[50] *See* docket no. 118 at 10.

reasonable expenses, the court declines to do so here. Therefore, both requests for an award of fees are denied.

## CONCLUSION AND ORDER

Based on the foregoing, Defendant USANA Health Science Inc.'s Short Form Discovery Motion to Compel ARIIX, LLC's Responses to Third-Party Subpoena[51] is hereby **GRANTED** in part and **DENIED** in part, as detailed above.

**IT IS SO ORDERED.**

DATED this 26th day of November, 2019.

BY THE COURT:

_____
Paul M. Warner
Chief United States Magistrate Judge

---

[51] *See* docket no. 110.

# Exhibit C-6

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### District of Utah

| | | |
|---|---|---|
| Elizabeth Strand and Amara Enterprises, Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   2:17-cv-00925-HCN-PMW |
| USANA Health Sciences, Inc. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:        Rick Billings
7725 Pengrove Pass, Orlando FL 32835 (407) 733-3502

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Allen Bryant & Associates ATTN: Lee Bryant<br>1510 E. Colonial Dr., #203<br>Orlando, FL 32803 (407) 872-0560 | Date and Time:<br><br>06/19/2020 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   06/01/2020

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Gregory M. Saylin |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Usana Health Sciences, Inc. _____ , who issues or requests this subpoena, are:

Gregory M. Saylin and Tyson C. Horrocks, Holland Hart, LLP, 222 S. Main Street, Suite 2200, Salt Lake City, UT

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:17-cv-00925-HCN-PMW

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c)  Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

*Elizabeth Strand et al., v. USANA Health Sciences Inc.*
United States District Court for the District of Utah
Case No. 2:17-CV-00925-JNP-PMW

**ATTACHMENT A**

**DEFINITIONS**

1.      The terms "you" and/or "your" shall refer to Rick Billings and each of his agents, employees, attorneys and/or representatives.

2.      The term "documents" shall mean all writings including any handwriting, typewriting, printing, photo stating, photographing, photocopying, transmitting by electronic mail, text messages, SMS text messages, iMessages, instant messaging, social media posts, social media messaging, Snapchats, tweets, blogs, other forms of electronic communications, or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.  The term "documents" shall expressly include, without limitation, all communications as defined below.  Without limiting the scope of the foregoing, the word "documents" shall include all originals, copies and drafts of all notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, text messages, social media posts and messages, tweets, blogs, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcripts of records and recordings, business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any person(s) any other pertinent information set forth in written language or any electronic or magnetic representation thereof.

3.      The term "communication" shall mean any written or oral expression, statement or utterance of any nature whatsoever, including, but not limited to, correspondence, conversations, telecommunications, text messages, SMS text messages, iMessages, instant

messaging, social media posts, social media messaging, Facebook posts or messages, Snapchats, audio recordings, voice memos, video posts, tweets, blogs, and other forms of electronic communications.

4.    The term "person" shall mean all individuals and entities, including without limitations, any sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts or other entities, and shall include the plural as well as the singular.

5.    The terms "demonstrating," "relating to," or "relate to" means, without limitation, referring to, alluding to, responding to, arising out of, in connection with, commenting on, in respect of, about, regarding, discussing, showing, describing, mentioning, reflecting, analyzing, constituting, evidencing or pertaining to, directly or indirectly, in whole or in part, in the broadest possible sense.

6.    The term "Strand" shall refer to Plaintiff Elizabeth Strand and each of her agents, employees, attorneys and/or representatives.

7.    The term "Amara" shall refer to Plaintiff Amara Enterprises, Inc. and each of its predecessors, successors, subsidiaries, divisions, agents, attorneys, representatives, and current and former employees.

8.    The term "Strand's USANA Distributorship" shall refer to the USANA distributorship owned by Strand and/or Amara.

9.    The term "Plaintiffs" shall refer to Plaintiffs Strand and Amara, collectively or individually, and, where appropriate in context, each of their predecessors, successors, subsidiaries, divisions, agents, attorneys, representatives, and current and former employees, including without limitation Redeeming Health International.

10.    The term "Billings" shall refer to Rick Billings and each of his agents, employees, attorneys and/or representatives.

11.    The term "Dr. Strand" shall refer to Dr. Ray Strand and each of his agents, employees, attorneys and/or representatives.

12.     The terms "Defendant" or "USANA" shall refer to USANA Health Sciences, Inc. and each of its predecessors, successors, subsidiaries, divisions, agents, attorneys, representatives, and current and former employees.

13.     The term "Ariix" shall refer to Ariix, LLC and each of its predecessors, successors, subsidiaries, divisions, agents, attorneys, representatives, and current and former employees.

14.     The term "Webinar" shall refer to the webinar presented by Dr. Ray Strand on or about August 9, 2011.

15.     The term "Lawsuit," unless expressly designated otherwise, shall refer to the Complaint that was filed, and later amended, by Elizabeth Strand and Amara Enterprises, Inc., in the United States District Court for the District of Utah, bearing Case No.: 2:17-cv-00925.

16.     The term "MLM" shall refer to multi-level marketing companies, including without limitation Ariix.

17.     The past tense shall be construed to include the present tense, and vice versa, to make the request inclusive rather than exclusive.

18.     Regardless of whether any of these document requests, instructions, and definitions use a term in plural or singular form, the term shall be construed in both singular and plural forms as is necessary to require the most inclusive response.

## DOCUMENTS TO BE PRODUCED

1.     Produce all documents and communications, including without limitation social media posts, between you and any other person, including without limitation Plaintiffs and/or Dr. Strand, from January 1, 2010 to January 1, 2012 regarding Strand's USANA Distributorship.

2.     Produce all documents and communications, including without limitation social media posts, between you and any other person, including without limitation Plaintiffs and/or Dr. Strand, from January 1, 2010 to January 1, 2012 regarding any sale, proposed sale, or effort to sell Strand's USANA Distributorship to any person or entity.

3.      Produce all documents and communications, including without limitation social media posts, between you and any other person, including without limitation Plaintiffs and/or Dr. Strand, from January 1, 2010 to the present regarding the Lawsuit.

4.      Produce all documents and communications, including without limitation social media posts, between you and any other person, including without limitation Plaintiffs and/or Dr. Strand, from January 1, 2010 to January 1, 2012 regarding your attendance of the Webinar.

5.      Produce all documents and communications, including without limitation social media posts, between you and any other person, including without limitation Plaintiffs and/or Dr. Strand, from January 1, 2010 to January 1, 2012 regarding the attendees of the Webinar.

6.      Produce all documents and communications, including without limitation social media posts, between you and any other person, including without limitation Plaintiffs and/or Dr. Strand, from January 1, 2010 to January 1, 2012 regarding the planning of the Webinar.

7.      Produce all documents and communications, including without limitation social media posts, between you and any other person, including without limitation Plaintiffs and/or Dr. Strand, from January 1, 2010 to January 1, 2012 regarding any marketing or advertising of the Webinar.

8.      Produce all documents and communications, including without limitation social media posts, between you and any other person, including without limitation Plaintiffs and/or Dr. Strand, from January 1, 2010 to January 1, 2012 regarding the information presented during the Webinar.

9.      Produce all documents and communications, including without limitation social media posts, between you and Dr. Strand and/or Plaintiffs from January 1, 2010 to January 1, 2012 regarding any MLM, including without limitation Ariix.

14531350_v1

Case 5:21-mc-80158-VKD Document 1-1 Filed 07/08/21 Page 97 of 199

**DUCivR 37-1  DISCOVERY: MOTIONS AND DISPUTES; REFERRAL TO MAGISTRATE JUDGE**

**(a) Discovery Disputes.**

(1) The parties must make reasonable efforts without court assistance to resolve a dispute arising under Fed. R. Civ. P. 26-37 and 45. At a minimum, those efforts must include a prompt written communication sent to the opposing party:

(A) identifying the discovery disclosure/request(s) at issue, the responses(s) thereto, and specifying why those responses/objections are inadequate, and;

(B) requesting to meet and confer, either in person or by telephone, with alternative dates and times to do so.

(2) If the parties cannot resolve the dispute, and they wish to have the Court mediate the dispute in accordance with Fed. R. Civ. P. 16(b)(3)(v), the parties (either individually or jointly) may contact chambers and request a discovery dispute conference.

(3) If the parties wish for the court to resolve the matter by order, the parties (either individually or jointly) must file a Short Form Discovery Motion, which should not exceed 500 words exclusive of caption and signature block.

(4) The Short Form Discovery Motion must include a certification that the parties made reasonable efforts to reach agreement on the disputed matters and recite the date, time, and place of such consultation and the names of all participating parties or attorneys. The filing party should include a copy of the offending discovery request/response (if it exists) as an exhibit to the Short Form Motion. Each party should also e-mail chambers a proposed order setting forth the relief requested in a word processing format.

(5) The parties must request expedited treatment as additional relief for the motion in CM/ECF to facilitate resolution of the dispute as soon as practicable. (After clicking the primary event, click Expedite.)

Local Civil Rules, District of Utah United States District Court                                    Page 2 of 3

Case 5:21-mc-80158-VKD Document 1-3 Filed 07/08/21 Page 98 of 199
Case 2:20-cv-09425-RGK-JACB Document 1-3 Filed 08/04/20 Page 9 of 12

(6) The opposing party must file its response five business days [5] after the filing of the Motion, unless otherwise ordered. Any opposition should not exceed 500 words exclusive of caption and signature block.

## Motions



(7) To resolve the dispute, the court may:

    (A) decide the issue on the basis of the Short Form Discovery Motion after hearing from the parties to the dispute, either in writing or at a hearing, consistent with DUCivR 7-1 (f);

    (B) set a hearing, telephonic or otherwise, upon receipt of the Motion without waiting for any Opposition; and/or

    (C) request further briefing and set a briefing schedule.

(8) If any party to the dispute believes it needs extended briefing, it should request such briefing in the short form motion or at a hearing, if one takes place. This request should accompany, and not replace, the substantive argument.

(9) A party subpoenaing a non-party must include a copy of this rule with the subpoena. Any motion to quash, motion for a protective order, or motion to compel a subpoena will follow this procedure

(10) If disputes arise during a deposition that any party or witness believes can most efficiently be resolved by contacting the Court by

Case 5:21-mc-80158-VKD Document 1-13 Filed 07/08/21 Page 99 of 199 2 Case 2:20-mc-00625-HCN-DBP Document 1-13 Filed 08/04/20 Page 20 of 99 2

phone, including disputes that give rise to a motion being made under Rule 30(d)(3), the parties to the deposition shall call the assigned judge and not wait to file a Short Form Discovery Motion.

(11) Any objection to a magistrate judge's order must be made according to Federal Rule of Civil Procedure 72(a), but must be made within fourteen (14) days of the magistrate judge's oral or written ruling, whichever comes first, and must request expedited treatment. DUCivR 72-3 continues to govern the handling of objections.

# AFFIDAVIT OF SERVICE

## UNITED STATES DISTRICT COURT
### District of Utah

Case Number: 2:17-CV-00925-HCN-PMW

Plaintiff:
**Elizabeth Strand and Amara Enterprises, Inc.**

vs.

Defendant:
USANA Health Sciences, Inc.

For:
Gregory M. Saylin
Holland Hart, LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101

Received by Aallen Bryant & Associates, Inc. on the 3rd day of June, 2020 at 3:42 pm to be served on **Rick Billings, 7725 Pengrove Pass, Orlando, FL 32835**.

I, Derrick Redding Sr., being duly sworn, depose and say that on the **3rd day of June, 2020** at **7:40 pm, I:**

**SUBSTITUTE SERVED** the within named person by delivering a true copy of the **Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action; Attachment "A"** with the date and hour of service endorsed thereon by me, at their usual place of abode, to a person residing therein who is fifteen (15) years of age or older to wit: **Alec Billings co-resident,** at the address of **7725 Pengrove Pass, Orlando, FL 32835**, and informing said person of the contents therein, pursuant to state statutes.

**Description** of Person Served: Age: 45, Sex: M, Race/Skin Color: White, Height: 6'1", Weight: 210, Hair: Black, Glasses: N

Under penalty of perjury, I declare that I have read the foregoing and that the facts stated in it are true, that I am a **Certified Process Server** in the circuit in which service was effected in accordance with Florida Statutes and I have no interest in the above action.

STATE OF FLORIDA
COUNTY OF ORANGE

Subscribed and Sworn to before me on the 4th day of June, 2020 by the affiant who is personally known to me.

**Derrick Redding Sr.**
9th Circuit CPS #0152

**Aallen Bryant & Associates, Inc.**
P.O. Box 3828
Orlando, FL 32802-3828
(407) 872-0560

NOTARY PUBLIC

KATHERINE PERDOMO
Commission # GG 956907
Expires February 10, 2024
Bonded Thru Budget Notary Services

Our Job Serial Number: LAB-2020006233

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1m



AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Utah

*Alec Billings*
Date __6/3/20__ Time __7:40pm.__
Initials __PK.__ ID# __0152__

| | |
|---|---|
| Elizabeth Strand and Amara Enterprises, Inc. | ) |
| *Plaintiff* | ) |
| v. | ) |
| USANA Health Sciences, Inc. | ) |
| *Defendant* | ) |

Civil Action No. 2:17-cv-00925-HCN-PMW

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                      Rick Billings
                   7725 Pengrove Pass, Orlando FL 32835 (407) 733-3502
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Allen Bryant & Associates ATTN: Lee Bryant<br>1510 E. Colonial Dr., #203<br>Orlando, FL 32803 (407) 872-0560 | Date and Time:<br><br>06/19/2020 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 06/01/2020

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | /s/ Gregory M. Saylin |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Usana Health Sciences, Inc.                                      , who issues or requests this subpoena, are:

Gregory M. Saylin and Tyson C. Horrocks, Holland Hart, LLP, 222 S. Main Street, Suite 2200, Salt Lake City, UT

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# Exhibit C-7

▮▮▮▮▮▮

| | |
|---|---|
| **From:** | Rick@RickBillings.com |
| **Sent:** | Friday, June 12, 2020 9:45 AM |
| **To:** | Tyson C. Horrocks |
| **Subject:** | Subpoena to Produce Documents |

**External Email**

TO: Holland Hart, LLC
ATTN: Tyson C. Horrocks
RE: Subpoena to Produce Documents

As per our phone conversation on June 9, 2020, I have searched all my files and emails and don't have anything pertaining to the Subpoena that I received for Elizabeth Strand vs USANA Health Sciences.

Regards,
Rick Billings

# Exhibit C-8

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Utah

| | |
|---|---|
| ELIZABETH STRAND, ET AL. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:17-cv-00925-HCN-PMW |
| USANA HEALTH SCIENCES, INC. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:       Citrix Systems, Inc. c/o Corporation Service Company
15 West South Temple, Suite 600, Salt Lake City, UT  84101

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:       See Attachment A hereto.

| Place: Holland & Hart, LLP | Date and Time: |
|---|---|
| 222 S. Main Street, #2200 Salt Lake City, UT  84101 | 08/16/2019 5:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:       07/18/2019

|  *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Tyson C. Horrocks |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
USANA HEALTH SCIENCES, INC. _____ , who issues or requests this subpoena, are:

Tyson C. Horrocks/Holland & Hart, 222 S. Main St., #220 SLC, UT 84101, 801-799-5800, tchorrocks@hollandhart.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  2:17-cv-00925-HCN-PMW

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

*Elizabeth Strand et al., v. USANA Health Sciences Inc.*
United States District Court for the District of Utah
Case No. 2:17-CV-00925-JNP-PMW

**ATTACHMENT A**

**DEFINITIONS**

1.      The terms "you" and/or "your" shall refer to Citrix Systems, Inc. and each of its current or former agents, employees, attorneys and/or representatives.

2.      The term "documents" shall mean all writings including any handwriting, typewriting, printing, photo stating, photographing, photocopying, transmitting by electronic mail, text messages, SMS text messages, iMessages, instant messaging, social media posts, social media messaging, Snapchats, tweets, blogs, other forms of electronic communications, or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.  The term "documents" shall expressly include, without limitation, all communications as defined below.  Without limiting the scope of the foregoing, the word "documents" shall include all originals, copies and drafts of all notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, text messages, social media posts and messages, tweets, blogs, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcripts of records and recordings, business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any person(s) any other pertinent information set forth in written language or any electronic or magnetic representation thereof.

3.      The term "communication" shall mean any written or oral expression, statement or utterance of any nature whatsoever, including, but not limited to, correspondence, conversations, telecommunications, text messages, SMS text messages, iMessages, instant

messaging, social media posts, social media messaging, Facebook posts or messages, Snapchats, audio recordings, voice memos, video posts, tweets, blogs, and other forms of electronic communications.

4.      The term "person" shall mean all individuals and entities, including without limitations, any sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts or other entities, and shall include the plural as well as the singular.

5.      The terms "demonstrating," "relating to," or "relate to" means, without limitation, referring to, alluding to, responding to, arising out of, in connection with, commenting on, in respect of, about, regarding, discussing, showing, describing, mentioning, reflecting, analyzing, constituting, evidencing or pertaining to, directly or indirectly, in whole or in part, in the broadest possible sense.

6.      The term "Strand" shall refer to Plaintiff Elizabeth Strand and each of her agents, employees, attorneys and/or representatives.

7.      The term "Amara" shall refer to Plaintiff Amara Enterprises, Inc. and each of its predecessors, successors, subsidiaries, divisions, agents, attorneys, representatives, and current and former employees.

8.      The term "Plaintiffs" shall refer to Plaintiffs Strand and Amara, collectively or individually, and, where appropriate in context, each of their predecessors, successors, subsidiaries, divisions, agents, attorneys, representatives, and current and former employees, including without limitation Redeeming Health International.

9.      The term "Dr. Strand" shall refer to Dr. Ray Strand and each of his agents, employees, attorneys and/or representatives.

10.     The terms "Defendant" or "USANA" shall refer to USANA Health Sciences, Inc. and each of its predecessors, successors, subsidiaries, divisions, agents, attorneys, representatives, and current and former employees.

11.     The term "Ariix" shall refer to Ariix, LLC and each of its predecessors, successors, subsidiaries, divisions, agents, attorneys, representatives, and current and former employees.

12.     The term "Webinar" shall refer to the webinar presented by Dr. Ray Strand and/or Ariix on or about August 9, 2011.  The Webinar may have been titled "Ariix Special Guest Presenter."

13.     The term "Lawsuit," unless expressly designated otherwise, shall refer to the Complaint that was filed, and later amended, by Elizabeth Strand and Amara Enterprises, Inc., in the United States District Court for the District of Utah, bearing Case No.: 2:17-cv-00925.

14.     The term "MLM" shall refer to multi-level marketing companies, including without limitation Ariix.

15.     The past tense shall be construed to include the present tense, and vice versa, to make the request inclusive rather than exclusive.

16.     Regardless of whether any of these document requests, instructions, and definitions use a term in plural or singular form, the term shall be construed in both singular and plural forms as is necessary to require the most inclusive response.

## DOCUMENTS TO BE PRODUCED

1.     Produce all documents, including without limitation communications, relating to the Webinar, including without limitation documents reflecting the identity of the participants, marketing materials, and any recordings of the Webinar itself.

2.     Produce all communications between you and any other person, including without limitation Plaintiffs, Ariix, and/or Dr. Strand, from January 1, 2010 to the present regarding the Webinar.

3.     Produce all communications between you and any other person, including without limitation Plaintiffs, Ariix, and/or Dr. Strand, from January 1, 2010 to the present regarding the Lawsuit.

**DUCivR 37-1 DISCOVERY: MOTIONS AND DISPUTES; REFERRAL TO MAGISTRATE JUDGE**

**(a) <u>Discovery Disputes</u>.**

(1) The parties must make reasonable efforts without court assistance to resolve a dispute arising under Fed. R. Civ. P. 26-37 and 45.  At a minimum, those efforts must include a prompt written communication sent to the opposing party:

(A) identifying the discovery disclosure/request(s) at issue, the responses(s) thereto, and specifying why those responses/objections are inadequate, and;

(B) requesting to meet and confer, either in person or by telephone, with alternative dates and times to do so.

(2) If the parties cannot resolve the dispute, and they wish to have the Court mediate the dispute in accordance with Fed. R. Civ. P. 16(b)(3)(v), the parties (either individually or jointly) may contact chambers and request a discovery dispute conference.

(3) If the parties wish for the court to resolve the matter by order, the parties (either individually or jointly) must file a Short Form Discovery Motion, which should not exceed 500 words exclusive of caption and signature block.

(4) The Short Form Discovery Motion must include a certification that the parties made reasonable efforts to reach agreement on the disputed matters and recite the date, time, and place of such consultation and the names of all participating parties or attorneys. The filing party should include a copy of the offending discovery request/response (if it exists) as an exhibit to the Short Form Motion. Each party should also e-mail chambers a proposed order setting forth the relief requested in a word processing format.

(5) The parties must request expedited treatment as additional relief for the motion in CM/ECF to facilitate resolution of the dispute as soon as practicable. (After clicking the primary event, click Expedite.)

(6) The opposing party must file its response five business days [5] after the filing of the Motion, unless otherwise ordered. Any opposition should not exceed 500 words exclusive of caption and signature block.



(7) To resolve the dispute, the court may:

    (A) decide the issue on the basis of the Short Form Discovery Motion after hearing from the parties to the dispute, either in writing or at a hearing, consistent with DUCivR 7-1(f);

    (B) set a hearing, telephonic or otherwise, upon receipt of the Motion without waiting for any Opposition; and/or

    (C) request further briefing and set a briefing schedule.

(8) If any party to the dispute believes it needs extended briefing, it should request such briefing in the short form motion or at a hearing, if one takes place. This request should accompany, and not replace, the substantive argument.

(9) A party subpoenaing a non-party must include a copy of this rule with the subpoena. Any motion to quash, motion for a protective order, or motion to compel a subpoena will follow this procedure

(10) If disputes arise during a deposition that any party or witness believes can most efficiently be resolved by contacting the Court by phone, including disputes that give rise to a motion being made under Rule 30(d)(3), the parties to the deposition shall call the assigned judge and not wait to file a Short Form Discovery Motion.

(11) Any objection to a magistrate judge's order must be made according to Federal Rule of Civil Procedure 72(a), but must be made within fourteen (14) days of the magistrate judge's oral or written ruling, whichever comes first, and must request expedited treatment. DUCivR 72-3 continues to govern the handling of objections.

# Exhibit D



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

google-legal-support@google.com
www.google.com

February 24, 2021

***Via Email and Express Courier***
*TCHorrocks@hollandhart.com*

Tyson C. Horrocks
Holland Hart, LLP
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84101
801-799-5923

> **Re:** ***Elizabeth Strand and Amara Enterprises, Inc. v. USANA Health Sciences, Inc.*, United States District Court for the District of Utah, 2:17-cv-00925-HCN-JCB (Internal Ref. No. 5402261)**

Dear Tyson C. Horrocks:

YouTube c/o Google LLC ("Google"), a non-party to your litigation, has received your subpoena, dated February 05, 2021, in the above-referenced matter (the "Subpoena"). As we understand it, your Subpoena requests documents related to the YouTube accounts associated with uRnvqfMLGI8, CqbLrRRITAM.

At this point, however, as set forth more fully in the objections below, Google will not produce documents in response to the Subpoena because the requests are objectionable. Google further hereby makes the following objections to the Subpoena.

**Request for Unidentified Accounts**
Google objects to the Subpoena on the grounds that it requests records associated with Google accounts for which you have not expressly provided an account identifier or which derive from records or other information of the subject account(s) that you seek to have Google search. Bulk requests for information about a large number of unidentified or unspecified Google users is both burdensome to Google and may implicate the First Amendment or other rights of Google users. Google can comply with legal process that expressly contains an account identifier for each of those accounts that you deem relevant.

**User Notification**
Google objects to the Subpoena to the extent it fails to allow sufficient time for Google to notify the affected user and for the user to assert his or her rights in response. Google provides its users at least 21 days to object to your request or to inform Google of their intent to file a motion to quash. If your subpoena sufficiently identifies a Google account, Google intends to forward notice of this matter, including your name and contact information, to the user at the email address provided by the user.

**First Amendment**
Google objects to the Subpoena to the extent that the Subpoena asks for Google to disclose the identity of Google users who posted certain reviews or certain content, which implicates the First Amendment rights of Google users to engage in anonymous speech. Glassdoor, Inc. v. Superior Court, 9 Cal. App. 5th 623 (Cal. Ct. App. 2017) (holding that online provider had standing to assert First



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

google-legal-support@google.com
www.google.com

Amendment objections to subpoena seeking to unmask anonymous users, and requiring a litigant to demonstrate a prima facie cause of action and provide evidence supporting its claim); Krinsky v. Doe 6, 159 Cal. App. 4th 1154, 1164-64 (Cal. App. Ct. 2008) (stating that "[s]peech on the Internet is...accorded First Amendment protection," and that, "[o]nce notified of a lawsuit by the website host or ISP, a defendant may then assert his or her First Amendment right to speak anonymously through an application for a protective order or...a motion to quash the subpoena."). California law requires a court to evaluate whether a plaintiff has made a prima facie showing of its cause of action before a plaintiff can compel a provider such as Google to disclose identifying information regarding an anonymous online speaker. Glassdoor, 9 Cal. App. 5th at 636 ("It is the court, not counsel, that must determine whether a prima facie showing of actionable statements has been made."). Litigants must further make "a showing of specific facts demonstrating discovery of [the Google users'] identities] [is] reasonably calculated to lead to the discovery of admissible evidence." Digital Music News LLC v. Superior Court, 226 Cal. App. 4th 216, 226 (2014), disapproved of on other grounds, Williams v. Superior Court, 3 Cal. 5th 531 (2017); see also ZL Technologies, Inc. v. Does 1-7, 13 Cal. App. 5th 603, 617 (2017) (plaintiffs can obtain identifying information from a provider when a court determines discovery of a person's identity is "necessary" to pursue the claim). Although there is no indication you have done so, if a court has considered and imposed the First Amendment safeguards required before a litigant may be permitted to unmask the identity of an anonymous speaker, please provide us with a copy of any relevant documents. Moreover, please provide us with a copy of the plaintiff's complaint in this matter so that we can assess whether the plaintiff has or will be able to meet the First Amendment standard or demonstrate a compelling need for this discovery.

**Additional Objections**
1. Google objects to the Subpoena to the extent it seeks to impose an undue burden on a disinterested non-party. Google further objects to the Subpoena to the extent it seeks information already in a party's possession or available to a party from some other source (including public sources) that is more convenient, less burdensome or less expensive. Google objects to the Subpoena to the extent it seeks electronically stored information that is not reasonably accessible to Google.
2. Google objects to the Subpoena to the extent it seeks information that is not proportionate to the needs of the case, not relevant to any party's claims or defenses, or not reasonably calculated to lead to the discovery of admissible evidence.
3. Google objects to the Subpoena to the extent it specifies a date of production that is unreasonable and unduly burdensome, including because it may not afford Google time to provide sufficient notice to the user.
4. Google objects to the Subpoena to the extent that it is vague, ambiguous, unlimited in time or scope, or fails to identify the information sought with reasonable particularity. Accordingly, Google further objects to the Subpoena to the extent it purports to require Google to preserve the requested information. Therefore you should not assume that Google will undertake steps to preserve any information in response to your Subpoena. Google is willing to meet and confer to discuss any preservation request.
5. Google objects to the Subpoena to the extent it seeks to impose obligations on Google beyond what is permissible under applicable law.

Google reserves the right to further object to the Subpoena in any additional response.

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043



google-legal-support@google.com
www.google.com

If you have any questions, please feel free to contact the undersigned at the Legal Support Department alias at GOOGLE-LEGAL-SUPPORT@GOOGLE.COM. Additionally, should you wish to seek any judicial relief in connection with this matter, Google requests the opportunity to meet and confer in advance of any such filing. Thank you.

Very truly yours,
/s/  Molly O'Neil
Legal Investigations Support

This packaging is the property of the U.S. Postal Service and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; October 2018; All rights reserved.

PRIORITY MAIL EXPRESS
FLAT RATE
POSTAGE REQUIRED

MAR 01 2021

Holland & Hart PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL



US POSTAGE & FEES PAID
1/2 LB PRIORITY MAIL EXPRESS RATE
ZONE 4
ComBasPrice

062S0009736699
FROM 94043

stamps
endicia
02/26/2021

# PRIORITY MAIL EXPRESS 1-DAY™

Google Legal Support
Google, Inc.
1600 Amphitheatre Pkwy.
Mountain View CA 94043

**0007**
(650) 257-0926

WAIVER OF SIGNATURE

C002

SHIP
TO:

Tyson C. Horrocks
Holland Hart, LLP
222 S. Main Street Ste. 2200
Salt Lake City UT 84101-2194

## USPS TRACKING #



9470 1118 9956 0574 4806 93

EP13F Oct 2018
OD: 12 1/2 x 9 1/2

S 1000 1000006

UNITED STATES
POSTAL SERVICE

PRIORITY
MAIL
EXPRESS

To schedule free
Package Pickup,
scan the QR code



USPS.COM/PICKUP



# Exhibit E



**Tyson C Horrocks**
**Of Counsel**
**Phone** (801) 799-5923
**Fax** (801) 214-1859
tchorrocks@hollandhart.com

March 16, 2021

**_VIA EMAIL and OVERNIGHT MAIL_**

Molly O'Neil
Legal Investigations Support
Google LLC
1600 Amphitheatre Parkway
Mountain View, CA  94043
_google-legal-support@google.com_

> **Re:**  **_Strand et al. v. USANA Health Sciences, Inc._**
> **_Subpoena to YouTube – Internal Ref. No. 5402261_**

Dear Molly:

I am writing in response to your February 24, 2021 letter regarding the subpoena USANA Health Sciences, Inc. ("USANA") served upon YouTube c/o Google LLC ("Google") in the above referenced matter (the "Subpoena").  This letter serves as USANA's good faith effort to meet and confer regarding Google's responses to USANA's Subpoena.  As described in detail below, Google's current responses to the Subpoena are insufficient.  We would like to avoid raising these issues with the Magistrate Judge but will do so if these issues are not resolved.

**Request for Unidentified Accounts**

Google improperly objects that USANA failed to provide ample account identifiers or other ways in which Google can identify the accounts at issue.  Such an objection is completely unfounded as USANA provided Google with the two links associated with the requests and both of these links contained the account identifier at issue.  In fact, in the first paragraph of your letter, you identify the Google accounts that are at issue in USANA's Subpoena.  In an additional effort to assist in Google's efforts to identify the proper accounts at issue, USANA even provided screenshots of the links.  Accordingly, to say that USANA has not provided Google with adequate account identifiers is disingenuous.

T 801.799.5800    F 801.799.5700
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
www.hollandhart.com

Alaska        Montana      Utah
Colorado      Nevada       Washington, D.C.
Idaho         New Mexico   Wyoming



Molly O'Neil
March 16, 2021
Page 2

Additionally, USANA's Subpoena did not contain a "[b]ulk request[] for information about a large number of unidentified or unspecified Google users." Rather, USANA's requests are very limited and tailored to two account users and even further limited to documents and data related to a single post by each user. As such, Google's objections are unsupported and must be withdrawn. We request that Google withdraw its objections, amend its responses, and provide all responsive, non-privileged documents and data.

**Time for User Notification**

While Google claims that it needed at least 21 days to notify its users of a Subpoena and allow the user to object or file a motion to quash. The Subpoena was Served on February 12, 2021—over 4 weeks ago. As neither of the account users have objected or otherwise filed a motion to quash, Google must withdraw its objections, amend its responses, and provide all responsive, non-privileged documents and data.

**First Amendment Issues**

While this objection takes up nearly half of your letter, it is obvious that this case does not involve or otherwise invoke the First Amendments rights of the Google user accounts and/or posts at issue. The requests do not ask Google to expose the identity of an individual in such a way that would put their First Amendment rights at issue. In fact, neither of the accounts at issue are run by anonymous users—rather, both accounts are used to by a particular individual (Rick Billings) and a specific entity (Ariix) to promote their businesses. As such, there are no First Amendment safeguards to be considered or imposed by the Court. Notwithstanding, we have enclosed a copy of the Second Amended Complaint, along with the Standard Protective Order in place for this case. With this information in hand, Google must withdraw its objections, amend its responses, and provide all responsive, non-privileged documents and data.

**Undue Burden on Google**

It is not a basis for objection that a request will require work to answer. To justify the objection, the responding party must demonstrate that the amount of work required to answer the request would outweigh the benefit of the information produced. See FRCP 26(b)(1). We are confident such a showing cannot be made here. None of the requests in the Subpoena impose an undue burden on Google. The requests are narrowly tailored to identify the specific information sought—information that can only be obtained from Google and not from one of the parties to the litigation.

Alaska
Colorado
Idaho

Montana
Nevada
New Mexico

Utah
Washington, D.C.
Wyoming



Molly O'Neil
March 16, 2021
Page 3

Please withdraw the improper objection, amend the responses accordingly and provide all responsive, non-privileged documents.  If your client refuses to do so, please provide all admissible evidence you intend to present to the Court to meet your client's burden so we can meet and confer further on this subject.

### Not Proportionate; Not Relevant; and Not Reasonably Calculated

The analysis is not whether the requested information is reasonably likely to lead to the discovery of admissible evidence.  Rather, FRCP 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  This same rule also expressly states that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."

The requests in the Subpoena are directly relevant to Plaintiffs' claims and USANA's defenses and are proportional to the needs of the case.  This case is directly related to USANA's termination of one of its distributors because she breached USANA's Policies and Procedures when (1) her husband, Dr. Ray Strand, participated in a presentation with Ariix—another multilevel marketing business venture—to an audience that included USANA associates, (2) Ariix released a short video of Dr. Strand promoting Ariix and its products, (3) Ms. Strand allowed her likeness to be used in the Ariix promotional webinar, and (4) Ariix implied an endorsement from Ms. Strand.  The YouTube posts at issue in the Subpoena are copies of Dr. Strand's presentation with Ariix and the promotional video.  These posts are clearly relevant and proportional to the needs of the case.

In light of the relevance of the information called for by the Subpoena, Google's "not reasonably calculated to lead to the discovery of admissible evidence" objection is improper. Accordingly, Google must withdraw its objections, amend its responses, and provide all responsive, non-privileged documents and data.

### Unreasonable and Unduly Burdensome Date of Production

The time provided for Google's response under the Subpoena was sufficient under the Federal Rules of Civil Procedure and applicable case law.  Additionally, as discussed above, Google has now had a month to notify the users, determine if the user(s) objected to the



Molly O'Neil
March 16, 2021
Page 4

subpoena, and produce the documents—and has not done so.  If you had asked for additional
time to respond to the Subpoena, we would have provided you with additional time.  However,
as so much time has passed, and Google has had more than sufficient time to notify its users,
Google must withdraw its objections, amend its responses, and provide all responsive, non-
privileged documents and data.

**Vague, Ambiguous, Unlimited in Time and Reasonable Particularity**

Google has not and cannot identify how USANA's requests are so vague such that they
cannot use common sense to determine the documents sought by the requests.  Furthermore, the
requests are narrowly tailored to identify the specific information sought.  In fact, the
information sough it clearly articulated and easily understandable.  Additionally, the requests are
limited in time as the requests are limited to documents and data relating to two specific
YouTube posts that occurred at a specific point in time.  Therefore, the only responsive
document and data would relate to information that occurred between the date of the post(s) and
the present.  Therefore, Google must withdraw its objections, amend its responses, and provide
all responsive, non-privileged documents and data.

**Document Preservation**

Frankly, we are very surprised to hear that Google will not undertake steps to preserve
the information requested in the Subpoena.  Such a statement does not invoke any confidence
that Google intends to respond to the Subpoena in good will.  If Google is unwilling to preserve
the relevant documents, we will have no choice but to seek the Court's intervention.

At your earliest convenience, please send us your available for a meet and confer call
next week, preferably Monday or Tuesday.

Sincerely,

*/s/ Tyson C. Horrocks*

Tyson C. Horrocks
for Holland & Hart LLP

Enclosure

Alaska        Montana       Utah
Colorado      Nevada        Washington, D.C.
Idaho         New Mexico    Wyoming

www.hollandhart.com

# Exhibit F

| | |
|---|---|
| **From:** | Mrazik, Ryan T. (Perkins Coie) <RMrazik@perkinscoie.com> |
| **Sent:** | Wednesday, May 26, 2021 11:14 PM |
| **To:** | Tyson C. Horrocks |
| **Cc:** | Sasso, Brendan (Perkins Coie) |
| **Subject:** | RE: YouTube link |

**External Email**

Tyson,

Thank you for discussing this matter with me. I've talked with Google and they remain concerned about the subpoena for the reasons we discussed. I also have some more information to share with you that heightens those concerns. Here are the primary issues.

First, Google does not understand how this proposed non-party discovery is relevant to your defense that any termination of the plaintiff was not wrongful, and also proportional to the needs of the case. *See* FRCP 26(b)(1). Based on our meet and confer and a review of the case documents, we understand that the plaintiff is claiming that she was wrongfully terminated by your client on September 8, 2011. This termination allegedly arose from the participation of the plaintiff's husband in promotional videos for a competitor of your client, and the posting of those videos on YouTube in August 2011 (at the two links at issue). You are now trying to explore (almost ten years later) whether employees of your client commented on, interacted with, or watched the videos in question, which you believe may be evidence that, in 2011, the plaintiff violated a contractual prohibition on unauthorized marketing or recruiting of your client's employees.

These facts undermine any claim of relevancy or proportionality. If your client based its termination decision on the mere existence and posting of the videos, then there is no need to identify the commenters, interactors, and viewers (more than 4,500 at last count) to justify the termination. If your client did not already know that its employees had commented on, interacted with, or viewed the videos at the time of the termination in September 2011, then it is difficult to understand how unmasking those people now could justify after-the-fact a termination that occurred almost ten years ago. And lastly, if your client had information at the time that its employees commented on, interacted with, or viewed the videos in question, then that information should be sufficient to present your defense without burdening non-party Google or potentially unmasking more than 4,500 otherwise anonymous people.

Second, even if some of the identifying information could arguably be relevant, unmasking the identities of any person who commented on, interacted with, or viewed the videos would be overbroad, incomplete, and unhelpful. People who speak online or consume information on the Internet are entitled to remain anonymous unless the First Amendment protections afforded to anonymous speech online are satisfied. Here, the people who may have commented on, interacted with, or viewed the videos in question are not named as parties or alleged to have done anything unlawful, and the relevant four-part test with regard to third-party witnesses has also not been met. *See Doe v. 2TheMart.com*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001). Further, with more than 4,500 people potentially at issue, it is easy to surmise that at least some of them would have nothing to do with your case or client. And at most Google would be able to produce only the identifying information for people who were logged in to their Google accounts at the time, meaning that a portion of the commenters, interactors, or viewers would not be identifiable at all and that, even those who were, would be identified only by their Google account information (which may or may not match your client's employee list). For these reasons, at a minimum, Google may insist on a court undertaking a First Amendment analysis and the account holders receiving advance notice of the subpoena and an opportunity to challenge any production before Google might produce.

Third, the subpoena would unduly burden non-party Google. As mentioned above, to the extent that your client already has evidence in its possession supporting its defense (which presumably it should given that it is now trying to justify in 2021 a termination that occurred almost ten years ago), then seeking duplicative or more information from a non-party is unduly burdensome as a matter of law. To the extent you intend to seek the information nevertheless, it would be unduly burdensome in terms of time and expense because Google would need to employ engineering resources to try to identify responsive data (which it estimates would take at least a couple weeks), provide notice to any affected account holders and triage any responses, and then compile and produce responsive data, which could number in the thousands of documents.

For these reasons, Google does not intend to comply with your subpoena even if it were limited to the one-year time frame after the videos were posted in August 2011. If you have other ideas for how to address Google's concerns, please let me know so we can discuss them further and Google can consider them. Otherwise, you said on our call that you would consider moving to compel Google's compliance with your subpoena. Any motion to compel is required to be brought in the Northern District of California, FRCP 45(d)(2)(B)(i), and I am authorized to accept service by email of any motion that you might decide to file.

Google preserves and does not waive any available rights or objections.

Best regards,

Ryan


**Ryan Mrazik | Perkins Coie LLP**
206.359.8098 | RMrazik@perkinscoie.com

---

**From:** Tyson C. Horrocks <TCHorrocks@hollandhart.com>
**Sent:** Friday, May 21, 2021 12:05 PM
**To:** Mrazik, Ryan T. (SEA) <RMrazik@perkinscoie.com>
**Subject:** RE: YouTube link

Thank you.

---

Tyson C. Horrocks
T 801.799.5923


HOLLAND&HART

CONFIDENTIALITY NOTICE: This message is confidential and may be privileged. If you believe that this email has been sent to you in error, please reply to the sender that you received the message in error; then please delete this e-mail.

---

**From:** Mrazik, Ryan T. (Perkins Coie) <RMrazik@perkinscoie.com>
**Sent:** Friday, May 21, 2021 1:02 PM
**To:** Tyson C. Horrocks <TCHorrocks@hollandhart.com>
**Subject:** RE: YouTube link

> **External Email**

Hi Tyson,

I don't have an update for you yet but am working on it. I'll be back in touch next week.

Thanks,

Ryan

**Ryan Mrazik | Perkins Coie LLP**
206.359.8098 | RMrazik@perkinscoie.com

---

**From:** Tyson C. Horrocks <TCHorrocks@hollandhart.com>
**Sent:** Wednesday, May 19, 2021 2:46 PM
**To:** Mrazik, Ryan T. (SEA) <RMrazik@perkinscoie.com>
**Subject:** RE: YouTube link

Ryan,

I hope you had a great weekend.  I wanted to follow up on our call last week.  Were you able to talk with your client to discuss subpoena?

Best,

_____

## Tyson C. Horrocks
T 801.799.5923

**HOLLAND&HART**

CONFIDENTIALITY NOTICE: This message is confidential and may be privileged. If you believe that this email has been sent to you in error, please reply to the sender that you received the message in error; then please delete this e-mail.

**From:** Tyson C. Horrocks
**Sent:** Wednesday, May 12, 2021 4:02 PM
**To:** Mrazik, Ryan T. (Perkins Coie) <RMrazik@perkinscoie.com>
**Cc:** Tyson C. Horrocks <TCHorrocks@hollandhart.com>
**Subject:** RE: YouTube link

Ryan,

Thank you for taking the time to talk today.  The Protective Order is attached to this letter.  Please let me know if you have any questions.

In the intertest of time, can the two of us schedule a follow up call for next Monday or Tuesday?  What is your availability?

Best,

_____

## Tyson C. Horrocks
T 801.799.5923

**HOLLAND&HART**

CONFIDENTIALITY NOTICE: This message is confidential and may be privileged. If you believe that this email has been sent to you in error, please reply to the sender that you received the message in error; then please delete this e-mail.

**From:** Tyson C. Horrocks
**Sent:** Wednesday, May 12, 2021 3:45 PM
**To:** Mrazik, Ryan T. (Perkins Coie) <RMrazik@perkinscoie.com>
**Subject:** YouTube link

ARIIX: Dr. Ray Strand Endorsement - YouTube

## Tyson C. Horrocks
Of Counsel at Holland & Hart
222 S. Main Street, Suite 2200, Salt Lake City, UT 84101
T 801.799.5923
Email: tchorrocks@hollandhart.com

3

Website: https://www.hollandhart.com/

HOLLAND&HART

CONFIDENTIALITY NOTICE: This message is confidential and may be privileged. If you believe that this email has been sent to you in error, please reply to the sender that you received the message in error; then please delete this e-mail.

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

# Exhibit G

1              IN THE UNITED STATES DISTRICT COURT

2                       DISTRICT OF UTAH

3                       CENTRAL DIVISION

4

5   ELIZABETH STRAND and          )

6   AMARA ENTERPRISES, INC.,      )

7             Plaintiffs,         )

8     vs.                         )   Case No.  2:17-CV-925-JNP

9   USANA HEALTH SCIENCES, INC., )

10            Defendant.          )

11  _____)

12

13          BEFORE THE HONORABLE JILL N. PARRISH

14          ---------------------------------------

15                    December 13, 2017

16                Defendant's Motion to Dismiss

17

18

19

20

21

22

23

24  REPORTED BY: Patti Walker, CSR, RPR, CP    801-364-5440

25  351 South West Temple, #8.431, Salt Lake City, Utah  84101

```
 1                        A P P E A R A N C E S

 2

 3

 4   For Plaintiff:                Christopher E. Stiner
                                   BONA LAW PC
 5                                 4275 Executive Square, #200
                                   La Jolla, CA  92037
 6

 7                                 Jason M. Kerr
                                   PRICE PARKINSON & KERR PLLC
 8                                 5742 W. Harold Gatty Drive
                                   Salt Lake City, Utah  84116
 9

10   For Defendant:               Gregory M. Saylin
                                   Tyson C. Horrocks
11                                 FABIAN VANCOTT
                                   215 S. State Street, #1200
12                                 Salt Lake City, Utah  84111

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    SALT LAKE CITY, UTAH; WEDNESDAY, DEC. 13, 2017; 10:30 A.M.

2                         PROCEEDINGS

3              THE COURT:  Good morning, counsel.  We are here in

4    the matter of Strand and others vs. USANA Health Sciences.

5    The case number is 2:17-CV-925.  This is the time that we

6    have set for argument on the defendant's motion to dismiss.

7    Let's begin by asking counsel to enter appearances, please.

8              MR. KERR:  Jason Kerr and Chris Stiner on behalf

9    of plaintiffs, Your Honor.

10             MR. SAYLIN:  Greg Saylin and Tyson Horrocks for

11   defendant USANA.

12             THE COURT:  Thank you.

13             I do want you to know I have read all of the

14   memoranda that have been filed in connection with this

15   motion, so you can assume that for purposes of your

16   argument.

17             Since this is your motion, Mr. Saylin, you may

18   proceed.

19             MR. SAYLIN:  Thank you, Your Honor.

20             If there's not a particular direction from the

21   Court on what you would like to hear, I think --

22             THE COURT:  Well, I suppose maybe we could start

23   with the question of which documents I can consider in the

24   context of a motion to dismiss.  And I know that the rule is

25   that if -- I think the parties agree on the rule with

1    respect to whether or not they're referenced in the

2    complaint or attached to the complaint.

3              I have to tell you, I've spent some time looking

4    at the two different versions of the distributor application

5    and agreement that are redacted in different manners, but,

6    frankly, the one attached to the complaint was so heavily

7    redacted it's meaningless.  And I don't know if the one

8    attached to the complaint was -- it doesn't appear to have

9    enough lines redacted in that first section to be

10   Ms. Strand's agreement.  I don't know if that agreement was

11   between your client and Amara or just some random document.

12   So maybe you can help me with that.  I'm frankly struggling

13   with why so much has been redacted anyway.

14             But specifically, as it relates to your arguments,

15   I don't see anywhere in the complaint that the dba agreement

16   was referenced.  So I'm really struggling as to whether

17   that's something that I can consider.

18             MR. SAYLIN:  Thank you, Your Honor.  That's

19   helpful to me.

20             I agree that it appears on the law and what the

21   court standard is for considering documents outside of the

22   complaint, it is the second prong that we are focused on,

23   which is referred to and central to the complaint where

24   authenticity is not disputed.

25             As to the distributor agreement, it is difficult

1    for us to tell what that is with all of the redactions.

2    What we have provided the Court, however, is the

3    distributorship agreement that we understand is controlling

4    and it has on it, if you refer to Exhibit A, Ms. Strand's

5    signature in two different places.

6              THE COURT:  I see that and that is helpful.  But I

7    guess that begs the question of whether or not there is in

8    existence another distributorship agreement between your

9    client and Amara Enterprises.

10             MR. SAYLIN:  I don't know that my understanding is

11   relevant to the answer to that question, but I will say

12   this, Your Honor.  I think it's significant that the

13   plaintiff is the one that has the unredacted version of what

14   it has attached to its complaint.  It would certainly not be

15   difficult for plaintiffs' counsel to provide the Court with

16   an unredacted version or to make that argument that what we

17   have attached is in fact something other than the operative

18   distributorship application to the agreement.  That has not

19   come from plaintiffs' counsel in its opposition or

20   otherwise.

21             THE COURT:  Well, it's interesting because, as I

22   look at the complaint in the breach of contract claim, in

23   paragraph 61, plaintiff alleges that the distributor

24   agreement, the terms and conditions, and policies and

25   procedures constitute a valid and enforceable written

1    contract between Amara and USANA, but it's unclear to me

2    whether there's actually an agreement in the form of the one

3    attached to the complaint between Amara and USANA.

4              MR. SAYLIN:  However, Your Honor, in the

5    complaint -- if I am reading it correctly, in paragraph 13

6    of the complaint, the allegation is that Ms. Strand

7    initially applied for and entered into the contract with

8    USANA to become an associate.  This document that appears as

9    Exhibit A to our motion is a July 10th, 1995 document.

10             THE COURT:  That is.  I guess the question is when

11   Amara was incorporated in 2000, was another agreement

12   executed between your client and Amara.  And I understand

13   that we haven't done discovery and we're just stuck with the

14   allegations in the complaint and whatever documents are

15   incorporated into the complaint.  But it seems to me to be

16   problematic, and obviously this is something I'll need to

17   address with plaintiffs' counsel, because when I read the

18   complaint, I don't see any allegation -- well, there's this

19   conclusory allegation in 61 that there's a valid and

20   enforceable contract between Amara and USANA.  But I don't

21   see any factual allegations as would be required under

22   Twombly and Iqbal that actually provide the factual

23   predicate for the legal conclusion contained in paragraph

24   61.

25             MR. SAYLIN:  I agree.  I agree.

1              My understanding of what the plaintiff is

2     attempting to argue, or contend, is that Ms. Strand

3     initially signed the agreement -- the distributorship

4     agreement, and then filed a dba in order to do business

5     under the name of Amara.  And my contention is while it

6     doesn't, in the complaint, expressly refer to a dba

7     registration form, the process is referenced in those

8     paragraphs where it discusses the process of becoming --

9     doing business in the name of that company.

10             THE COURT:  And I think where -- I agree with

11     everything you've said.  But I'm not sure that just because

12     the complaint refers to a process, that I, then, under the

13     case law on a motion to dismiss, get to jump to any

14     documents that might have been part of that process.  I

15     don't think the rule is that broad.  I think it talks about

16     documents that are referenced in the complaint.

17             MR. SAYLIN:  So, Your Honor, if I can go back to

18     the distributorship agreement itself, the rule would appear

19     to say that the Court may consider the document if it is

20     referenced in the complaint, which it clearly is; if it's

21     central to the allegations, the claims of plaintiff, which

22     it clearly is; and if it's authenticity is not disputed.

23             So I think the question before the Court is

24     whether this Exhibit A, not necessarily whatever the

25     plaintiff has attached to the complaint as Exhibit A, but

1    this Exhibit A to the motion to dismiss, if its authenticity

2    is disputed before the Court, is this what it is purported

3    to be, which is an agreement between Ms. Strand and USANA

4    that's referenced in the complaint.  If those things are

5    true, I believe -- my contention is that the Court can then

6    consider this document, this Exhibit A, in ruling on our

7    motion to dismiss.

8              THE COURT:  Okay.

9              MR. SAYLIN:  Then in terms of the policies and

10   procedures, which we haven't talked about yet, those are

11   obviously referred to multiple times throughout the

12   complaint, even quoted in the complaint itself, and, again,

13   central to the plaintiffs' claims referred many times there.

14   And, again, the question is whether their authenticity has

15   been disputed.  At least from what we've seen in the

16   opposition papers, they have not been.

17             THE COURT:  Well, again, I have not made up my

18   mind on exactly what I can and can't consider.  But just for

19   purposes of letting you know what my initial thoughts are,

20   my initial thoughts were that I could consider the agreement

21   called -- the holes are punched so they're covering the name

22   of it -- the distributor application and agreement, and the

23   policies and procedures, but that I likely am not able to

24   consider the dba document.

25             MR. SAYLIN:  I understand, Your Honor.  I do

1    obviously agree on the two documents that the Court is

2    initially inclined to consider.  On the second document, it

3    does seem so central and the process referenced, but I

4    understand the Court's thoughts on that.

5               May I proceed?

6               THE COURT:  You may.

7               MR. SAYLIN:  Even without the dba registration

8    form, even if you were to take that out of the motion to

9    dismiss, I believe the outcome is, nonetheless, the same.

10   The distributorship agreement, the Exhibit A, it is an

11   agreement that in its unredacted form shows that it was

12   between Ms. Strand and USANA, and not an agreement with

13   Amara, even if we don't consider the dba registration form

14   and whatever its meaning is.

15              The policies and procedures themselves in Section

16   3.7, which we pointed out in our papers, make clear that

17   even when an associate does business in a corporate name,

18   she remains, and I quote, jointly and severally liable for

19   any obligations to USANA.  So she retains those obligations

20   under either analysis, either under the distributorship

21   agreement or under the policies and procedures.  Even if you

22   don't consider the dba form, Ms. Strand remains an associate

23   for the purposes of interpreting the contract.

24              THE COURT:  That may be true.  But I think the

25   bigger problem is I don't know that -- I mean the webinar is

1   not before me.  I don't know who viewed it.  I don't know

2   what was said in the webinar.  So even if I assume

3   everything that you say is true with respect to the contract

4   terms and provisions, I don't believe on the basis of this

5   complaint that I can conclude that there was necessarily a

6   breach by Ms. Strand.

7          MR. SAYLIN:  And thank you for pointing that out,

8   Your Honor, and if I could address it.  On the face of the

9   complaint it indicates that Dr. Strand, a member of

10  Ms. Strand's household, her husband, participated in

11  advertising and in a webinar for a direct competitor that

12  one can conclude from the face of the complaint.

13          In paragraphs 35 and 36 of the complaint, the

14  plaintiffs allege the kinds of things that Dr. Strand was

15  doing for competitors of USANA.  So he says that he openly

16  promoted other nutritional products.  So his activities are

17  promoting nutritional products.  He engaged in public

18  promotions on behalf of manufacturers of nutritional,

19  personal care and weight management productions, and even

20  published books, blogs, videos, and articles that other

21  companies used to market their products.

22          So his intent -- what he is doing in the context

23  of this webinar is clear that he is promoting the products

24  of Ariix, a competitor of USANA.  I think that's clear from

25  the face of the complaint.

1              THE COURT:  So is it your position that every

2     single one of these activities constitutes a breach and, if

3     so, what particular provision?

4              MR. SAYLIN:  Well, why don't we turn to that,

5     Your Honor.  Under Section 3.6 of the policies and

6     procedures, it lists those prohibited, and under the first

7     bullet there, it starts with recruiting --

8              THE COURT:  Just a minute.  Maybe I'm looking at

9     the wrong document.

10              MR. SAYLIN:  So Exhibit C to the defendant's

11     motion.

12              THE COURT:  Okay.  I see it now.

13              MR. SAYLIN:  3.6.  It's on page four.

14              THE COURT:  Okay.

15              MR. SAYLIN:  And under 3.6, that first bullet,

16     which starts with recruiting or enrolling USANA customers or

17     associates for other multilevel marketing business ventures,

18     either directly or through a third party.  And now we get to

19     the part that's relevant, this includes, but is not limited

20     to, presenting or assisting in the presentation of other

21     multilevel marketing business ventures to any USANA

22     preferred customer or associate, or implicitly or explicitly

23     encouraging any USANA preferred customer or associate to

24     join other business ventures.

25              THE COURT:  Well, and I have no idea if anybody

1    even saw this webinar, and certainly no idea, based on any

2    of the allegations in the complaint, as to whether this

3    webinar was viewed by any USANA customers or associates.

4            MR. SAYLIN:  Now I agree that on the face of the

5    complaint that fact is not made known.  However, the wording

6    of this prohibition is not that it be heard or received by.

7    It's that it be made to.  And this was a webinar that was

8    made publicly on the Internet -- advertised and made

9    publicly on the Internet, available to everyone with an

10   Internet connection.

11           THE COURT:  So let's go back to the allegation in

12   the complaint that you claim proves a breach.  Which of the

13   actions of Dr. Strand do you contend constituted a breach of

14   this agreement?

15           MR. SAYLIN:  Well, primarily our argument is that

16   his putting on the public webinar on behalf of a competitor

17   is a breach of the agreement.

18           THE COURT:  Is that the only thing he did that you

19   consider to be a breach?

20           MR. SAYLIN:  Well, he did advertising as well.

21           In the plaintiffs' opposition, if I can quickly

22   find it, on page seven, the plaintiffs concede -- and this

23   is right smack in the middle of the page -- the complaint

24   alleges that Dr. Strand participated in a publicly available

25   Webcast for Ariix.

1          THE COURT:  So your contention is that because the

2    Webcast was publicly available, it constituted -- how does

3    the contract say it -- recruiting, or presenting, or

4    assisting to a USANA preferred customer or associate?

5          MR. SAYLIN:  Clearly it is a recruiting activity,

6    which are prohibited by the agreement, for obvious reason.

7          THE COURT:  But the recruiting activity that's

8    prohibited has to be directed to USANA preferred customers

9    or associates, and I just don't see any evidence that this

10   activity was so directed.

11         MR. SAYLIN:  I understand, Your Honor, what you're

12   saying.  My argument and what I think is the correct outcome

13   is that it's not that it has to be only directed to USANA

14   customers and associates, but that if it is general enough

15   that it is directed towards a group that includes them, that

16   is sufficient.

17         THE COURT:  So if I post something on a YouTube

18   account and make it available to the world, have I marketed

19   it to the world?

20         MR. SAYLIN:  I contend that you have.

21         THE COURT:  But, at a minimum, it seems to me that

22   that provision at least -- there are varied interpretations

23   of that provision, and you have articulated one.  But it

24   seems to me that it's not abundantly clear to me that that

25   is the proper reading of it.  There's some ambiguity given

1    the phrasing that it has to be to a USANA preferred customer

2    or associate.

3            And so don't we need to look at the course of the

4    parties' dealing to determine what that means?  And if we

5    look at that, I think you're in serious trouble because we

6    have a course of conduct in dealing over a period of a

7    number of years where Dr. Strand engaged in this activity

8    and it was never considered to be a breach.

9            MR. SAYLIN:  At least as alleged in the complaint.

10   But I do move, then, with the Court to the waiver language,

11   which is very express, reserving, specifically in this

12   instance, that the company does not need to require strict

13   compliance in order to avoid the waiver.

14           THE COURT:  But I don't think that the presence of

15   a waiver requirement necessarily is some trump card that

16   says your interpretation of a contractual provision is

17   always the one that the Court must adopt.  I don't read the

18   case law that way.  I mean the interpretation of what a

19   particular provision means is a question of law for the

20   Court, which can be informed by things like a course of

21   dealing and other rules of contractual construction.  And

22   the fact that you have some contractual provision saying

23   we're not waiving any breaches I don't think changes the

24   meaning of the contractual term.

25           MR. SAYLIN:  Well, our position is that as a

1    matter of law the Court can interpret an unambiguous

2    contract.  I understand the Court is finding ambiguity.  But

3    in our view, the unambiguous contract makes clear that these

4    activities are prohibited.  The plaintiff is conceding that

5    those activities took place.  And there is clear -- at least

6    three instances of waiver language that is binding here that

7    prohibits the waiver on which they're relying to make their

8    claim.

9              THE COURT:  Obviously there is probably more case

10   law out there than I'm familiar with at this point in terms

11   of that kind of a waiver language, but I'm not aware that it

12   is given the kind of power and that it's never -- that the

13   parties can't, for example, orally waive that, or by conduct

14   waive it, and that that becomes a trump card.  That's

15   something I may have to do some more research on.

16             But, again, I'm really struggling with doing what

17   you're asking me to do at a motion to dismiss stage when we

18   have such limited information about to whom this webinar was

19   directed.  I mean if you look at the contractual language,

20   you could -- if you really wanted this language to include

21   activities directed to the world as opposed to USANA

22   customers, you could have said this includes presenting or

23   assisting in the presentation of other multilevel marketing

24   business ventures, period.  But for whatever reason, the

25   parties decided to include the phrase to any USANA preferred

1   customer or associate, and that needs to have some

2   independent meaning.

3            MR. SAYLIN:  I understand, Your Honor.

4            May I then address the other two causes of action?

5            THE COURT:  You may.

6            MR. SAYLIN:  On the issue of the claim for good

7   faith and fair dealing, we contend that it cannot stand

8   because there are contractual provisions that control the

9   issues on which they are trying to imply additional terms of

10  the contract.  In other words, here we have a contract that

11  actually has the language that talks about when termination

12  is appropriate.  To suggest that there could be an

13  additional implied term goes against the clear weight of the

14  law that where there is an express contract term that is

15  governing, that you cannot imply an additional term in this

16  concept of good faith and fair dealing.

17           THE COURT:  I understand that principle, and I

18  agree with you.  But where I'm wondering if there isn't a

19  potential claim has to do with the delay in approving the

20  sale of the distributorship.  Because it seems to me that

21  that is a prime -- that would be a textbook example of a

22  breach of the claim of good faith and fair dealing.

23           MR. SAYLIN:  Well, again, Your Honor, going back

24  to this discussion we had about waiver language, for

25  example, it's very clear in the contract, if you look at

1      section 3.15 of the policies and procedures, it has laid out

2      the process for obtaining such permission to sell, transfer,

3      or assign the company.  And there are quite a few steps that

4      are involved in that.  One of those is that the associate be

5      in good standing.  As you saw in our papers, we contend that

6      on the face of the complaint, the plaintiff is not in good

7      standing.

8           THE COURT:  Well, I think that the complaint

9      alleges that the sale was going to be effectuated prior to

10     the broadcast of the webinar, and that the sale was then

11     intentionally delayed until the webinar played so that you

12     could then claim breach and deprive the plaintiff of the

13     benefits of the value of her agreement.  And I don't see

14     anything in the agreement that talks about a specific time

15     line for approving a sale of a distributorship agreement.

16     So it seems to me that that may be fair game for a breach of

17     the implied covenant claim.

18          MR. SAYLIN:  Your Honor, it is stated in the

19     policies and procedures that USANA has the ultimate right to

20     approve or not approve any sale.

21          THE COURT:  I understand that.  But that doesn't

22     mean that USANA then gets to manipulate that in a way to

23     deprive the other party of the value of the contract.

24     That's what the implied covenant means.

25          I don't think that you can by language in a

1    contract, like the language you just referenced, wipe out

2    the possibility of any breach of the implied covenant claim

3    by putting something in your discretion, particularly where

4    there's an allegation here that Ms. Strand was told that it

5    would take two weeks to approve this.  And then the

6    allegation is that there was manipulation that occurred.

7            Again, maybe after we have some discovery, you may

8    have a very valid claim.  But it seems to me that on the

9    basis of where we are in this procedural context, that seems

10   to me to be a stretch.

11           MR. SAYLIN:  I appreciate the Court's thoughts,

12   but let me say this.  The agreement is clear that the

13   parties are saying it can only be modified by a writing

14   authorized by the correct people.  Here, an oral agreement

15   that would add to or modify these policies and procedures

16   outside of the scope of what is permitted by the plaintiff

17   to --

18           THE COURT:  But I don't think that they're making

19   a claim that there was necessarily an oral modification.  I

20   think what they're claiming is that your client, if it

21   routinely -- if the discovery shows that your client

22   routinely approved every request to transfer a

23   distributorship agreement within two weeks, and then in this

24   particular instance it made a concerted decision to delay

25   that process waiting until the webinar aired so that you

1    could then declare breach and cause Ms. Strand to forfeit

2    the value of her distributorship.

3            That doesn't have anything to do with whether or

4    not there was a formal amendment, oral or written, to the

5    contract.  It has to do with the course of conduct in

6    dealing and it has to do with whether or not your client did

7    that in order to deprive Ms. Strand of the benefits that she

8    was entitled to under the contract.

9            MR. SAYLIN:  Thank you, Your Honor.  I understand.

10   I understand the Court has the duty to look at the

11   allegations in the light most favorable to the plaintiff.

12   However, I do not think that they are as artfully

13   articulated in the complaint as you have just done.

14           THE COURT:  Well, that brings up an interesting

15   question.  Are they entitled to amend?

16           I, frankly, have to say that, as I looked through

17   the complaint, it appeared to me that there were some

18   allegations that were missing.  For example, one of the

19   things when I looked at the breach of contract claim, as I

20   indicated before, there's an allegation that there was a

21   distributorship agreement between Ms. Strand and your

22   client.  But I don't believe that there was any allegation

23   in the complaint that Ms. Strand had fulfilled all of her

24   contractual obligations, which is one of the black letter

25   elements that needs to be pled.  So it looks to me like that

1    might be an oversight in the pleading.

2             With respect to the Amara breach of contract

3    claim, it appeared to me that they did contend that Amara

4    had fulfilled its contractual obligations, but I actually

5    did not see in the complaint a well pled factual allegation

6    that there was in fact a contract between Amara and your

7    client.

8             But those seem to me to be technical pleading

9    deficiencies that perhaps could be fixed by the filing of an

10   amended complaint.  Are they entitled to do that at this

11   juncture?

12            MR. SAYLIN:  Well, they're certainly entitled to

13   do it if the Court permits them to do it.

14            THE COURT:  I guess my question to you is should I

15   give them another chance?  What's your view on that?

16            MR. SAYLIN:  My view is that in the Court's

17   interpretation these are things that can be fixed, then I do

18   think it is the Court's duty to provide an opportunity to

19   amend.

20            Interestingly, on the thinking -- and I know the

21   Court is reluctant to consider the dba form that we

22   attached, but in my view that is the missing link here.  And

23   what we have is some artful pleading with a redacted exhibit

24   that leaves it entirely -- anyone incapable of really

25   understanding what they're saying, and then, behind the

1   smoke, saying, yeah, we've really stated claims.

2              But what we contend is when you look at the actual

3   documents, they cannot state claims.  That's why we have the

4   ambiguity and that's why we have this heavily redacted

5   Exhibit A that would show the Court that the contract is in

6   fact --

7              THE COURT:  I suppose if you're right about that,

8   if there is no agreement between Amara and your client, and

9   I give them an opportunity to amend and they don't produce

10  it, then I suppose at that point perhaps it may be

11  appropriate to dismiss with prejudice the claims relating to

12  the contract between Amara and your client.

13             MR. SAYLIN:  Agreed.  And understanding the

14  Court's position as to reviewing particular key documents, I

15  understand the Court's position.

16             May I make one last comment on the unjust

17  enrichment claim?

18             THE COURT:  Absolutely.

19             MR. SAYLIN:  It is clear, Your Honor, from the

20  case law that's been cited that in the State of Utah,

21  federal courts will apply the foreign state's statute of

22  limitations.  We've cited the cases there that I think make

23  that very clear.  It's a four-year statute of limitations.

24  This was filed some six years after the distributorship

25  agreement was terminated.  And, accordingly, based on the

1    statute of limitations, the unjust enrichment claim should

2    be dismissed.

3              THE COURT:  Thank you very much.

4              You may respond.

5              MR. STINER:  Thank you, Your Honor.  I appreciate

6    the Court's concerns, and I'm going to try and address them.

7              THE COURT:  I guess my first question is what is

8    Exhibit A to your complaint?  Is this just a copy of the

9    USANA general form between USANA and a random person, or

10   what is Exhibit A?

11             MR. STINER:  That's correct, Your Honor.  That

12   isn't the underlying contract.  We were informed and believe

13   that the terms of that contract are the same.  And in

14   regards to our evidentiary objection to the contract between

15   Ms. Strand and USANA, our clients' documentation is, you

16   know, not perfect, so the documents at issue are in the

17   possession of USANA.  We have served discovery in that

18   regard.  We used a contract that we believe had the same

19   terms, but not the actual underlying contract between

20   Ms. Strand and USANA.

21             THE COURT:  So in your reply you represent that

22   this Exhibit A to your complaint was a contract between

23   USANA and Amara, is that not true?

24             MR. STINER:  The terms between USANA and Amara,

25   the valid terms that are in that Exhibit A are the terms

1   that were existent between Amara -- I'm sorry, Your Honor.

2   Your issue is between Amara and USANA rather than

3   Ms. Strand?

4               THE COURT:  Yes.

5               MR. STINER:  I understand.  The other difficulty I

6   think in the reading of our complaint is that we define

7   initially Ms. Strand and Amara as one person and then

8   continue through the allegations identifying them as one --

9   or we identified them as Strand.

10               THE COURT:  Let me back up.  You represent in your

11   reply that Exhibit A to your complaint is a contract between

12   USANA and Amara; is that true?

13               MR. STINER:  Well, the terms are the terms, but

14   that redacted form is not the Amara, Strand contract.  That

15   contract --

16               THE COURT:  Is just a USANA contract with a random

17   person?

18               MR. STINER:  That's correct.

19               THE COURT:  So was there a contract in the form of

20   Exhibit A between Amara and USANA?

21               MR. STINER:  We don't have one.  We believe there

22   may be and we allege as such.

23               THE COURT:  Okay.  So what you're saying is you

24   don't have one in your possession, but your client thinks

25   one may have been executed?

1          MR. STINER:  That's correct, Your Honor.

2          THE COURT:  And do you dispute at all that the

3   document that was attached to the motion to dismiss is a

4   true and correct copy of the contract between Ms. Strand and

5   USANA?

6          MR. STINER:  We do not have a copy of that

7   contract, but we have no reason to dispute its authenticity,

8   Your Honor.

9          THE COURT:  So I guess, then, what you're

10  acknowledging is that the distributor application and

11  agreement attached to the motion to dismiss should be

12  considered by the Court as it rules on the motion to

13  dismiss?

14         MR. STINER:  Yes, Your Honor.  You can consider

15  that distributorship agreement.

16         THE COURT:  What about the terms and conditions,

17  can I also consider those?

18         MR. STINER:  The terms and conditions we've never

19  seen before they were attached to the motion to dismiss,

20  Your Honor.  I have seen multiple versions of those, one

21  from 2005 and one from 2013.  I have not seen the 2010 one.

22  So we have no reason to -- we can't consent to their

23  authenticity.

24         THE COURT:  I suppose that consenting to their

25  authenticity and having a basis to challenge their

1    authenticity may be two separate issues.  Do you have a

2    basis to challenge their authenticity?

3           MR. STINER:  Your Honor, this contract was

4    executed in 1995.  There's been multiple revisions of it.

5    So I would challenge that the 2010 version of this is the

6    pertinent version of the policies and procedures.  Those

7    sections that are excerpted in our complaint were actually

8    quotes from correspondence between the parties, so that's

9    why they were included.  The Court doesn't have a

10   declaration asserting that the 2010 policies and procedures

11   are authentic.  We, frankly, do not know if they are or

12   they're not.  That information would be in the possession of

13   USANA.

14          THE COURT:  So you're telling me, as you stand

15   here today, that your client never saw the policies and

16   procedures that were attached to the motion to dismiss?

17          MR. STINER:  I'm standing here today saying that

18   our client didn't present those 2010 policies and procedures

19   to us.  This dispute happened five years ago and I don't

20   think that they can authenticate that those are the proper

21   2010 policies and procedures that were considered at the

22   time.

23          THE COURT:  Is there any difference between the

24   particular policies and procedures that are at issue in this

25   lawsuit and the ones that your client believes are the

1   operative policies and procedures?

2          MR. STINER:  There are.  I've seen different

3   versions that have differences in them, yes, Your Honor.

4          THE COURT:  Are the differences material to what

5   we're addressing here?  Do they relate to the presentation

6   of competing products?

7          MR. STINER:  Yes.  The 2005 version that I saw

8   were significantly different.

9          THE COURT:  And I suppose since you don't know or

10  you don't have a copy of any agreement between USANA and

11  Amara, you have no idea what the date of that agreement, if

12  any exists, might be?

13         MR. STINER:  That's correct, Your Honor.  Standing

14  here today, I'm not certain what the date of that agreement

15  might be.

16         THE COURT:  Okay.  Well, let me ask you this.  As

17  I reviewed the complaint in light of the challenges raised

18  in the motion to dismiss, it seemed to me that there was no

19  well pled factual allegation in this complaint of a contract

20  between Amara and USANA.  Am I missing something, or is that

21  something that just isn't there?

22         MR. STINER:  Your Honor, I think that is the issue

23  I raised earlier, that in the initial paragraph of the

24  complaint it defines Mrs. Elizabeth Strand and Amara

25  Enterprises collectively as Strand.

1          THE COURT:  Isn't that a problem from a Twombly,

2    Iqbal pleading standpoint?

3          It seems to me that one of the main principles

4    that you draw -- or one of the main requirements that you

5    draw from those cases is that a complaint has to be pled

6    with the requisite specificity to determine who did what to

7    whom.  Frankly, 90 percent of the Twombly, Iqbal problems

8    that I see arise from situations where parties group

9    plaintiffs and defendants together, they group corporate and

10   individual defendants together, and it's very difficult to

11   determine who exactly is alleged to have done what because

12   parties aren't careful differentiating between related

13   players.

14         It seems to me that that's a problem here, because

15   as I look at the complaint, there's no allegation of a

16   contract between USANA and Amara.  While there's an

17   allegation -- or we have a contract that I can consider

18   between Ms. Strand and USANA, I saw no allegation in your

19   complaint that Ms. Strand had complied with all of her

20   obligations under the contract, which is a necessary element

21   of a breach of contract claim.

22         MR. STINER:  I understand, Your Honor.  As pled,

23   the complaint describes the relationship beginning with

24   Ms. Strand doing business as an entity that wasn't Amara,

25   and then continuing the business in 2000.  If the Court sees

1   those -- if the Court considers those deficiencies material,

2   we would ask just to revise -- or an opportunity to amend

3   the complaint to more carefully specify if in 2000 a

4   subsequent contract was entered into between USANA and

5   Amara, if there was a transfer of ownership, or if she

6   simply continued on doing business as Amara under the

7   distributorship agreement that is in 1995.

8         THE COURT:  Frankly, it seems to me that the

9   answer to that question could be key here given the nature

10  of the allegations.

11        MR. STINER:  Your Honor, we understand, but we

12  would -- regardless of whether Ms. Strand or Amara are the

13  contracting party, we would refer the Court to what's been

14  discussed in terms of the breach of contract that was

15  alleged by USANA in that we haven't alleged and we've never

16  seen any evidence that any specific USANA customers or

17  distributors, you know, viewed this webinar.

18        I would note that on further discussion with the

19  client, we verified that the webinar was only available via

20  a log-in information.  It wasn't publicly available, for

21  instance, on YouTube.  That's my understanding and that is

22  likely also something we would supplement the complaint with

23  in amendment.

24        THE COURT:  So does it matter who actually saw it

25  or does it just matter to whom it was directed?

1          MR. STINER:  I think that under the terms of the

2     contract, I think both are relevant, you know, that if --

3     I'm sorry, Your Honor.  I think that under the terms of the

4     contract, that really a USANA representative or customer has

5     to view the webinar in order for there to actually be a

6     breach.  In my reading, that provision is essentially an

7     anti-rating provision directed at trying to prevent downline

8     distributors and customers from being poached if somebody

9     moves over to a different multilevel marketing company.  And

10    if that poaching never happens, then there isn't a breach of

11    that section, Your Honor.

12         THE COURT:  Okay.  You may continue with your

13    argument.

14         MR. STINER:  Okay.  So in regards to the documents

15    that the Court could consider, we would also agree with the

16    Court that the dba registration is not referenced in the

17    complaint, and it also conflicts with an allegation in the

18    complaint that Amara began operating the business in 2000.

19    So we don't think the Court should consider that.

20         So in regards to the breach of contract, I think

21    the Court -- as I just said, the Court's discussion I

22    thought, even assuming that USANA is correct and that, you

23    know, Dr. Strand is bolted in through the household clause

24    and his activities would be considered.  But still, there's

25    allegations in the complaint at this point that his

1   activities were a breach.

2           THE COURT:  Let me ask you about the question of

3   materiality of breach.  In your view, is every term and

4   condition -- if any of those are violated, are they, by

5   definition under the terms of this contract, a material

6   breach that provides USANA with the ability to terminate the

7   contract?

8           MR. STINER:  No, I don't think that any breach

9   would be material if -- you know, this was a multilevel

10  marketing company selling a product.  If one sidelong

11  comment about a product of a competitor is made to someone

12  who happens to be a USANA customer, and it doesn't yield any

13  transfer of a downline distributor or customer over to this

14  other business, or something else happens, I don't think

15  that would be a material breach, Your Honor.

16          THE COURT:  So you think that even though the

17  contract says any violation of any term or condition

18  provides a basis on which USANA can terminate the

19  distributorship agreement, you think that's overridden by

20  some sort of overriding concept of what constitutes a

21  material breach?

22          MR. STINER:  Yes, Your Honor.

23          THE COURT:  So you don't think that USANA had the

24  ability in the distributorship agreement and the

25  incorporated terms and conditions to define every breach as

1    a material breach?

2              MR. STINER:  No, Your Honor.  We wouldn't take

3    that position.

4              THE COURT:  Okay.

5              MR. STINER:  Further on, just addressing the

6    concerns that the Court had, we would also agree that the

7    waiver language -- we think that waiver can occur.  There

8    were 15 separate contracts that were executed with Dr.

9    Strand that allowed nonexclusive promotion.

10             THE COURT:  But I suppose, then, that begs the

11   question of whether or not a written contract between USANA

12   and Dr. Stand constitutes a written modification of an

13   agreement between Ms. Strand and USANA.

14             MR. STINER:  Well, Dr. Strand is the relevant

15   party here because of the household clause, Your Honor.

16   He's the one who has the offending conduct.

17             THE COURT:  But the contract that talks about

18   written modifications talks about needing a written

19   modification signed by Ms. Strand and USANA, not by

20   Ms. Strand's husband and USANA.

21             MR. STINER:  Sure.  And if the Court doesn't

22   consider their allegations regarding those contracts with

23   Mr. Strand, then we would point the Court to the course of

24   conduct over 15 years and executing those written contracts,

25   and in never objecting to any other promotion of a competing

1    product in terms of the waiver argument, Your Honor.

2              And just turning lastly, Your Honor, to the breach

3    of good faith and fair dealing -- or turning second to the

4    last to the breach of good faith and fair dealing, we would

5    argue in accord with the Court that the question here is

6    whether or not the conduct of USANA, even if it complied

7    with the vague terms that are in the policies and

8    procedures, if it was accomplished in bad faith, if the

9    delay, even if it reserved the right to approve a sale, if

10   that delay of approval was exercising that right in bad

11   faith that was described in the contract.

12             Then, lastly, Your Honor, in regards to the unjust

13   enrichment --

14             THE COURT:  It seems like you have a tough

15   argument there, don't you?

16             MR. STINER:  In the good faith and fair dealing?

17             THE COURT:  No, unjust enrichment.

18             MR. STINER:  If I could soldier on and not delay

19   the Court, I would just say in regards to the unjust

20   enrichment, we've argued in the alternative that the entire

21   enterprise was an enrichment.  The use of Dr. stand as a

22   spokesperson, Mrs. Strand and the Amara entity, all of them

23   were an enterprise that was given to USANA, and that's why

24   there's a valid -- even accepting --

25             THE COURT:  Well, I'm talking about the statute of

1    limitations issue.  The other stuff I suppose is -- I don't

2    even get to the other stuff until I cross the statute of

3    limitations bridge, and it seems to me that you've got a

4    tough argument there because aren't statutes of limitation

5    universally considered to be procedural and governed by the

6    law of the forum state?

7              MR. STINER:  Our argument, Your Honor, is that an

8    unjust enrichment claim as presented, it first identifies

9    the enrichment and then implies a contract, so that it's

10   substantive insofar as -- by disallowing a presentation of

11   the claim, that you're disallowing the substantive right to

12   imply the contract that resulted from the initial

13   enrichment.

14             THE COURT:  You've lost me on that.  I mean

15   couldn't you make that same argument with respect to every

16   unjust enrichment claim, that it was somehow some implied

17   contract claim and then parties could use that to always get

18   around the four-year statute of limitations applicable to

19   unjust enrichment?  That can't be the law.

20             MR. STINER:  Your Honor, that's the argument we've

21   made and we presented the case law.  But I understand the

22   Court's reticence too, but that's our argument.

23             THE COURT:  Do you concede that there's typically

24   a four-year statute of limitations applicable to a claim for

25   unjust enrichment?

 1                   MR. STINER:  Here in Utah?

 2                   THE COURT:  Well, yeah, here in Utah.

 3                   MR. STINER:  Yes, Your Honor -- if it's an issue

 4      between Utah parties, that would be relevant in our case,

 5      yes.

 6                   THE COURT:  Let me back up.  Is the statute of

 7      limitations a procedural rule or a substantive rule?

 8                   MR. STINER:  Generally, and I think we said that

 9      in the case law that generally it's considered procedural.

10                   THE COURT:  And we're in Utah, so we're looking at

11      what Utah considers to be procedural versus substantive; is

12      that right?

13                   MR. STINER:  That's correct, Your Honor.

14                   THE COURT:  In Utah, statutes of limitation are

15      considered to be procedural, correct?

16                   MR. STINER:  Generally that's true.

17                   THE COURT:  If we look at the unjust enrichment

18      claim in your complaint, it's pled not as some kind of

19      implied contract claim.  It says on page 17 of your

20      complaint, third claim, unjust enrichment, right?

21                   MR. STINER:  That's correct.

22                   THE COURT:  So if we have an unjust enrichment

23      claim and there's a four-year statute of limitations

24      applicable to that in Utah, and statutes of limitation are

25      considered to be procedural, and so federal courts would

1    then apply the law of the forum, how do I get around the

2    statute of limitations claim, the claim that your unjust

3    enrichment claim is barred by the statute of limitations?

4            MR. STINER:  The Court would have to consider this

5    statute of limitations in particular in regards to unjust

6    enrichment substantive, Your Honor, in terms of cutting off

7    the right to implied contract.  But I understand from the

8    Court's -- I appreciate the analysis the Court has done in

9    regards to this case, and I will just let our argument stand

10   as written in our opposition, Your Honor.

11           THE COURT:  I mean it strikes me if you think you

12   have an implied contract claim that's not an unjust

13   enrichment claim, that's not what you pled.

14           MR. STINER:  That's correct, Your Honor.  We

15   didn't plead that.

16           THE COURT:  Okay.  Thank you.

17           You may reply, Mr. Saylin.

18           Let me ask you to start with the materiality of

19   breach question that I was just discussing with Mr. Stiner.

20   Is every breach, by definition, material because your client

21   deemed it to be material?

22           MR. SAYLIN:  Well, it certainly is what the terms

23   of the contract say.  But I think in this setting, the

24   question -- I don't know that that question necessarily has

25   to be answered on a motion to dismiss.  It certainly is if

1    the Court deems it so.

2            But I think on the face of the complaint, when you

3    look at who Amara and who Ms. Strand were based on what's

4    alleged in the complaint, and particularly I'm referring to

5    paragraphs 15, 16 and 17 of the complaint which say that at

6    the height of Amara's development, Strand was running 14

7    business centers, in total generating over one million

8    dollars of commissionable business for USANA each year, in

9    1997, as a result of Strand's success, Amara qualified to

10   become an emerald director with USANA's associate incentive

11   program, which is the top tier of USANA's director program,

12   and the following paragraphs.

13           It's clear from the face of the complaint that

14   Amara and Ms. Strand, they were significant in a multilevel

15   marketing with a downline.  So for her husband to publicly

16   go out and support a competitor -- and it's also alleged in

17   the complaint the importance of this particular competitor,

18   and I'm referring now to paragraph 37 where there is a

19   discussion that's pled about how James Bramble said Ariix is

20   just too close, this particular competitor, is material.

21           THE COURT:  That sounds persuasive to me, but it

22   also sounds like a jury argument.  The reality is that

23   questions of materiality, questions of whether or not a

24   particular breach goes to the very essence or heart of the

25   contract between the parties I think are most often factual

1     issues for the jury.  And while I understand that

2     Ms. Strand's status as an emerald dealer is helpful to you

3     in that regard, I suppose an argument could also be made

4     that where she was contributing a million dollars worth of

5     revenue to your client a year, that some technical breach

6     didn't really go to the heart of the benefit that your

7     client was receiving from her as a distributor.

8              MR. SAYLIN:  I understand the Court's argument.

9     My position is that on the face of this complaint, when we

10    look at the significance of these parties knowing a

11    multilevel marketing program -- a company with the

12    importance of downline, the provisions to prevent

13    recruiting, that this is a material act.

14             THE COURT:  Well, I suppose one way to judge if a

15    particular breach is material is to see -- I mean here we

16    have a claim that Dr. Strand had been making these

17    promotional videos or making promotional appearances or

18    endorsements for competitors for years, and I suppose that

19    the fact that USANA did not say anything about them for

20    years may also be evidence as to materiality.

21             MR. SAYLIN:  I appreciate the Court's point.  I do

22    think it's significant that this is not the procedural

23    gotcha.  This isn't that USANA sat back and set the trap and

24    waited for him.  He was told -- Ms. Strand and Dr. Strand

25    were told, as alleged in the complaint, do not do this.

1    This is material.  You will have your distributorship

2    terminated based on these terms.  It was made very clear

3    prior to his completing this act.  And I think that makes

4    this one different.

5            THE COURT:  That, again, I think is a good

6    argument.  Whether or not that carries the day in the

7    procedural context of a motion to dismiss I suppose is

8    another issue.  But I think it also plays into -- the whole

9    warning part also plays into the claim for breach of the

10   implied covenant in that, you know, he was given warning,

11   but he hadn't yet breached, and she tried to sell, and then

12   the claim is that the sale was delayed until the webinar

13   aired.  So I think that maybe what the plaintiffs are

14   claiming is that your client breached the implied covenant

15   of good faith and fair dealing before Ms. Strand breached

16   the household noncompetition provision.

17           MR. SAYLIN:  Again, very artfully articulated, but

18   I don't believe found in the complaint or in the opposition

19   papers today.  But I understand the Court's position.  Under

20   the circumstances of materiality, I think that there is so

21   much here in this complaint, unusually so, on these

22   subjects, that it is not difficult to draw the conclusion

23   that this is a material breach.

24           THE COURT:  Okay.

25           MR. SAYLIN:  May I, Your Honor, make two

1    additional points?

2              THE COURT:  You may.

3              MR. SAYLIN:  Just very briefly, I'm not quite sure

4    how to articulate this.  I was very taken aback by the

5    discussion about the Exhibit A to the complaint, and I

6    personally feel misled.  I don't quite know what to say, but

7    it concerns me that the complaint would stand in a format

8    that I think is not accurate.

9              THE COURT:  Well, it concerns me a great deal as

10   well, and I suppose I can let Mr. Stiner have another chance

11   to respond.  And it's your motion, you get the last word,

12   but you're absolutely right.  The response brief, and if I

13   can find the right language -- it's page 16 I think of the

14   response brief.  Oh, no, it can't be page 16.  I'm looking

15   at the motion, not the response brief.

16             So my clerk tells me it's page 16 of the

17   electronic case management thing.  So it's page 14 of the

18   opposition brief.  So it would be document 31, page 16 of

19   the electronic case format numbering says plaintiffs'

20   complaint incorporated a redacted version of the relevant

21   distributor agreement entered into between USANA and Amara.

22   Is that what your concern is?

23             MR. SAYLIN:  Well, I was referring actually to the

24   complaint itself where Exhibit A is introduced, though I

25   share the Court's concern about this page.

1            THE COURT:  That's paragraph 13.  I mean it was

2      confusing because it says in '95, Mrs. Strand, initially

3      doing business as Redeeming Health International, applied

4      for and entered into a contract with USANA to become an

5      associate.  In 2000, Strand incorporated Amara and began

6      operating the distributorship through that entity,

7      Exhibit A.  I was confused initially as to whether or not

8      Exhibit A referred to the contract between Amara and your

9      client or Strand and your client, and now we learn that it's

10     neither.

11            MR. SAYLIN:  And presented in a redacted form.

12            Just having spent the last I don't know how long

13     trying to figure out what in the world is going on in this

14     case, understanding what is alleged here, my concern is

15     not -- and in all due respect to the plaintiffs' counsel, my

16     concern is not to point the finger as much as to point out

17     to the Court my discomfort with the current state of the

18     complaint, and whether a claim has been stated.  It would

19     seem to me that it is essential that a plaintiff state a

20     complaint based on the information and facts that they have,

21     and this heavily redacted form suggesting it's something

22     that it clearly was not I think undermines all of the

23     allegations in the complaint and what we're left to work

24     with now going forward.

25            THE COURT:  So what do you suggest is the

1   appropriate response?

2          MR. SAYLIN:  Well, you know the answer to that

3   question from me from our papers.  But I understand if the

4   Court is disinclined to grant our motion.  I certainly think

5   that as to the unjust enrichment claim, the Court should

6   grant our motion to dismiss for failure to plead within the

7   statute of limitations.

8          But if the Court is disinclined to grant the rest

9   of our motion, then I would encourage the Court to provide

10  leave to amend to correct these issues so that we might be

11  able to bring our motion with the proper documents and

12  understanding of what's going on.  Maybe they will correct

13  everything and we won't have grounds to do so.  But right

14  now there is some real confusion about what it is they're

15  claiming and on what basis they're claiming it, and the most

16  significant of which is this question of if there is a

17  direct relationship between Amara and USANA.  Again, it

18  doesn't matter what I say today.  It matters what's in the

19  complaint.

20         THE COURT:  And I agree it's confusing and it's

21  misleading.

22         MR. SAYLIN:  And one last comment on that,

23  Your Honor.  We were talking about paragraph 61 and there

24  was this discussion about the fact that Strand and Amara

25  have been defined together to be Strand.  But 61 does not

1    use the word Strand.  It says that there is a written

2    contract entered into between Amara and USANA, and I've got

3    no idea what that is.  If we had that, we would have

4    attached it and had used it.  We don't have that.  So,

5    again, I suggest that this complaint is in such a state that

6    if it's not going to be dismissed, it needs to be remedied.

7                 THE COURT:  Okay.

8                 MR. SAYLIN:  The last comment.  We have had some

9    discussions, and I hope the Court might provide some

10   direction for us, about discovery in this case.  Initially

11   we wanted to wait to do discovery until after the motion to

12   dismiss was heard and decided, but the plaintiff wanted to

13   proceed.  We agreed to do initial disclosures, which we have

14   exchanged, prior to that time.  Plaintiff has given the

15   defendant until January 5th to respond to written discovery.

16               My position is that defendant shouldn't have to

17   respond to discovery until we have an operative complaint.

18   So we would ask that discovery be postponed until that

19   occurs.  We can do that by formal motion if the Court

20   prefers that we do so.

21               THE COURT:  Okay.  Thank you.

22               Mr. Stiner.

23               MR. STINER:  Thank you, Your Honor.

24               Just briefly, we apologize for misleading the

25   Court in regards to the contract.  I did review the sections

1   that you and counsel pointed to, and that wasn't our

2   intention to imply.

3            THE COURT:  It would have been so easy to say

4   something like Ms. Strand entered into a distributorship.

5   While she can't locate it, she believes it to be

6   substantially similar to the one attached as Exhibit A.  And

7   it would be just as simple to say and Ms. Strand believes

8   Amara executed a similar distributorship, but she can't find

9   it.

10           MR. STINER:  We understand, Your Honor, and I

11  completely agree.  We would like an opportunity to amend in

12  that fashion so we can clarify for the Court those

13  allegations and the allegations in regards to Amara and

14  Ms. Strand.

15           THE COURT:  Okay.  What about discovery?  I

16  suppose at this point we have a complaint that you've just

17  acknowledged needs to be fixed.

18           MR. STINER:  That's correct, Your Honor, we

19  acknowledge it needs to be fixed.  But there is an operative

20  contract between Mrs. Strand or Amara.  And one of the

21  issues that we have here is they're attaching documents,

22  exhibits to a motion to dismiss, which we don't have copies

23  of, and that's one of the things we're really looking for

24  here through discovery, the whole file of Mrs. Strand's and

25  Amara's business contacts to identify these --

1              THE COURT:  But you're saying that the discovery

2     that you need goes to the existence of the relevant

3     contracts, policies and procedures, because your client, if

4     I'm reading between the lines properly, your client doesn't

5     have any good records, and so you're relying on the

6     defendant to provide copies of the operative documents; is

7     that fair?

8              MR. STINER:  That's fair to say.  We have drafted

9     this complaint from correspondence that was provided between

10    Mrs. Strand and USANA, and from, you know, examples of the

11    distributorship agreement that we believe applies, and we'd

12    love to identify the different variations of the contract

13    and proceed with discovery.

14             THE COURT:  Do you need more than that?  Do you

15    need more than the written documents and policies and

16    procedures in order to go ahead?  Because it does seem that

17    once you amend your complaint, we may get another motion to

18    dismiss, and I hate to just see parties run up a lot of fees

19    unnecessarily.  By the same token, I understand that you may

20    need the operative documents so you can put those in front

21    of the Court, and so you can evaluate what documents they

22    might rely on for a motion to dismiss.

23             MR. STINER:  I think that that's primarily -- I'd

24    prefer to consult with my client in regards to the

25    allegations and identify any other documents that they think

1    might have, you know, legal significance, such as another

2    dba registration form, or some other document that was

3    engaged in or entered into in order to transfer ownership.

4              So I can't identify to the Court at this stage

5    specific documents, but that would be the universe of

6    documents.  I think we've had a cordial relationship between

7    counsel, and I can identify a limited scope -- we can

8    resolve a limited scope of discovery that, while the

9    complaint is still at issue, we could explore or get

10   documents from them in regards to.

11             THE COURT:  Okay.  All right.

12             Mr. Saylin -- was that all you had?

13             MR. STINER:  That's all I had, Your Honor.

14             THE COURT:  All right.

15             Mr. Saylin, it sounds like there's an

16   acknowledgment that we need to press the reset button on

17   this complaint, and it may be that some of the claims may be

18   dismissed with prejudice, and I'll have to look at that.

19   But it strikes me that the unjust enrichment claim may fall

20   in that category.

21             But I guess the question is it sounds like the

22   plaintiff doesn't have good records.  It seems to me it

23   might actually be helpful to you if the operative documents,

24   including the policies and procedures that would be

25   applicable to whatever underlying agreements there are, if

1    the plaintiffs could have access to those, we may be able to

2    make more progress on a motion to dismiss than when we're

3    operating without knowing what are the operative documents.

4           So what I'm wondering is would it make sense from

5    your standpoint to make those operative documents available

6    and then not do any other discovery until you've had a

7    chance to evaluate an amended complaint and to perhaps

8    decide whether or not you're going to file a motion to

9    dismiss with respect to that.

10          MR. SAYLIN:  Yes, Your Honor.  I believe in our

11    initial disclosures we have provided the operative

12    documents.  I'm happy to work with Mr. Stiner to determine

13    if there were others that he feels that he does not have.

14    And I don't think we would be opposed to providing those at

15    this stage.  But as far as the very broad written discovery

16    request, we would prefer to wait until we have an operative

17    complaint.

18          THE COURT:  That makes some sense to me.  And if

19    you need to file written discovery motions, you can.  But

20    what I would do at this point is just give some general

21    guidance suggesting that I would hope counsel would be able

22    to work together to see if there are operative documents

23    that go to the heart of this complaint and this dispute that

24    can be exchanged so that when plaintiffs amend their

25    complaint, they'll be amending it with knowledge of the

1    proper documents.  And if we can hold off on a lot of other

2    discovery until after the amended complaint is filed and you

3    have a chance to decide whether or not you're going to move

4    to dismiss, that seems to make good sense in terms of not

5    only judicial economy, but to keeping your clients' costs

6    down until we know where we stand.

7              MR. SAYLIN:  Thank you, Your Honor.  That

8    direction is helpful, and I believe that we will be able to

9    work together to accomplish that goal.

10             THE COURT:  And if you can't and you need to file

11   a formal motion, then feel free to do that.  You both appear

12   to be very reasonable attorneys and I would hope that that

13   won't be necessary.

14             MR. SAYLIN:  Thank you, Your Honor.

15             THE COURT:  Okay.  Thank you.

16             I appreciate the argument today.  I am going to

17   take a closer look at some of the case law, and I will issue

18   a written opinion.  I don't think it should take me a

19   terribly long time to do that.  My inclination, based on the

20   way this oral argument has proceeded, is that the plaintiffs

21   will be receiving leave to amend the complaint to fix some

22   of the problems that have been identified.  And then once

23   that's done, I suppose defendants will have to evaluate what

24   their next step is.  But I will issue a written order that

25   rules on the specific issues raised in the motion to dismiss

1   that's in front of me, and then we can go from there.

2              Any questions?

3              MR. SAYLIN:  No.  Thank you, Your Honor.

4              MR. STINER:  Thank you, Your Honor.

5              THE COURT:  Thank you very much.  The argument has

6   been helpful.  I appreciate you all being here today and

7   helping to talk through these issues with me.  And I hope

8   you have a good holiday.

9              MR. SAYLIN:  Thank you.

10             MR. STINER:  Thank you, Your Honor.

11             (Whereupon, the proceeding was concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     C E R T I F I C A T E

2

3

4           I hereby certify that the foregoing matter is

5    transcribed from the stenographic notes taken by me and is a

6    true and accurate transcription of the same.

7

8

9

10

11

12

13

14

15

16   PATTI WALKER, CSR-RPR-CP      DATED: 1-8-18
     Official Court Reporter
17   351 South West Temple, #8.431
     Salt Lake City, Utah  84101
18   801-364-5440

19

20

21

22

23

24

25

# Exhibit H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| _____, | STANDARD PROTECTIVE ORDER |
|---|---|
| Plaintiffs, | Civil No. |
| vs. | Honorable |
| _____, | Magistrate |
| Defendants. | |

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and for good cause,

IT IS HEREBY ORDERED THAT:

1.      <u>Scope of Protection</u>

This Standard Protective Order shall govern any record of information produced in this action and designated pursuant to this Standard Protective Order, including all designated deposition testimony, all designated testimony taken at a hearing or other proceeding, all designated deposition exhibits, interrogatory answers, admissions, documents and other discovery materials, whether produced informally or in response to interrogatories, requests for admissions, requests for production of documents or other formal methods of discovery.

This Standard Protective Order shall also govern any designated record of information produced in this action pursuant to required disclosures under any federal procedural rule or local rule of the Court and any supplementary disclosures thereto.

This Standard Protective Order shall apply to the parties and to any nonparty from whom discovery may be sought who desires the protection of this Protective Order.

1

Nonparties may challenge the confidentiality of the protected information by filing a motion to intervene and a motion to de-designate.

2.     Definitions

(a)     The term PROTECTED INFORMATION shall mean confidential or proprietary technical, scientific, financial, business, health, or medical information designated as such by the producing party.

(b)     The term CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY, shall mean PROTECTED INFORMATION that is so designated by the producing party.  The designation CONFIDENTIAL - ATTORNEYS EYES ONLY may be used only for the following types of past, current, or future PROTECTED INFORMATION:  (1) sensitive technical information, including current research, development and manufacturing information and patent prosecution information, (2) sensitive business information, including highly sensitive financial or marketing information and the identity of suppliers, distributors and potential or actual customers, (3) competitive technical information, including technical analyses or comparisons of competitor's products, (4) competitive business information, including non-public financial or marketing analyses or comparisons of competitor's products and strategic product planning, or (5) any other PROTECTED INFORMATION the disclosure of which to non-qualified people subject to this Standard Protective Order the producing party reasonably and in good faith believes would likely cause harm.

(c)     The term CONFIDENTIAL INFORMATION shall mean all PROTECTED INFORMATION that is not designated as "CONFIDENTIAL - ATTORNEYS EYES ONLY" information.

(d)     For entities covered by the Health Insurance Portability and

2

Accountability Act of 1996 ("HIPAA"), the term CONFIDENTIAL INFORMATION shall include Confidential Health Information. Confidential Health Information shall mean information supplied in any form, or any portion thereof, that identifies an individual or subscriber in any manner and relates to the past, present, or future care, services, or supplies relating to the physical or mental health or condition of such individual or subscriber, the provision of health care to such individual or subscriber, or the past, present, or future payment for the provision of health care to such individual or subscriber. Confidential Health Information includes claim data, claim forms, grievances, appeals, or other documents or records that contain any patient health information required to be kept confidential under any state or federal law, including 45 C.F.R. Parts 160 and 164 promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 (*see* 45 C.F.R. §§ 164.501 & 160.103), and the following subscriber, patient, or member identifiers:

(1)     names;

(2)     all geographic subdivisions smaller than a State, including street address, city, county, precinct, and zip code;

(3)     all elements of dates (except year) for dates directly related to an individual, including birth date, admission date, discharge date, age, and date of death;

(4)     telephone numbers;

(5)     fax numbers;

(6)     electronic mail addresses;

(7)     social security numbers;

(8)     medical record numbers;

3

(9)      health plan beneficiary numbers;

(10)     account numbers;

(11)     certificate/license numbers;

(12)     vehicle identifiers and serial numbers, including license plate
         numbers;

(13)     device identifiers and serial numbers;

(14)     web universal resource locators ("URLs");

(15)     internet protocol ("IP") address numbers;

(16)     biometric identifiers, including finger and voice prints;

(17)     full face photographic images and any comparable images;
         and/or any other unique identifying number, characteristic,
         or code.

(e)      The term TECHNICAL ADVISOR shall refer to any person who is
not a party to this action and/or not presently employed by the receiving party or a
company affiliated through common ownership, who has been designated by the receiving
party to receive another party's PROTECTED INFORMATION, including
CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY, and
CONFIDENTIAL INFORMATION.  Each party's TECHNICAL ADVISORS shall be
limited to such person as, in the judgment of that party's counsel, are reasonably necessary
for development and presentation of that party's case.  These persons include outside
experts or consultants retained to provide technical or other expert services such as expert
testimony or otherwise assist in trial preparation.

3.      Disclosure Agreements

(a)      Each receiving party's TECHNICAL ADVISOR shall sign a

disclosure agreement in the form attached hereto as Exhibit A ("Disclosure Agreement").

Copies of the Disclosure Agreement signed by any person or entity to whom

PROTECTED INFORMATION is disclosed shall be provided to the other party promptly

after execution by facsimile and overnight mail.  No disclosures shall be made to a

TECHNICAL ADVISOR until seven (7) days after the executed Disclosure Agreement is

served on the other party.

(b)      Before any PROTECTED INFORMATION is disclosed to outside

TECHNICAL ADVISORS, the following information must be provided in writing to the

producing party and received no less than seven (7) days before the intended date of

disclosure to that outside TECHNICAL ADVISOR:  the identity of that outside

TECHNICAL ADVISOR, business address and/or affiliation and a current curriculum

vitae of the TECHNICAL ADVISOR, and, if not contained in the TECHNICAL

ADVISOR's curriculum vitae, a brief description, including education, present and past

employment and general areas of expertise of the TECHNICAL ADVISOR.  If the

producing party objects to disclosure of PROTECTED INFORMATION to an outside

TECHNICAL ADVISOR, the producing party shall within seven (7) days of receipt serve

written objections identifying the specific basis for the objection, and particularly

identifying all information to which disclosure is objected.  Failure to object within seven

(7) days shall authorize the disclosure of PROTECTED INFORMATION to the

TECHNICAL ADVISOR.  As to any objections, the parties shall attempt in good faith to

promptly resolve any objections informally.  If the objections cannot be resolved, the party

seeking to prevent disclosure of the PROTECTED INFORMATION to the expert shall

move within seven (7) days for an Order of the Court preventing the disclosure. The burden of proving that the designation is proper shall be upon the producing party. If no such motion is made within seven (7) days, disclosure to the TECHNICAL ADVISOR shall be permitted. In the event that objections are made and not resolved informally and a motion is filed, disclosure of PROTECTED INFORMATION to the TECHNICAL ADVISOR shall not be made except by Order of the Court.

(c)     Any disclosure agreement executed by any person affiliated with a party shall be provided to any other party who, based upon a good faith belief that there has been a violation of this order, requests a copy.

(d)     No party shall attempt to depose any TECHNICAL ADVISOR until such time as the TECHNICAL ADVISOR is designated by the party engaging the TECHNICAL ADVISOR as a testifying expert. Notwithstanding the preceding sentence, any party may depose a TECHNICAL ADVISOR as a fact witness provided that the party seeking such deposition has a good faith, demonstrable basis independent of the Disclosure Agreement or the information provided under subparagraph (a) above that such person possesses facts relevant to this action, or facts likely to lead to the discovery of admissible evidence; however, such deposition, if it precedes the designation of such person by the engaging party as a testifying expert, shall not include any questions regarding the scope or subject matter of the engagement. In addition, if the engaging party chooses not to designate the TECHNICAL ADVISOR as a testifying expert, the non-engaging party shall be barred from seeking discovery or trial testimony as to the scope or subject matter of the engagement.

4.    <u>Designation of Information</u>

(a)    Documents and things produced or furnished during the course of this action shall be designated as containing CONFIDENTIAL INFORMATION, by placing on each page, each document (whether in paper or electronic form), or each thing a legend substantially as follows:

CONFIDENTIAL INFORMATION

(b)    Documents and things produced or furnished during the course of this action shall be designated as containing information which is CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY by placing on each page, each document (whether in paper or electronic form), or each thing a legend substantially as follows:

CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY

(c)    During discovery, a producing party shall have the option to require that all or batches of materials be treated as containing CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY during inspection and to make its designation as to particular documents and things at the time copies of documents and things are furnished.

(d)    A party may designate information disclosed at a deposition as CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY by requesting the reporter to so designate the transcript at the time of the deposition.

(e)    A producing party shall designate its discovery responses, responses to requests for admission, briefs, memoranda, and all other papers sent to the court or to opposing counsel as containing CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY when such papers are served or sent.

7

(f)      A party shall designate information disclosed at a hearing or trial as CONFIDENTIAL INFORMATION or as CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY by requesting the court, at the time the information is proffered or adduced, to receive the information only in the presence of those persons designated to receive such information and court personnel, and to designate the transcript appropriately.

(g)      The parties will use reasonable care to avoid designating any documents or information as CONFIDENTIAL INFORMATION or as CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY that is not entitled to such designation or which is generally available to the public.  The parties shall designate only that part of a document or deposition that is CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY, rather than the entire document or deposition.  For example, if a party claims that a document contains pricing information that is CONFIDENTIAL – ATTORNEYS EYES ONLY, the party will designate only that part of the document setting forth the specific pricing information as ATTORNEYS EYES ONLY, rather than the entire document.

(h)   In multi-party cases, Plaintiffs and/or Defendants shall further be able to designate documents as CONFIDENTIAL INFORMATION – NOT TO BE DISCLOSED TO OTHER PLAINTIFFS or CONFIDENTIAL INFORMATION – NOT TO BE DISCLOSED TO OTHER DEFENDANTS for documents that shall not be disclosed to other parties.

5.      Disclosure and Use of Confidential Information

Information that has been designated CONFIDENTIAL INFORMATION or as CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY shall be disclosed by

8

the receiving party only to Qualified Recipients.  All Qualified Recipients shall hold such

information received from the disclosing party in confidence, shall use the information

only for purposes of this action and for no other action, and shall not use it for any business

or other commercial purpose, and shall not use it for filing or prosecuting any patent

application (of any type) or patent reissue or reexamination request, and shall not disclose

it to any person, except as hereinafter provided.  All information that has been designated

CONFIDENTIAL INFORMATION or as CONFIDENTIAL INFORMATION –

ATTORNEYS EYES ONLY shall be carefully maintained so as to preclude access by

persons who are not qualified to receive such information under the terms of this Order.

In multi-party cases, documents designated as CONFIDENTIAL INFORMATION

– NOT TO BE DISCLOSED TO OTHER PLAINTIFFS or CONFIDENTIAL

INFORMATION – NOT TO BE DISCLOSED TO OTHER DEFENDANTS shall not be

disclosed to other plaintiffs and/or defendants.

6.     Qualified Recipients

For purposes of this Order, "Qualified Recipient" means

(a)     For CONFIDENTIAL INFORMATION – ATTORNEYS EYES
ONLY:

(1)     Outside counsel of record for the parties in this action, and

the partners, associates, secretaries, paralegal assistants, and employees of such counsel to

the extent reasonably necessary to render professional services in the action, outside

copying services, document management services and graphic services;

(2)     Court officials involved in this action (including court

reporters, persons operating video recording equipment at depositions, and any special

master appointed by the Court);

(3)     Any person designated by the Court in the interest of justice, upon such terms as the Court may deem proper;

(4)     Any outside TECHNICAL ADVISOR employed by the outside counsel of record, subject to the requirements in Paragraph 3 above;

(5)     Any witness during the course of discovery, so long as it is stated on the face of each document designated CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY being disclosed that the witness to whom a party is seeking to disclose the document was either an author, recipient, or otherwise involved in the creation of the document.  Where it is not stated on the face of the confidential document being disclosed that the witness to whom a party is seeking to disclose the document was either an author, recipient, or otherwise involved in the creation of the document, the party seeking disclosure may nonetheless disclose the confidential document to the witness, provided that:  (i) the party seeking disclosure has a reasonable basis for believing that the witness in fact received or reviewed the document, (ii) the party seeking disclosure provides advance notice to the party that produced the document, and (iii) the party that produced the document does not inform the party seeking disclosure that the person to whom the party intends to disclose the document did not in fact receive or review the documents.  Nothing herein shall prevent disclosure at a deposition of a document designated CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY to the officers, directors, and managerial level employees of the party producing such CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY, or to any employee of such party who has access to such CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY in the ordinary course of such employee's employment; and

(6)     Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the parties, and his or her staff, provided that such individuals agree in writing, pursuant to the Disclosure Agreement, to be bound by the terms of this Order.

(b)     FOR CONFIDENTIAL INFORMATION:

(1)     Those persons listed in paragraph 6(a);

(2)     In-house counsel for a party to this action who are acting in a legal capacity and who are actively engaged in the conduct of this action, and the secretary and paralegal assistants of such counsel to the extent reasonably necessary;

(3)     The insurer of a party to litigation and employees of such insurer to the extent reasonably necessary to assist the party's counsel to afford the insurer an opportunity to investigate and evaluate the claim for purposes of determining coverage and for settlement purposes; and

(4)     Representatives, officers, or employees of a party as necessary to assist outside counsel with this litigation.

7.     <u>Use of Protected Information</u>

(a)     In the event that any receiving party's briefs, memoranda, discovery requests, requests for admission, or other papers of any kind that are served or filed include another party's CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY, the papers must be appropriately designated pursuant to paragraphs 4(a) and (b) and governed by DUCivR 5-3.

(b)     All documents, including attorney notes and abstracts, that contain another party's CONFIDENTIAL INFORMATION or CONFIDENTIAL

INFORMATION – ATTORNEYS EYES ONLY, shall be handled as if they were designated pursuant to paragraph 4(a) or (b).

(c)     Documents, papers, and transcripts that are filed with the court and contain any other party's CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY shall be filed in sealed envelopes and filed in accordance with DUCivR 5-3.

(d)     To the extent that documents are reviewed by a receiving party prior to production, any knowledge learned during the review process will be treated by the receiving party as CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY until such time as the documents have been produced, at which time any stamped classification will control.  No photograph or any other means of duplication, including but not limited to electronic means, of materials provided for review prior to production is permitted before the documents are produced with the appropriate stamped classification.

(e)     In the event that any question is asked at a deposition with respect to which a party asserts that the answer requires the disclosure of CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY, such question shall nonetheless be answered by the witness fully and completely.  Prior to answering, however, all persons present shall be advised of this Order by the party making the confidentiality assertion and, in the case of information designated as CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY at the request of such party, all persons who are not allowed to obtain such information pursuant to this Order, other than the witness, shall leave the room during the time in which this information is disclosed or discussed.

(f)      Nothing in this Protective Order shall bar or otherwise restrict outside counsel from rendering advice to his or her client with respect to this action and, in the course thereof, from relying in a general way upon his examination of materials designated CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY, provided, however, that in rendering such advice and in otherwise communicating with his or her clients, such counsel shall not disclose the specific contents of any materials designated CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY.

8.      <u>Inadvertent Failure to Designate</u>

(a)      In the event that a producing party inadvertently fails to designate any of its information pursuant to paragraph 4, it may later designate by notifying the receiving parties in writing.  The receiving parties shall take reasonable steps to see that the information is thereafter treated in accordance with the designation.

(b)      It shall be understood however, that no person or party shall incur any liability hereunder with respect to disclosure that occurred prior to receipt of written notice of a belated designation.

9.      <u>Challenge to Designation</u>

(a)      Any receiving party may challenge a producing party's designation at any time.  A failure of any party to expressly challenge a claim of confidentiality or any document designation shall not constitute a waiver of the right to assert at any subsequent time that the same is not in-fact confidential or not an appropriate designation for any reason.

(b)      Any receiving party may disagree with the designation of any information received from the producing party as CONFIDENTIAL INFORMATION or

CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY.  In that case, any receiving party desiring to disclose or to permit inspection of the same otherwise than is permitted in this Order, may request the producing party in writing to change the designation of a document or documents, stating with particularity the reasons for  that request, and specifying the category to which the challenged document(s) should be de-designated  The producing party shall then have seven (7) days from the date of service of the request to:

    (i)    advise the receiving parties whether or not it persists in such designation; and

    (ii)    if it persists in the designation, to explain the reason for the particular designation and to state its intent to seek a protective order or any other order to maintain the designation.

    (c)    If no response is made within seven (7) days after service of the request under subparagraph (b), the information will be de-designated to the category requested by the receiving party.  If, however, the request under subparagraph (b) above is responded to under subparagraph (b)(i) and (ii), within seven (7) days the producing party may then move the court for a protective order or any other order to maintain the designation.  The burden of proving that the designation is proper shall be upon the producing party.  If no such motion is made within seven (7) days after the statement to seek an order under subparagraph (b)(ii), the information will be de-designated to the category requested by the receiving party.  In the event objections are made and not resolved informally and a motion is filed, disclosure of information shall not be made until

the issue has been resolved by the Court (or to any limited extent upon which the parties may agree).

No party shall be obligated to challenge the propriety of any designation when made, and failure to do so shall not preclude a subsequent challenge to the propriety of such designation.

(d)     With respect to requests and applications to remove or change a designation, information shall not be considered confidential or proprietary to the producing party if:

(i)     the information in question has become available to the public through no violation of this Order; or

(ii)     the information was known to any receiving party prior to its receipt from the producing party; or

(iii)     the information was received by any receiving party without restrictions on disclosure from a third party having the right to make such a disclosure.

10.     Inadvertently Produced Privileged Documents

The parties hereto also acknowledge that regardless of the producing party's diligence an inadvertent production of attorney-client privileged or attorney work product materials may occur.  In accordance with Fed. R. Civ. P. 26(b)(5) and Fed. R. Evid. 502, they therefore agree that if a party through inadvertence produces or provides discovery that it believes is subject to a claim of attorney-client privilege or attorney work product, the producing party may give written notice to the receiving party that the document or thing is subject to a claim of attorney-client privilege or attorney work product and request that the document or thing be returned to the producing party.  The receiving party shall

15

return to the producing party such document or thing.  Return of the document or thing

shall not constitute an admission or concession, or permit any inference, that the returned

document or thing is, in fact, properly subject to a claim of attorney-client privilege or

attorney work product, nor shall it foreclose any party from moving the Court pursuant to

Fed. R. Civ. P. 26(b)(5) and Fed. R. Evid. 502 for an Order that such document or thing

has been improperly designated or should be produced.

       11.    <u>Inadvertent Disclosure</u>

       In the event of an inadvertent disclosure of another party's

CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION –

ATTORNEYS EYES ONLY to a non-Qualified Recipient, the party making the

inadvertent disclosure shall promptly upon learning of the disclosure:  (i) notify the person

to whom the disclosure was made that it contains CONFIDENTIAL INFORMATION or

CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY subject to this Order;

(ii) make all reasonable efforts to preclude dissemination or use of the CONFIDENTIAL

INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY

by the person to whom disclosure was inadvertently made including, but not limited to,

obtaining all copies of such materials from the non-Qualified Recipient; and (iii) notify the

producing party of the identity of the person to whom the disclosure was made, the

circumstances surrounding the disclosure, and the steps taken to ensure against the

dissemination or use of the information.

12.    Limitation

This Order shall be without prejudice to any party's right to assert at any time that any particular information or document is or is not subject to discovery, production or admissibility on the grounds other than confidentiality.

13.    Conclusion of Action

(a)    At the conclusion of this action, including through all appeals, each party or other person subject to the terms hereof shall be under an obligation to destroy or return to the producing party all materials and documents containing CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY and to certify to the producing party such destruction or return.  Such return or destruction shall not relieve said parties or persons from any of the continuing obligations imposed upon them by this Order.

(b)    After this action, trial counsel for each party may retain one archive copy of all documents and discovery material even if they contain or reflect another party's CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY.  Trial counsel's archive copy shall remain subject to all obligations of this Order.

(c)    The provisions of this paragraph shall not be binding on the United States, any insurance company, or any other party to the extent that such provisions conflict with applicable Federal or State law.  The Department of Justice, any insurance company, or any other party shall notify the producing party in writing of any such conflict it identifies in connection with a particular matter so that such matter can be resolved either by the parties or by the Court.

14.     Production by Third Parties Pursuant to Subpoena

Any third party producing documents or things or giving testimony in this action pursuant to a subpoena, notice or request may designate said documents, things, or testimony as CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY.  The parties agree that they will treat CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY produced by third parties according to the terms of this Order.

15.     Compulsory Disclosure to Third Parties

If any receiving party is subpoenaed in another action or proceeding or served with a document or testimony demand or a court order, and such subpoena or demand or court order seeks CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY of a producing party, the receiving party shall give prompt written notice to counsel for the producing party and allow the producing party an opportunity to oppose such subpoena or demand or court order prior to the deadline for complying with the subpoena or  demand or court order.  No compulsory disclosure to third parties of information or material exchanged under this Order shall be deemed a waiver of any claim of confidentiality, except as expressly found by a court or judicial authority of competent jurisdiction.

16.     Jurisdiction to Enforce Standard Protective Order

After the termination of this action, the Court will continue to have jurisdiction to enforce this Order.

17.     Modification of Standard Protective Order

This Order is without prejudice to the right of any person or entity to seek a modification of this Order at any time either through stipulation or Order of the Court.

18.   <u>Confidentiality of Party's Own Documents</u>

Nothing herein shall affect the right of the designating party to disclose to its officers, directors, employees, attorneys, consultants or experts, or to any other person, its own information. Such disclosure shall not waive the protections of this Standard Protective Order and shall not entitle other parties or their attorneys to disclose such information in violation of it, unless by such disclosure of the designating party the information becomes public knowledge. Similarly, the Standard Protective Order shall not preclude a party from showing its own information, including its own information that is filed under seal by a party, to its officers, directors, employees, attorneys, consultants or experts, or to any other person.

SO ORDERED AND ENTERED BY THE COURT PURSUANT TO DUCivR 26-2 EFFECTIVE AS OF THE COMMENCE OF THE ACTION.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| _____, <br><br> Plaintiffs, <br><br> vs. <br><br> _____, <br><br> Defendant. | DISCLOSURE AGREEMENT <br><br> Honorable <br><br> Magistrate Judge |

I, _____, am employed by _____.  In connection with this action, I am:

_____        a director, officer or employee of _____ who is

directly assisting in this action;

_____        have been retained to furnish technical or other expert services or to give

testimony (a "TECHNICAL ADVISOR");

_____        Other Qualified Recipient (as defined in the Protective Order)

(Describe:_____).

I have read, understand and agree to comply with and be bound by the terms of the

Standard Protective Order in the matter of _____,

Civil Action No. _____, pending in the United States District Court for the

District of Utah.  I further state that the Standard Protective Order entered by the Court, a

copy of which has been given to me and which I have read, prohibits me from using any

PROTECTED INFORMATION, including documents, for any purpose not appropriate or

necessary to my participation in this action or disclosing such documents or information to

any person not entitled to receive them under the terms of the Standard Protective Order. To the extent I have been given access to PROTECTED INFORMATION, I will not in any way disclose, discuss, or exhibit such information except to those persons whom I know (a) are authorized under the Standard Protective Order to have access to such information, and (b) have executed a Disclosure Agreement. I will return, on request, all materials containing PROTECTED INFORMATION, copies thereof and notes that I have prepared relating thereto, to counsel for the party with whom I am associated. I agree to be bound by the Standard Protective Order in every aspect and to be subject to the jurisdiction of the United States District Court for the District of Utah for purposes of its enforcement and the enforcement of my obligations under this Disclosure Agreement. I declare under penalty of perjury that the foregoing is true and correct.

_____

Signed by Recipient

_____

Name (printed)

Date: _____